IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW A. PEQUIGNOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:07cv897 (LMB/TCB) |
| ) | |
| SOLO CUP COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Matthew A. Pequignot filed this action for false patent marking under 35 U.S.C. § 292(a), alleging that defendant Solo Cup Company ("Solo") has improperly failed to remove certain markings from its products after its patents expired and has improperly marked other unpatented products with conditional patent markings. Solo has filed a Motion to Dismiss for Failure to State a Claim,[1] arguing that marking an article with an expired patent number or a statement that the article "may be covered" by a patent cannot, as a matter of law, constitute a false marking under the statute. For the reasons stated in open court and in this memorandum opinion, the motion will be denied.

## Background

Solo, a Delaware corporation with its principal place of business in Highland Park, Illinois, manufacturers disposable plastic and paper cups, lids, plates, bowls, and utensils. At

---

[1] Solo's motion references the First Amended Complaint, filed on December 21, 2007. Pequignot has since requested leave to file a Second Amended Complaint, which has not been ruled on.

issue in this lawsuit are two expired patents: U.S. Patent No. 28,797 ("the '797 patent"), entitled "Lid," issued on May 4, 1976, and U.S. Patent No. 4,589,569 ("the '569 patent"), entitled "Lid for Drinking Cup," issued on May 20, 1986. According to the complaint, the '797 patent expired on June 8, 1988, and the '569 patent expired on October 24, 2003.

On September 5, 2007, Pequignot, a licensed patent attorney appearing pro se, filed his complaint under the civil enforcement provision of 35 U.S.C. § 292. He alleges that Solo presently manufacturers and sells cup lids marked with these expired patents, and that these imprints constitute false markings. Specifically, Pequignot identifies 19 products with an imprint of the expired '797 patent and five products with an imprint of the expired '569 patent. Pequignot also contends that Solo's marking of other cups and utensils with a statement that "[t]his product may be covered by one or more U.S. or foreign pending or issued patents" constitutes a false marking under the statute. For damages, Pequignot seeks an award of $500 per false marking, one-half of which would be recouped to the United States. See 35 U.S.C. § 292(b).

## Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle

him to relief." <u>Smith v. Sydnor</u>, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. <u>Id</u>.

## Discussion

I. Marking an Article With an Expired Patent

Under 35 U.S.C. § 292(a),

> [w]hoever marks upon, or affixes to, or uses in advertising in connection with any <u>unpatented article</u>, the word "patent" or any work or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.

(Emphasis added). Pequignot contends that the Solo cup lids identified in the complaint became "unpatented articles" upon the expiration of the '797 and '569 patents. Solo argues to the contrary.

A. Relevant Authority

In <u>Clontech Laboratories, Inc. v. Invitrogen Corp.</u>, 406 F.3d 1347 (Fed. Cir. 2005), the Federal Circuit held that "'unpatented article' . . . means that the article in question is not covered by at least one claim of each patent with which the article is marked." <u>Id</u>. at 1352. The Federal Circuit did not further explain whether the article in question had to be covered by a claim in an <u>enforceable</u> patent, which is the issue before this

-3-

Court.² Although the lids at issue in this case were indisputably once covered by valid patents, those patents – the '797 patent and the '569 patent – became legal nullities upon their expiration. See Pipkin v. FMC Corp., 427 F.2d 353, 357 (5th Cir. 1970) ("After the expiration of the patent, there can no longer be an exclusive right, license or privilege to use the invention embodied in its claim or claims.").

Solo cites to Arcadia Mach. & Tool, Inc. v. Strum, Ruger & Co., 227 U.S.P.Q. 655, 1985 WL 5181 (C.D. Cal. June 25, 1985), aff'd, 786 F.2d 1124 (Fed. Cir. 1986), to support its position. However, that decision is also inconclusive.³ Arcadia does not stand for the general proposition that marking an article with an expired patent number is never a false marking under § 292(a). Rather, the Federal Circuit's analysis was based on a fact-specific inquiry, notably the plaintiff's failure to produce evidence of the defendant's bad faith: "Paramount is the court's finding and conclusion that Arcadia had totally failed, after at least nine months of discovery, to produce any evidence of intent to deceive the public." Arcadia, 786 F.2d at 1125; see also

---

² Cf. Chisum on Patents § 20.03[7][c][vii], at 20-657 (2002) ("There is little authority on whether continued use of a patent number of an article after expiration of the patent constitutes culpable mismarking.").

