**FILED**

Matthew A. Pequignot
1636 R Street, NW
Third Floor
Washington, D.C. 20009
Phone: 202-328-1200
Facsimile: 202-328-2219
Email: mpequignot@pmiplaw.com

*Pro se*

2008 APR -9 P 4: 01

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MATTHEW A. PEQUIGNOT | Case No. 1:07-cv-897 |
| Plaintiff, | |
| v. | |
| SOLO CUP COMPANY | Hearing Date: April 25, 2008 |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO SOLO CUP COMPANY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 4

II.  THE LEGAL STANDARD ................................................................................. 8

III. ARGUMENT ...................................................................................................... 8

   A.   PLAINTIFF SATISFIES ALL REQUIREMENTS FOR ARTICLE III STANDING.... 8

      1.   The Supreme Court's Decision in *Vermont Agency* Makes Clear that Plaintiff has Standing ................................................................................................................. 8

      2.   The United States Has Suffered Injury in Fact ........................................... 10

      3.   There Is a Directly Traceable Link Between Solo's Conduct and the Injury Alleged 11

      4.   The Civil Penalties Set Forth by 35 U.S.C. §292 Provide A Remedy for The Injuries Alleged ..................................................................................................... 12

      5.   Plaintiff is the Assignee or Designated Representative of the United States for the Case and Controversy Alleged ....................................................................... 13

      6.   35 U.S.C. §292 *Is* A Qui Tam Statute ........................................................ 15

   B.   MAINTAINING THIS ACTION DOES NOT VIOLATE THE SEPARATION  OF POWERS DOCTRINE ........................................................................................ 17

   C.   PLAINTIFF, AS AN ASSIGNEE OF A CAUSE OF ACTION OF THE UNITED STATES, CAN PROPERLY BRING THIS ACTION PRO SE ............................................. 18

IV. CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Texas*, 347 U.S. 272 (1954) ................................................................. 7, 16, 18

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) ........................................... 4

*Claderwood v. Mansfield*, 71 F.Supp. 480 (N.D.Ca. 1947) ..................................................... 15

*Fear v. Horner Sales Corp.*, 10 F.R.D. 25 (W.D. Pa. 1950) ........................................................ 9

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc*, 528 U.S. 167 (2000) ..... 12, 13

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). ............................................................. 8, 12

*Marvin v. Trout*, 199 U.S. 212 (1905) ..................................................................................... 6

*Pentlarge v. Kirby*, 19 F. 501 (D.C.N.Y. 1884) .................................................................... 15

*Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180 (1997) ............................................. 13

*U.S. ex rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208 (7th Cir. 1995) ............................. 14

*U.S. ex rel. Kreindler & <u>Kreindler</u> v. United Technologies Corp.*, 985 F.2d 1148 (2nd Cir. 1993) ................................................................................................................................. 14

*U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935 (6th Cir. 1997). ...... 8

*U.S. ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46 (4th Cir. 1992) ............................................................................................................................... 4, 7, 15

*Vermont Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S. 765 (2000) ........ passim

*Warth v. Seldin*, 422 U.S. 490 (1975) .................................................................................. 10

*Winne v. Snow*, 19 F. 507 (S.D.N.Y. 1884) .......................................................................... 15

**Statutes**

1 U.S.C.A. §1 ...................................................................................................................... 14

15 U.S.C. 1125(a)(1)(B). .................................................................................................... 17

25 U.S.C. §201 ............................................................................................................... 7, 16

35 U.S.C. § 292 ............................................................................................................... 6, 12

U.S. Const. Art. IV, § 3, Cl. 2. ....................................................................................... 7, 16

Plaintiff, Matthew A. Pequignot ("Plaintiff"), hereby opposes *Defendant Solo Cup Company's ("Solo") Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)* for the reasons set forth below:

## I.    INTRODUCTION

This case is a cause of action for Defendant Solo's false marking of literally billions of consumer articles in violation of 35 U.S.C. §292, a *qui tam* statute, such false marking being offensive to the important public interest in allowing "the public to rely on marking as 'a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.'" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 162 (1989). This matter is now before the Court on Solo's motion to dismiss this case for lack of Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

In support of its motion seeking to dismiss the subject cause of action on the contention that Plaintiff lacks Article III standing, Solo principally argues that 1) Plaintiff has not suffered or alleged any injury to himself and that 2) 35 U.S.C. §292 is not a *qui tam* statute. For the reasons explained below, Solo's arguments in support of its motion are largely irrelevant and otherwise unsupported by the facts or in law and thus its motion should be denied.