³ In Arcadia, the patentee omitted applicable patents from, and included expired patents on, its firearm box labels over a 12-year period. 1985 WL 5181, at *1.

Clontech, 406 F.3d at 1351-52 ("[I]n [Arcadia], we affirmed, without discussion of the text of the statute, the trial court's holding that no violation of the statute occurred because the plaintiff failed 'to produce any evidence of intent to deceive the public.'").

Solo's citation to FMC Corp. v. Control Solutions, Inc., 369 F. Supp. 2d 539 (E.D. Pa. 2005), is similarly unpersuasive. The court in FMC did not, as Solo claims, hold that the marking of an article with an expired patent number could never give rise to a false marking claim. Rather, the court rejected the false marking claim due to the absence of any evidence in the record demonstrating bad faith. See id. at 584 ("A claim for false marking fails absent evidence of an actual intent to deceive."); id. (noting "the absence of a scintilla of evidence that FMC acted with intent to deceive").[4]

In sum, the spare authority interpreting § 292(a) provides little guidance on the issue now before the Court. The meaning of "unpatented article" is, in all respects, a question of first

---

[4] Solo's reliance on Wilson v. Singer Mfg. Co., 12 F. 57 (C.C. N.D. Ill. 1882), is also misguided. In Wilson, the court held that the defendant's marking of its articles with an expired patent did not violate the statute. However, unlike this case, the markings clearly identified the date of issue of the patent. Id. at 58. Because "the expired status of the patents was readily apparent to anyone familiar with the legal term of a patent," Chisum on Patents § 20.03[7][c][vii], at 20-657 n.243, there was no basis to find that the markings "were affixed in the manner stated for the purpose of deceiving the public." Wilson, 12. F. at 58.

impression.

B.   Statutory Interpretation

1.   Ordinary Meaning

The "starting point in every case involving construction of a statute is the language itself." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1425 (Fed. Cir. 1988) (internal quotation and citation omitted). Solo argues that the term "unpatented article" refers only to articles that have never been patented. Pequignot, by contrast, asserts that the term refers to any article that is not presently protected by a patent.

The patent field is rife with terms of art. As this Court has previously observed, one must consider this context when attempting to ascertain the ordinary meaning of language in the federal patent statutes. See Cooper Technologies Co. v. Dudas, No. 1:07cv853, 2007 WL 4233467, at *4 (E.D. Va. Nov. 30, 2007). The term "unpatented article" must be construed next to the modern parlance of patent law.

Solo's argument, that the term "unpatented article" does not refer to an article subject to an expired patent, is in discord with black-letter patent law. An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent. Both are in the public domain. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231 (1964) ("An unpatentable article, like an article on which

the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so."). The interpretation urged by Pequignot - that the term "unpatented article" refers to any article not presently protected by a patent - is entirely consistent with this principle.[5]

Pequignot's construction is also buttressed by the way in which the Supreme Court has used the word "unpatented." In Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989), the Court observed that the article in question, which "ha[d] been freely exposed to the public for a period in excess of six years . . . stands in the same stead as an item for which a patent has expired or been denied: it is *unpatented* and unpatentable." Id. at 159 (emphasis added). Other courts have also employed this usage. See, e.g., Prestole Corp. v. Tinnerman Products, Inc., 271 F.2d 146, 155 (6th Cir. 1959) ("[A]fter the expiration of a patent, the invention originally protected thereby becomes, for all purposes, an unpatented device."); Sylvania Indus. Corp. v. Visking Corp., 123 F.2d 947, 950 (4th Cir. 1943) ("Patent No. 1,070,776 expired on August 19, 1930, and since that date [the articles] have been unpatented articles of commerce."); see also Decor Grates, Inc. v. Fararo, No. 92-6395,

---

[5] Pequignot's interpretation is also consistent with everyday colloquial speech. As the Court noted during oral argument, an individual who operates a vehicle with an expired driver's license is no different than one who operates a vehicle without any license. Both individuals are "unlicensed."

-7-

1995 WL 548571, at *3 (N.D. Ill. Sept. 12, 1995) ("[T]he patent laws were believed to leave in the public domain all unpatented inventions, whether that status is due to patent expiration, invalidation, denial, or simply a failure to submit a timely application.").