First, Solo's focus on Plaintiff's direct injury is immaterial to this litigation.[1] *U.S. ex rel. Milam v. University of Texas M.D. Anderson Cancer Center,* 961 F.2d 46 (4th Cir. 1992). The portions of 35 U.S.C. §292 which are alleged to have been violated in this case are plainly intended to protect against injury to the United States and its public. The Amended Complaint

---

[1] Although Plaintiff does not concede that he has not been injured, it is Plaintiff's position that any injury to Plaintiff is redundant to the injury caused to the United States in this *qui tam* cause of action.

4

alleges that injury—specifically observing the injury to fair competition and the consuming

public caused by Solo's acts, see Am. Comp. ¶¶53-58—and those allegations must be taken as

true for the purposes of this motion to dismiss.  More importantly, however, Solo itself appears

to recognize, correctly, that the violation of the false marking statute itself constitutes a sufficient

injury to the United States to give it standing.  Such injury having been pled, Plaintiff now

invokes the standing of the United States as the assignee (or designated representative) of its

claim against Solo.  Such assignment (or designation), having been conferred by Congress, is

evident from the plain language of §292(b) which provides, "[a]ny person may sue for the

penalty, in which event one-half shall go to the person suing and the other to the use of the

United States."[2]

   To the extent any doubt has existed as to the validity or constitutionality of such a

provision (or the "assignment" rationale set forth *supra*), such doubt was decisively resolved by

the Supreme Court in *Vermont Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S.

765 (2000) which unambiguously recognized that under *qui tam* statutes, such as §292, a

plaintiff need not have suffered an direct injury; rather, the Court found that a plaintiff has

standing based precisely on the "assignment" rationale discussed above.  *Vermont Agency*, 529

U.S. at 773 ("We believe...that adequate basis for the relator's suit...is to be found in the

doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the

---

[2] The authority of Congress for conferring standing by assignment as such is provided by the
Constitution itself. "The Congress shall have Power to dispose of and make all needful Rules and
Regulations respecting the Territory or other Property belonging to the United States; and
nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States,
or of any particular State." U.S. Const. Art. IV, § 3, Cl. 2. Congress's authority under the
Property Clause "is not confined to the territory of the United States," but "may be applied to the
due regulation of all other personal and real property rightfully belonging to the United States."
Joseph Story, *Commentaries on the Constitution of the United States* 478 (Ronald D. Rotunda &
John E. Nowak eds., 1987).

assignor.").[3] While *Vermont Agency* was decided in the context of another *qui tam* statute - the False Claims Act, the Court's rationale did not turn in any way on the formalities of the False Claims Act, and notably, its ruling was consistent with the prior authorities holding that under §292, a *qui tam* plaintiff need not prove a direct injury to himself to bring a false-marking case. Contrary to Solo's vehement protests, *Vermont Agency* applies with equal force in this case and is dispositive.

Although, in a similar line of argument, Solo also contends that 35 U.S.C. §292 is not a *qui tam* statute because it does not impose certain conditions on the informer or relator analogous to those imposed by the False Claims Act ("the FCA") (Solo's Motion at 9-10), the answer to that challenge is found, once again, in the words of the Supreme Court in *Vermont Agency*. Conclusively, the *Vermont Agency* Court specifically recognized §292 as containing a *qui tam* provision. "Three other *qui tam* statutes, all also enacted over 100 years ago, remain on the books. See... 35 U.S.C. § 292(b) (providing cause of action and share of recovery against a person falsely marking patented articles)..." *Vermont Agency*, 529 U.S. at 769.[4] That Congress

---

[3] See also, *Marvin v. Trout*, 199 U.S. 212, 225 (1905) rejecting a challenge to a *qui tam* provision, "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government. The right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer."