Furthermore, under Solo's argument, the lids in question would still be considered "patented" under the expired '797 and '569 patents. This usage of the adjective "patented" simply does not accord with well-established terminology. Going forward from the date of a patent's expiration, the article in question is no longer considered "patented." See Dawson Chem. Co. v. Rohm & Hass Co., 448 U.S. 176, 191 (1980) ("The film previously had been patented but that patent had expired."); Holzapfel's Compositions Co. v. Rahtjen's Am. Composition Co., 183 U.S. 1, 11 (1901) ("[F]rom 1873 to 1880, while the patent was in life, they were entirely justified in calling it a patented article . . . ."); B.F. Goodrich Co. V. Kenilworth Mfg. Co., 40 F.2d 121, 121 (C.C.P.A. 1930) ("The fastener was originally a patented article, but the patent expired many years ago and it is now open to public manufacture and use."); see also Thomas & Betts Corp. v. Panduit Corp., 65 F.3d 654, 658 (7th Cir. 1995) ("The right to copy is even more robust when the copied product was previously patented but the patent has expired.") (emphasis added).

Finally, construing "unpatented article" in the manner urged

-8-

by Pequignot is consistent with the doctrine of "double patenting." Under that doctrine, a patentee may not obtain "more than one valid patent for either (a) the 'same invention,' or (b) an 'obvious' modification of the same invention." In re Longi, 759 F.2d 887, 892 (Fed. Cir. 1985). This doctrine prevents owners from extending their patent monopoly beyond the terms of the original patent. Id. When an article or subject matter is disqualified under this doctrine, it is deemed "unpatentable." Id. at 897; see also In re Lonardo, 119 F.3d 960, 967-68 (Fed. Cir. 1997).

To that end, the lids described in the '797 and '569 patents are "unpatentable" because they cannot be the subject of another valid patent. The Court concludes that these articles are also "unpatented," as they are not presently protected by a valid patent. Such a construction ensures uniform interpretation of these two related adjectives.

For these reasons, the Court concludes that the ordinary meaning of the term "unpatented article" in 35 U.S.C. § 292(a) is an article unprotected by a patent, and includes an article for which a once valid patent has expired.[6]

    2.   Public Policy

Solo argues that public policy is best served by construing

---

[6] Solo's attempt to demonstrate a contrary congressional intent by citing to the third paragraph of § 292(a) and nineteenth century legislative history is not persuasive.

§ 292 to exclude liability for marking an article with an expired patent. According to Solo, such a marking provides three pieces of useful information:

> (1) the patent's filing and issuing dates from which the date of patent expiration is apparent; (2) the patent specification, which provides information sufficient to enable a person of skill in the art to make and use the invention; and (3) the best mode for making and using the invention.

Def. Mem. in Support [10], at 9-10.

These interests are substantially outweighed by the potential harms such markings pose to the patent system. There is an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." Lear, Inc. v. Adkins, 395 U.S. 635, 670 (1969). In creating the patent system, Congress carefully weighed that interest against the need to incentivize the work of the inventor, allowing him to reap material rewards from his creativity. The Supreme Court has summarized this balancing act:

> Congress has given to the inventor opportunity to secure the material rewards for his invention for a limited time, on the condition that he make full disclosure for the benefit of the public of the manner of making and using the invention, and that <u>upon the expiration of the patent the public be left to use the invention</u>.

Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 255 (1945) (emphasis added).

Patent markings are an essential component of this system. The "Patent No. XXX" imprint is, in effect, a "no trespassing"

sign. Would-be inventors and consumers justifiably rely on such marks to assume that the patent holder retains control over how the article can be used, displayed, modified, or licensed. As the Supreme Court has observed, those markings "provide [the public] a ready means of discerning <u>the status of the intellectual property</u> embodied in an article of manufacture or design." <u>Bonito Boats</u>, 489 U.S. at 162 (emphasis added).

Giving the patent holder free reign to list expired patent numbers on articles would upset this delicate balance. The public could no longer assume "the status of the intellectual property" by the simple presence of a "Patent No. XXX" marking. Potential inventors and consumers would be forced to look up <u>every</u> patent marking to discern whether the patent was valid or expired, possibly leading some to shy away from using that article. These burdens, when considered in the aggregate, inhibit the free flow of ideas and "the benefits of the unrestricted exploitation" with respect to those articles that have entered the public domain. <u>Scott Paper</u>, 326 U.S. at 255; <u>see also</u> <u>Clontech</u>, 406 F.3d at 1356-57 (observing that a false marking "misleads the public into believing that a patentee controls the article in question . . ., externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls

-11-

the intellectual property embodied in an article").