[4] See also the Historical and Revision Notes to 35 U.S.C. §292 clearly identifying the statute extant as an "informer" statute – that is, one in which a relator invokes the standing of the government resulting from its injury. "The *informer action* is included as additional to an ordinary criminal action." 35 U.S.C. §292 Revision Notes and Legislative Reports, 1952 Acts. Based on Title 35, U.S.C., 1946 ed., § 50 (R.S. 4901 [derived from Act July 8, 1870, c. 230, § 39, 16 Stat. 203] ) (emphasis added). And, see *Pentlarge v. Kirby*, 19 F. 501, 503 (D.C.N.Y. 1884) ("It is an action qui tam for the use of the informed and the government."); *Winne v. Snow*, 19 F. 507, 508 (S.D.N.Y. 1884) ("The suit is a qui tam action to recover a penalty under section 4901 . . . In such cases the United States is not regarded as a party to the action."); *Claderwood v. Mansfield*, 71 F.Supp. 480, 480 (N.D.Ca. 1947) (This is a qui tam action to recover the

chose not to impose such conditions in the "false marking statute" at issue before this Court is *utterly* irrelevant. Omitting such requirements in §292 is in full accord with the authority of Congress provided to it by the Constitution to freely regulate the rights of the property of the United States. U.S. Const. Art. IV, § 3, Cl. 2. "The power of Congress to dispose of any kind of property belonging to the United States 'is vested in Congress without limitation.'" *Alabama v. Texas*, 347 U.S. 272, 273 (1954) (citation omitted). See also *U.S. ex rel. Milam*, 961 F.2d at 49 ("('Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice.'). Congress has let loose a posse of *ad hoc* deputies to uncover and prosecute frauds against the government.").

Further eroding the plausibility of Solo's challenge to the *qui tam* nature of §292, it is notable that of the three *qui tam* statutes now in existence, only the FCA imposes the types of conditions that Solo relies upon on in its challenge. See 25 U.S.C. §201. Moreover, 25 U.S.C. §81, a fourth but recently repealed *qui tam* statute, similarly failed to impose conditions analogous to those imposed by the FCA. As *Vermont Agency* removes any doubt that such statutes are of the *qui tam* variety[5], clearly to be a *qui tam* statute cannot be conditioned on the inclusion of the types of provisions in the FCA Solo directs this court to consider.

The decision in *Vermont Agency,* the other authorities discussing §292's injury requirement, and *qui tam* statutes' rich history in United States law, uniformly compel a decision that Article III's standing requirements have been satisfied in this case.

___

penalties prescribed by R.S. 4901, 35 U.S.C.A. §50.")
[5] *Vermont Agency*, 529 U.S. at 769.

II.     THE LEGAL STANDARD

To defeat a motion to dismiss on the pleadings, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claims.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "A motion to dismiss is properly granted only if it appears that the plaintiff can prove no set of facts which would entitle [it] to relief." *U.S. ex rel. McKenzie v. BellSouth Telecommunications, Inc.,* 123 F.3d 935, 938 (6th Cir. 1997). "All factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff." *Id.* at 938.

A plaintiff must satisfy three requirements to satisfy Article III standing. Specifically, first, a plaintiff must allege injury in fact - that is, "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical'". Second, a plaintiff must show a causation of such injury "'fairly . . . trace[able]' . . . between the alleged injury in fact and the alleged conduct of the defendant". Finally, a Plaintiff must demonstrate redressability, that is, a Plaintiff must seek relief which has "a 'substantial likelihood' that it will remedy the alleged injury in fact". *Vermont Agency,* 529 U.S. at 771.

III.    ARGUMENT

    A.     PLAINTIFF SATISFIES ALL REQUIREMENTS FOR ARTICLE III STANDING

        1.     The Supreme Court's Decision in *Vermont Agency* Makes Clear that Plaintiff has Standing

8

In *Vermont Agency*, the Court made clear that Plaintiff has standing to pursue this action. After properly identifying §292 as a *qui tam* statute, see 529 U.S. at 769, the Court went on to address the standing requirements under such *qui tam* statutes. The Court concluded that the plaintiff in the action—the so-called *qui tam* relator—need not demonstrate a direct injury to himself in order to proceed with the action. Instead, the United States' injury in fact suffices to confer standing. *Id.* at 772-778. The Court's conclusion in this regard was consistent with the wealth of authority on the issue of standing under the *qui tam* statutes, including every treatise and judicial decision to discuss the injury requirement under §292.[6] The Court found that the basis for this conclusion was that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773. The Court justified its decision that *qui tam* relators need not demonstrate a direct injury to themselves by pointing to the "long tradition of *qui tam* actions in England and the American Colonies," a history that was "particularly relevant to the constitutional standing inquiry since . . . Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Id.* at 774 (quotations omitted). The Court concluded: "We think this history well nigh conclusive with respect to the question

---

[6] *See, e.g., Patents: False-Marking Litigation*, 26 Fed. Proc. L. Ed. §60:1239 ("Any person may sue for the penalty provided by the false-marking statute, and a party need not have suffered any special or private injury from the act alleged as constituting a violation of the act in order to sue to recover the penalty."); Am. Jur. 2d, *Patents*, §1087 (same); *Fear v. Horner Sales Corp.*, 10 F.R.D. 25, 27 (W.D. Pa. 1950) (plaintiff "brings [the false-marking action] as informer and need not show that he has been injured by the acts of the defendant"); *Calderwood v. Mansfield*, 71 F. Supp. 480, 481 (D. C. Cal. 1947) ("[I]njury to private interest is not pertinent."); *Pentlarge v. Kirby*, 19 F. 501, 503 (D.C.N.Y. 1884) ("One half of any recovery in such suits may go to whomsoever it may please to sue, though the plaintiff have no special interest in the subject, and may not have sustained any actual injury. It is an action qui tam for the use of the informed and the government.").

before us here: whether *qui tam* actions were cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Id.* at 777 (quotations omitted).[7]

The Supreme Court's decision in *Vermont Agency* is dispositive. By its express terms, §292 effects an assignment of the United States' claims to the *qui tam* plaintiff, and thus Plaintiff must only demonstrate that the United States suffered a constitutionally cognizable injury. As demonstrated below, Solo's violation of §292 plainly constitutes an injury in fact to the United States, and thus Plaintiff has standing to pursue this action.[8]

### 2.    The United States Has Suffered Injury in Fact

"The actual or threatened injury required by Art.III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Warth v. Seldin,* 422 U.S. 490, 500 (1975); *Vermont Agency,* 529 U.S. at 773.[9] In determining whether there is injury in fact, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claims.'" *Lujan,* 504 U.S. at 561.

Plaintiff, in his Amended Complaint, has undeniably alleged that Solo's patent related marking practices have quelled competition thereby specifically causing harm to the United States (for example, paragraph 57 of Plaintiff's Amended Complaint alleges, "SOLO CUP's marking of lid products with expired patents and/or advertising thereof... has quelled

---

[7] *See also* False Claims Act: Whistleblower Litigation, §4-2, at 240 (5th ed. James B. Helmer Jr. eds. 2007) (noting First Congress, many of whose members were framers of the Constitution, relied heavily on qui tam statutes, providing strong evidence that such statutes are constitutional).

[8] While Plaintiff need not demonstrate a direct injury to himself in order to maintain this action, Plaintiff is in fact a consumer who has purchased numerous of Solo's products and been injured by Solo's anticompetitive and fraudulent marking practices. If the Court determines that an allegation of personal injury is required (and is not adequately made in the current complaint), Plaintiff respectfully requests leave to replead for this limited purpose.

[9] This is one point which appears to be conceded by Solo. (Solo Motion at 8).

competition with respect to the identified lid products...thereby causing harm to the United

States...").[10] Furthermore, Plaintiff has specifically alleged that Solo's patent related marking

practices are violations of 35 U.S.C. §292, a law of the United States (see paragraph 49 of

Plaintiff's Amended Complaint which alleges, "SOLO CUP has... 'falsely marked' its lid

products, with the intent to deceive the public, in violation of 35 U.S.C. §292." ).[11]  As the Court

in *Vermont Agency* observed, the injury to the United States' sovereignty arising from the

violation of its laws unquestionably gives rise to an Article III injury to the Government.  529

U.S. at 771.  Presuming Plaintiff's pleadings are true as this Court is required to do, and

recognizing violations of the laws of the United States, themselves, as being an injury to the

United States, Plaintiff has sufficiently alleged that the United States has suffered injury in fact

for the purposes of Article III standing.[12]

      3.     There Is a Directly Traceable Link Between Solo's Conduct and the Injury
Alleged

Causation is "a 'fairly . . . trace[able]' connection between the alleged injury in fact and

the alleged conduct of the defendant." *Vermont*, 529 U.S. at 771. In this case, as is plainly

evident from Plaintiff's Amended Complaint, it is the very marking conduct of Solo that is

alleged as having caused the identified injuries to the United States (e.g., such conduct, at a

minimum, being a violation of the laws of the United States). As but one example, Plaintiff's

Amended Complaint explicitly sets forth that "SOLO CUP has... 'falsely marked' its lid

---

[10] Regarding Solo's marked packaging, see also paragraph 58, "SOLO CUP's marking of
*product packaging* ...has quelled competition with respect to the identified products ...thereby
causing harm to the United States..." (emphasis added).

[11] Similarly, Plaintiff's Amended Complaint alleges, "SOLO CUP has wrongfully and illegally
advertised patent monopolies which it does not possess...", an anticompetitive type of harm
redressable under 35 U.S.C. §292. (Plaintiff's Amended Complaint, ¶59).

[12] Even if the procedural safeguards are needed.

products, with the intent to deceive the public, in violation of 35 U.S.C. §292." (Plaintiff's Amended Complaint, ¶49; see also Plaintiff's Amended Complaint, ¶57). Thus, even though all of the injury alleged in Plaintiff's complaint can be logically traced to the accused conduct of Solo, the complaint does more. It, by its plain wording, expressly links Solo's conduct as the cause of the alleged injury. In sum, presuming the averments of Plaintiff's complaint to be true, Plaintiff has sufficiently demonstrated that the harm at issue in this case is at least "fairly traceable" to the harm or injury of the United States.

4.   The Civil Penalties Set Forth by 35 U.S.C. §292 Provide A Remedy for The Injuries Alleged

The requirement to demonstrate redressability to establish standing is a requirement that a Plaintiff must demonstrate that there is "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont*, 529 U.S. at 771. In this case, the plain words of the statute itself set forth the remedy selected by Congress for the alleged violations of the law. For violations of §292, the adjudged "[s]hall be fined not more than $500 for every such offense." 35 U.S.C. §292(a).

While Solo challenges the likelihood of redressability or remedy under this statute, Solo fails to demonstrate why this Court should not defer to Congress' judgment that the fine selected – in a statute having an evolutionary history in legislature of more than 150 years – is an appropriate penal remedy for the injury protected against by the statute. Congress has the unique authority to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," and absent compelling evidence that Congress has overstepped such constitutionally granted powers, the wisdom of Congress in the enactment of its laws should be respected. *Lujan*, 504 U.S. at 580; see also *Friends of the Earth, Inc. v.*

12

*Laidlaw Environmental Services, Inc*, 528 U.S. 167, 185 (2000) (deferring to the powers of Congress to create certain remedies in the Clean Water Act, "[t]his congressional determination warrants judicial attention and respect."); *Turner Broadcasting System, Inc. v. F.C.C.*, 520 U.S. 180, 196 (1997) (stating "courts must accord substantial deference to predictive judgments of Congress.").

In the controversy now at issue, to the extent a civil penalty arising under §292 may ultimately be imposed by this Court, such civil penalty – particularly if properly valued – will not only compensate the United States for the anticompetitive harm which is presumed to have occurred, but, as well, will deter Solo from false marking in the future. Thus, the civil penalty which is provided by §292 serves the important interest of protecting the United States from *prospective* illegal marking practices. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.* where the Court held that the plaintiff environmental organization could seek civil penalties payable to the United States Treasury because such relief redressed its continuing interest in being free from illegal pollutant discharges in the future. 528 U.S. at 185-186.[13]

In summary, an award of civil penalties here - should Solo be deemed culpable under the statute - would redress the false marking injury alleged by Plaintiff by not only providing compensation for such harm, but by deterring the future unlawful conduct of Solo thus protecting the United States from future injury.

     5.     <u>Plaintiff is the Assignee or Designated Representative of the United States</u>
                <u>for the Case and Controversy Alleged</u>

---

[13] Relevant to the Court's conclusion was the supposition that any company "in violation" of the Act at the time the complaint was filed would likely repeat such conduct in the future. *Id.*

In accordance with the authority of Congress recognized by the Supreme Court in *Vermont Agency*, the plain language of 35 U.S.C. §292 provides that, for violations of the subject *qui tam* false marking statute, "[a]ny person may sue for the penalty in which event one-half shall go to the person suing and the other to the use of the United States."[14] In specifically recognizing the sufficiency of standing for plaintiffs bringing lawsuits by the authority of such a *qui tam* type provision, the Supreme Court reasoned that Congress, by its enactment of such a provision in law, has assigned the subject cause of action to Plaintiff. [15] *Vermont Agency*, 529 U.S. at 773 ("We believe, however, that adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor.").

As Plaintiff is, in effect, invoking the standing of the United States in bringing his claim against Solo for false marking (in accordance with the plain meaning of the statute), Solo's accusations that Plaintiff, himself, has not been directly injured are simply misplaced. Requiring Plaintiff, here, to show an additional injury to himself "would be an analytical redundancy." *U.S. ex rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208, 1214 (7th Cir. 1995); see *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1154 (2nd Cir. 1993) ("Where there is evidence of palpable injury to the entity on whose behalf and in whose name the suit is brought, it is superfluous to require that the relator be individually aggrieved.") (citation omitted); see also *U.S. ex rel. Milam v. University of Texas M.D. Anderson Cancer*

---

[14] Any "person" includes any "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, *as well as individuals*." 1 U.S.C.A. §1. (emphasis added).
[15] As an alternative theory, the Court in *Vermont Agency* appears to condone that under certain statutes, it may be appropriate to recognize an informer or *qui tam* plaintiff as a designated representative of the United States. *Vermont Agency*, 529 U.S. at 772.

*Center*, 961 F.2d 46, 49 (4th Cir. 1992) ("The government, and not the relator, must have

suffered the 'injury in fact' required for Article III standing.").

To the extent that Solo argues that there is no contractual consideration in this case for

such assignment, Plaintiff submits to the Court the fact that §292 provides an informer plaintiff

with one half of any penalty which is awarded for false marking violations in exchange for the

efforts by the informer – in this case Plaintiff – for not only discovering the injury, but taking on

the substantial cost and burden in prosecuting this case on the government's behalf.  See *U.S. ex*

*rel. Milam*, 961 F.2d at 49 ("A *qui tam* relator is essentially a self-appointed private attorney

general, and his recovery is analogous to a lawyer's contingent fee.").

6.    35 U.S.C. §292 *Is* A Qui Tam Statute

While recognizing that §292 has been "referred to" and "characterized as" a *qui tam*

statute by courts, Solo's Motion at 3 & n.6, 6, with no plausible support for its contentions

anywhere in the case law or history of the statute, Solo advances the argument to this Court that

35 U.S.C. §292 is not a *qui tam* statute. Contending as such, Solo argues that §292 does not

confer standing on Plaintiff.   Nevertheless, as Solo acknowledges in its own memorandum (Solo

Motion at 3, 6), the Supreme Court of the United States in *Vermont Agency*, among other courts,

specifically recognizes §292 as a qui tam statute. *Vermont Agency,* 529 U.S. at 769. Moreover,

notwithstanding the fact that its predecessor statutes have been consistently recognized as

containing *qui tam* provisions (see *Pentlarge*, 19 F. at 503 ("It is an action qui tam for the use of

the informed and the government."); *Winne*, 19 F. at 508 ("The suit is a qui tam action to recover

a penalty under section 4901."); *Claderwood*, 71 F.Supp. at 480 (This is a qui tam action to

recover the penalties prescribed by R.S. 4901, 35 U.S.C.A. §50.")), the Historical and Revision

Notes to the current enactment of the false marking statute - 35 U.S.C. §292 - clearly identify the

statute as an "informer" statute. ("The *informer action* is included as additional to an ordinary

criminal action." 35 U.S.C. §292 Revision Notes and Legislative Reports, 1952 Acts. Based on

Title 35, U.S.C., 1946 ed., § 50 (R.S. 4901 [derived from Act July 8, 1870, c. 230, § 39, 16 Stat.

203])).

In support of its contention that 35 U.S.C. §292 does not contain a *qui tam* provision,

Solo has submitted a comparison of §292 to the False Claims Act. Although, indeed, the FCA

contains certain provisions, not contained in §292, imposing notice and related requirements on a

relator plaintiff, this is dispositive of nothing. There is no legal or lay definition of *qui tam* which

requires, for example, that the government be noticed or be explicitly permitted to intervene in a

cause of action.[16] Rather, these requirements exist in the FCA, and do not exist in the false

marking act, simply because Congress exercised its well recognized authority to regulate certain

United States property rights in one way in the FCA and a second way in another. See U.S.

Const. Art. IV, § 3, Cl. 2.; *Alabama*, 347 U.S. at 273. Further evidencing the futility of such a

comparison is the fact that the only other *qui tam* statute now in existence contains no provision,

such as those relied on by Solo in its comparisons, even remotely similar or analogous to those

contained in the FCA.[17] And contrary to Solo's contentions, the Supreme Court in *Vermont*

*Agency*--a decision that both identified §292 as a *qui tam* provision, and upheld standing under

---

[16] "*Qui tam*" is defined as "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Black's Law Dictionary, 7th Ed., West Group, St. Paul, Minn., 1262 (1999). The literal meaning of *qui tam* is derived from a Latin phrase meaning "he who brings the action for the king as well as for himself".

[17] 25 U.S.C. §201 recites: "All penalties which shall accrue under Title 28 of the Revised Statutes shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States, before any court having jurisdiction of the same, in any State or Territory in which the defendant shall be arrested or found, the one half to the use of the informer and the other half to the use of the United States, except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use."

*qui tam* provisions without a showing of direct injury to the plaintiff--did not ground its holdings in the formalities of the FCA.[18]

In further argument, Solo submits that §292 cannot confer standing on Plaintiff, because, according to Solo, the Lanham Act does not permit suits by individual consumers which are not competitors. In comparing the relevant clause of §292 to that of the Lanham Act, however, Solo fails to acknowledge that the plain, literal language of the Lanham Act only permits a cause of action by a person who "is or is likely to be damaged by such act." 15 U.S.C. 1125(a)(1)(B). In contrast, §292 provides that "any person" may bring suit without requiring, such as in the Lanham Act, that such person be personally damaged (or be likely to be damaged). For this reason, any comparison by Solo of the case law constructions of the scope of standing conferred by the Lanham Act are irrelevant to the construction of  §292.

B.     MAINTAINING THIS ACTION DOES NOT VIOLATE THE SEPARATION
       OF POWERS DOCTRINE

Although Solo makes the additional argument that the Court's maintenance of this cause of action would be a violation of the doctrine of the separation of powers (Solo Motion at 11), Solo's arguments in this respect are merely a rehashing of its arguments presented elsewhere that §292 does not adequately authorize Plaintiff to bring this lawsuit.  Contrary to Solo's contentions, however, maintaining Plaintiff's cause of action does not require this Court to exceed its authority under the Constitution or to interfere with the powers of the Executive Branch.  And unsurprisingly, given that *qui tam* statutes are older than the Republic, Solo fails to

---

[18] Compliance with the notice requirements of the FCA is, as is argued in the text, entirely unnecessary.  If, however, the Court is convinced that notice to the Government is constitutionally mandated, rather than dismiss the instant action, the Court could stay the case and order that timely notice be provided.

cite even one judicial decision holding that such provisions, including §292, violate the

Separation of Powers doctrine. Instead, a decision that Plaintiff has standing as a qui tam

plaintiff to pursue this action simply requires this Court to defer to the *literal* language of §292

providing that "any person" may bring a false marking cause of action and thereby honor "[t]he

power of Congress to dispose of any kind of property belonging to the United States" which "'is

vested in Congress without limitation.'" *Alabama*, 347 U.S. at 273.

C.     PLAINTIFF, AS AN ASSIGNEE OF A CAUSE OF ACTION OF THE UNITED
       STATES, CAN PROPERLY BRING THIS ACTION PRO SE

In addition to contending that Plaintiff does not have standing to maintain this case, Solo

has requested dismissal of this matter for the reason that Plaintiff is not represented by counsel.

Solo's argument, in this regard, is founded principally on the supposition that Plaintiff is, at

most, a *partial* assignee of the United States' cause of action extant. Although the Supreme

Court has conclusively decided that informer plaintiffs *under the False Claims Act* are, indeed,

only partial assignees, it did so, it appears, because the FCA expressly divides or hybridizes the

*interests* in the lawsuit between the relator and the government and not merely the award which

might be obtained by the action. *Vermont Agency*, 529 U.S. at 772. In this regard, despite that the

statute gives the government express authority to intervene in an FCA action, the Act also "gives

the relator 'the right to continue as a party to the action' even when the Government itself has

assumed 'primary responsibility' for prosecuting it." *Vermont Agency*, 529 U.S. at 772. The Act

further prohibits the Government from settling the suit over the relator's objection without a

judicial determination of "fair[ness], adequa[cy] and reasonable[ness]." *Vermont Agency*, 529

U.S. at 772.

Because §292 neither requires that a suit be brought both in the name of the relator and the United States as does the FCA, and because Congress did not expressly hybridize the *interests* of the United States and the plaintiff relator in false marking actions under §292 (as it did with the FCA), Plaintiff is properly viewed not as a partial assignee, but as a *full* assignee of the present cause of action (the United States, of course, retaining a right to fifty percent of any recovery).

If Plaintiff is deemed a full assignee as he should be, then Solo's arguments that Plaintiff cannot proceed in this cause of action *pro se* should fail. Assignment of a claim places the assignee in the shoes of his assignor. The claim becomes the assignee's claim, and he may, of course, litigate his own claim if he elects to. If, on the other hand, Congress intended that *qui tam* actions under §292 would be pursued only by individuals with representation, Congress could have so provided. It did not. Nevertheless, to be clear, it is Plaintiff's intention to have counsel make an appearance in this matter in due course (for reasons unrelated to Solo's motion). Therefore, should this Court agree with Solo that this matter may not continue with Plaintiff unrepresented by counsel, Plaintiff requests that this action not be dismissed, but, rather, that Plaintiff be granted leave for such counsel to timely enter appearances in this case.

## IV.   CONCLUSION

In summary, Solo's motion seeking to dismiss this cause of action is a request that this Court preclude Congress from assigning a cause of action of the United States in derogation of Congress's authority under Article IV to dispose of property belonging to the United States. For this reason, as well as each of the reasons set forth *supra*, Plaintiff respectfully requests this Court deny *Solo's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)*.

Date:   April 9, 2008

Matthew A. Pequignot
*Pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2008, I will serve PLAINTIFF'S

OPPOSITION TO SOLO CUP COMPANY'S MOTION TO DISMISS FOR LACK OF

SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1) on Defendant

Solo Cup Company by electronically mailing same to the following:

> Mary C. Zinsner
> Troutman Sanders
> 1660 International Drive
> Suite 600
> McLean, VA 22102
> mary.zinsner@troutmansanders.com
>
> Jason C. White
> Brinks Hofer Gilson & Lione
> NBC Tower, Suite 3600
> 455 North Cityfront Plaza Dr.
> Chicago, IL 60611-5599
> jwhite@brinkshofer.com

Date:   April 9, 2008

_____
Matthew A. Pequignot
*Pro Se*