For the reasons discussed above, marking an article with an expired patent number is a false marking under 35 U.S.C. § 292(a). However, that fact alone does not constitute an actionable false marking. To prevail on his claim, the plaintiff must further establish that the defendant affixed the expired patent marking "for the purpose of deceiving the public." As Arcadia demonstrates, this inquiry turns on a fact-specific examination of the defendant's conduct. Therefore, the motion to dismiss Pequignot's claims based on Solo's marking of products with expired patent numbers will be denied.

II. Marking an Article With a Conditional Statement

Pequignot also alleges that Solo's use of the statement "[t]his product may be covered by one or more U.S. or foreign pending or issued patents. For details, contact: www.solocup.com" constitutes a false marking. According to his complaint, these articles are not protected by any patent, nor are they the subject matter of any pending patent application.

A.  Relevant Authority

Citing to Arcadia, Solo argues that its conditional "may be" phrasing cannot, as a matter of law, violate 35 U.S.C. § 292(a). The Court disagrees. In Arcadia, the 1984 label stated that "[t]he firearm in this box may be manufactured under one or more of the following patents . . . ." 1985 WL 5181, at *2. The 1984

label then erroneously listed a series of patent numbers. The district court held that this label was not deceptive as a matter of law, and the Federal Circuit affirmed. See 786 F.2d at 1125. Central to the Federal Circuit's holding was the recognition that, despite the errors on the label, the firearms manufactured by the defendant were, in fact, protected by valid patents or pending patent applications. See id. (noting that "all of the firearms shipped under the labels were made under one or more Ruger U.S. patents or under a patent pending owned by Ruger.") (internal quotations omitted). The court then concluded that plaintiff "had totally failed . . . to produce any evidence of intent to deceive the public." Id. The result in Arcadia was therefore grounded in a fact-specific analysis of the record and not, as Solo contends, on a blanket holding that conditional statements cannot constitute false markings under § 292(a).

There is a key factual distinction between Arcadia and this case. The defendant in Arcadia indisputably owned patents for, or had pending patent applications on, the firearms in dispute. The only question before the court was whether the mismarkings on the defendant's labels gave rise to a false marking claim. By contrast, Pequignot alleges that Solo's cups and utensils are not protected by any patent or pending patent application and that Solo had no reasonable basis to imprint those articles with such conditional markings.

B.   Statutory Interpretation

Solo contends that the language of § 292(a) does not extend to false marking claims based on conditional language: "The statement at issue does not state or import that any product 'is' patented. It only states that the products 'may be covered' by one or more patents or applications." Def. Mem. in Support [10], at 11.

The Court disagrees. The marking at issue need not explicitly state that the product is patented to constitute a false marking. The statute prohibits "any work or number <u>importing</u> that the same is patented for the purpose of deceiving the public." 35 U.S.C. § 292(a) (emphasis added).

To that end, a statement that an article "may be covered by one or more U.S. or foreign pending or issued patents" clearly suggests that the article is protected by the patent laws. After reading this statement, potential inventors and consumers cannot readily confirm whether the article is protected.[7] They must instead undertake an external inquiry, thereby assuming "the costs of a reasonably competent search for information necessary

---

[7] Solo argues that its marking "expressly informs a potential competitor of a simple way to determine whether the product in the package is covered by a patent." The Federal Circuit has clearly stated that the cost of determining whether an article is subject to a valid patent should be borne by the patentee, not the public. See <u>Clontech</u>, 406 F.3d at 1357 (observing that "the act of false marking" improperly places the "the risk of error in the determination . . . on the public rather than the manufacturer or seller of the article").

to interpret each patent." Clontech, 406 F.3d at 1357 n.6. At a result, the practical effect of such a marking is similar to a more forceful statement; it functions as a de facto "no trespassing" sign.

Whether marking with a conditional statement constitutes a culpable false marking depends on whether Pequignot can demonstrates by a preponderance of the evidence that Solo intended to deceive the public – i.e., that Solo "did not have a reasonable belief that the articles were . . . covered by a patent" or a pending patent application. Id. at 1353. Accordingly, the motion to dismiss Pequignot's claims based on Solo's conditional patent markings will also be denied.

## Conclusion

For these reasons, defendant's Motion to Dismiss will be DENIED. A separate order consistent with this opinion will be issued.

Entered this 24th day of March, 2008.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia