**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MATTHEW A. PEQUIGNOT,              )
                                   )
        Plaintiff,                 )
                                   )        Civil No. 1:07-CV-897-LMB-TCB
v.                                 )
                                   )
SOLO CUP COMPANY,                  )
                                   )
        Defendant.                 )

**DEFENDANT SOLO CUP COMPANY'S OPPOSITION TO THE
BRIEF OF THE UNITED STATES AS INTERVENOR
DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292**

## <u>TABLE OF CONTENTS</u>

I.      SUMMARY OF SOLO CUP'S ARGUMENTS ................................................. 1

II.     THE HISTORY OF QUI TAM STATUTES IS LARGELY IMMATERIAL
        TO SOLO CUP'S ARTICLE II AND ARTICLE III CHALLENGES AND
        VERMONT AGENCY IS NOT DISPOSITIVE OF THESE CHALLENGES. .... 4

III.    PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT BECAUSE
        HE HAS NOT PLED AN INJURY IN FACT THAT SATISFIES THE
        ARTICLE III "CASE OR CONTROVERSY" REQUIREMENT. ...................... 6

        A.  The U.S. Admits that Plaintiff Has Not Suffered Any Injury-In-Fact
            From the Alleged False Marking. ................................................. 6

        B.  Plaintiff Lacks Standing to Sue on Behalf of the U.S. as a *Qui Tam*
            Relator. ...................................................................................... 7

            1.      35 U.S.C. § 292 is not a *Qui Tam* Statute. ......................... 7

            2.      Section 292 Does Not Authorize This Suit. ..................... 10

IV.     IF THE PRESENT PLAINTIFF HAS ARTICLE III STANDING TO BRING
        THE PRESENT LAWSUIT, SECTION 292 VIOLATES THE "TAKE
        CARE" CLAUSE OF ARTICLE II BECAUSE IT GIVES A PRIVATE
        PARTY EXECUTIVE POWER WITHOUT SUFFICIENT CONTROL BY
        THE EXECUTIVE BRANCH. ......................................................... 12

        A.  Section 292 Does Not Give the Executive Branch "Sufficient Control"
            Over a Private Citizen's Suit Brought on Behalf of the U.S.'s Interests. ........ 13

        B.  The U.S.'s Decision Not to Substantively Intervene Fails to Save
            Section 292 From Being Unconstitutional as Applied to the Facts of
            This Case. .................................................................................. 18

V.      CONCLUSION. ............................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Buckley v. Valeo,*
   424 U.S. 1 (1976)..................................................................................... 12

*Clinton v. Jones,*
   520 U.S. 681 (1997)................................................................................. 12

*Conn. Action Now, Inc. v. Roberts Plating Co.,*
   457 F.2d 81 (2d Cir. 1972).......................................................................... 8

*Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.,*
   165 F.3d 221 (3d Cir. 1998)...................................................................... 11

*Fed. Election Comm'n v. Akins,*
   524 U.S. 11 (1998)................................................................................... 14

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
   528 U.S. 167 (2000)..........................................................................6, 7, 14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).............................................................................11, 14

*Made in the USA Found. v. Phillips Foods, Inc.,*
   365 F.3d 278 (4th Cir. 2004)..................................................................... 11

*Marbury v. Madison,*
   1 Cranch 137 (1803) ................................................................................... 4

*Meyers v. United States,*
   272 U.S. 52 (1926)................................................................................... 12

*Mohawk Indus., Inc. v. Interface, Inc.,*
   No. 07-212, 2008 WL 5210537 (N.D. Ga. Nov. 6, 2008) .................................9, 11, 20

*Morrison v. Olsen,*
   487 U.S. 654 (1988)................................................................................. 13

*N. Pipeline Constr. Co. v. Marathon Pipeline Constr. Co.,*
   458 U.S. 50 (1982)................................................................................... 12

*Printz v. United States,*
   521 U.S. 898 (1997)................................................................................. 13

*Riley v. St. Luke's Episcopal Hosp.,*
   252 F.3d 749 (5th Cir. 2001).............................................................13, 16, 19

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976)..................................................................................... 6

*Stalley v. Orlando Reg'l Healthcare Sys., Inc.,*
   524 F.3d 1229 (11th Cir. 2008) ......................................................8, 9, 10, 11

*Stanfield v. Osbourne Indus.,*
   52 F.3d 867 (10th Cir. 1995) ..................................................................... 11

*Steel Co. v. Citizens for Better Env't,*
   523 U.S. 83 (1998)...................................................................................... 6

*United Seniors Ass'n v. Philip Morris USA,*
   500 F.3d 19 (1st Cir. 2007) ....................................................................... 8

*United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.,*
   104 F.3d 1453 (4th Cir. 1997) ................................................................... 9

*United States ex rel. Kelly v. Boeing Co.,*
   9 F.3d 743 (1993) ...............................................................................14, 16

*United States ex rel. Mattson v. N.W. Paper Co.,*
   327 F. Supp. 87 (D. Minn. 1971).............................................................. 8

*United States ex rel. Stone v. Rockwell Int'l Corp.,*
   265 F.3d 1157 (10th Cir. 2001) ...........................................................16, 19

*United States ex rel. Stone v. Rockwell Int'l Corp.,*
   282 F.3d 787 (10th Cir. 2002) ................................................................. 13

*United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.,*
   41 F.3d 1032 (6th Cir. 1994)................................................................... 14

*United States v. Nixon,*
   418 U.S. 683 (1974).............................................................................13, 16

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
   529 U.S. 765 (2000)........................................................................4, 6, 7, 8

## Constitutional Provisions

*U.S. Constitution, Art. II* .......................................................................passim

*U.S. Constitution, Art. III* ......................................................................passim

## Statutes

15 U.S.C. § 1125 ...................................................................................... 11

31 U.S.C. § 3730 .................................................................................4, 5, 8

31 U.S.C. §§ 3729-3733 ........................................................................5, 15

35 U.S.C. § 292 ...................................................................................passim

42 U.S.C. § 1395y(b)(3)(A) ....................................................................... 9

## Other Authorities

Note, *The Role of the Canon of Avoidance and Reliance on Early Legislative Practice in Constitutional Interpretation,*
   116 Harv. L. Rev. 1798 (Apr. 2003).......................................................... 4

Pursuant to the Court's Order of November 10, 2008, Solo Cup hereby responds to the United States' Brief as Intervenor Defending the Constitutionality of 35 U.S.C. § 292.

## I.   SUMMARY OF SOLO CUP'S ARGUMENTS

The United States ("U.S.") attempts to walk a fine line by simultaneously arguing that § 292 confers standing on plaintiff under Article III, but does not violate the Take Care Clause of Article II.  The fundamental flaws in the U.S.'s arguments, and in § 292 itself, however, are exposed by the glaring fact that the U.S. is forced to take inconsistent positions on these two issues.  In arguing that the current plaintiff has Article III standing, the U.S. states that he represents the U.S.'s interests as a *qui tam* relator.  (*See* U.S. Br. at 2-3.)  But, in arguing that § 292 is constitutional under Article II, the U.S. flips positions and argues that plaintiff does not represent the U.S.'s interests.  (*Id.* at 14-16, 21.)  The U.S. cannot have it both ways.  If the plaintiff represents the U.S.'s interests as a partial assignee of those interests, as the U.S. argues to support standing, then the statute is unconstitutional under Article II because the U.S. cannot exercise sufficient control over the litigation.  If the plaintiff does not represent the U.S.'s interests, as the U.S. argues to support constitutionality under Article II, then he does not have standing to pursue the lawsuit, because the only alleged injury is to the U.S.  Either way, § 292 does not meet the requirements of Article II and Article III, as applied to the facts of this case.

The U.S. also mischaracterizes Solo Cup's arguments when it states that Solo Cup "proceeds from the assumption that the Constitution requires Congress to empower the Executive, and only the Executive, to file and litigate civil suits to collect penalties for violations of federal law." (*Id.* at 15.)  Solo Cup makes no such argument.  Rather Solo Cup's positions are, and have been, twofold.  First, a plaintiff only has Article III

standing to bring an action when he or she can satisfy the three standing requirements articulated by the Supreme Court.  Second, if a plaintiff has proper standing to bring a lawsuit, the statute by which that plaintiff obtained standing cannot violate the Take Care Clause of Article II.  The plaintiff in this case cannot satisfy the standing requirements based on the wording of § 292.  If he is deemed to have standing to bring the current action under § 292 however, then § 292 violates the Take Care Clause.  Solo Cup's arguments are limited to the facts presented in this case, and Solo Cup does not contend, for example, that a proper individual could not bring an action under the False Claims Act ("FCA") or that the FCA violates Article II.

The remainder of the U.S.'s brief presents some interesting points for academic discussion, but it does not remedy the defects noted above.  The U.S. devotes a substantial portion of its brief to a long and detailed history of *qui tam* statutes, but that historical discussion is largely irrelevant to the issues raised by Solo Cup.  The U.S. also overstates the holding of *Vermont Agency* in arguing that its holding is dispositive on the issues raised by Solo Cup.  While the Supreme Court did make note of the history of *qui tam* statutes in finding that a specific plaintiff had standing to bring an action under the False Claims Act, the Supreme Court offered no opinion regarding standing under any of the other so-called *qui tam* statutes and it expressly offered no opinion on whether any *qui tam* statute meets Article II requirements.  As such, neither the history of *qui tam* statutes nor the *Vermont Agency* decision conclusively resolves either of Solo Cup's Article II or Article III challenges to 35 U.S.C. § 292.

With respect to Article III standing, the U.S. also *assumes,* without analysis, that § 292 is a *qui tam* statute and then uses this assumption to bootstrap its standing argument

based on the *Vermont Agency* decision.  In addition to overstating the holding of *Vermont Agency*, the U.S. ignores many of the arguments presented in Solo Cup's briefs that the language of § 292 demonstrates that it is not a *qui tam* statute.  For example, the language of § 292 that purportedly provides standing is unique among existing so-called *qui tam* statutes, and the statute itself is unique in that the U.S. is not the only entity that can suffer injury under the statute.  Indeed, statutes worded very similarly to § 292 have been found by Federal Courts of Appeals not to be *qui tam* statutes and not to confer standing on individuals like the plaintiff in this action.  As Solo Cup has demonstrated in its opening briefs, and further demonstrates below, regardless of whether § 292 is or is not a *qui tam* statute, the actual language of the statute fails to provide the current plaintiff with standing to assert the claims at issue.

As for Solo Cup's Article II challenge, the U.S.'s primary argument is that § 292 does not violate the Take Care Clause because the plaintiff in this action does not represent the U.S.'s interests, so the fact that the U.S. has no control over the litigation doesn't matter.  (*See* U.S. Br. at 14-16.)  However, as noted above, the U.S.'s arguments are contradicted by its own arguments in favor of standing.  The U.S.'s arguments in this regard are unsustainable, and the U.S.'s lack of requisite control over an action initiated by this plaintiff presents a fatal flaw that cannot be overcome.  Article II requires that the Executive Branch retain control over lawsuits alleging harm to the government (both civil and criminal).

In short, while the U.S. brief presents a compelling historical analysis of *qui tam* statutes, it fails to refute the fact that § 292, as written, cannot provide the current

plaintiff with Article III standing to maintain the current action and also comply with Article II mandates.

## II.    THE HISTORY OF QUI TAM STATUTES IS LARGELY IMMATERIAL TO SOLO CUP'S ARTICLE II AND ARTICLE III CHALLENGES AND VERMONT AGENCY IS NOT DISPOSITIVE OF THESE CHALLENGES.

The U.S. provides a lengthy history of *qui tam* actions and argues that because these statutes have existed since before our nation's founding they all must be constitutional under Article II and Article III[1]. The U.S. points to the Supreme Court's *Vermont Agency* decision as further support for its argument. The U.S.'s reliance on both the history of *qui tam* statutes and the *Vermont Agency* decision is misplaced.

Contrary to the U.S.'s arguments, the Supreme Court in *Vermont Agency* did not hold that every so-called *qui tam* plaintiff has standing to maintain any action brought under such a statute. Instead, *Vermont Agency* addressed the specific question of whether the *qui tam* relator in that case had Article III standing under the False Claims Act ("FCA"). *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 768 (2000). In holding that the *qui tam* relator did have Article III standing under the FCA, the Supreme Court referenced the history of *qui tam* statutes, but it did not rest its decision solely on that history. *Id.* at 774-78. Rather, it rested its decision on the language of the FCA, *id.* at 771-73, which is materially different from § 292 in at least the following ways.

- An action under § 292 is brought in the name of the individual, not in the name of the U.S., as required by the FCA, 31 U.S.C. § 3730(b)(1).

---

[1] The U.S.'s premise that laws enacted by the First Congress must have been thought by the Framers to be constitutional is also flawed. *See, e.g.,* Note, *Should the Supreme Court Presume that Congress Acts Constitutionally? The Role of the Canon of Avoidance and Reliance on Early Legislative Practice in Constitutional Interpretation*, 116 Harv. L. Rev. 1798, 1809-12 (Apr. 2003) (explaining how the First Congress enacted a Foreign Affairs bill despite a majority of Congress finding it constitutionally suspect); *see also Marbury v. Madison*, 1 Cranch 137, 176 (1803) (holding Judiciary Act of 1789, 1 Stat. 80, which was enacted by the First Congress, unconstitutional).

4

- The U.S. suffers no proprietary injury by an alleged violation of § 292, whereas a proprietary injury to the U.S. is a prerequisite for a FCA lawsuit, *id.* at § 3729(a).

- Parties other than the U.S. can plead a proprietary injury under § 292, whereas the only injury suffered under the FCA is to the U.S., *compare id.*

- The U.S. receives no advance notice of a lawsuit under § 292, *compare id.* at § 3730(b)(2).

- The U.S. has no clearly defined settlement rights under § 292, *compare id.* at § 3730(c)(i).

- The U.S. has no clearly defined intervention rights under § 292, *compare id.* at § 3730(b)(2).

- A successful plaintiff is not paid out of the U.S.'s recovery under § 292, *compare id.* at § 3730(d)(1)-(2).

In view of these many differences between the FCA and § 292, the Supreme Court's decision regarding standing in *Vermont Agency* is not dispositive of Solo Cup's Article III challenge to § 292.

As for Article II, *Vermont Agency* explicitly failed to reach the issue of whether any so-called *qui tam* action, including the FCA, violates Article II, noting that it "express[ed] no view on the question of whether qui tam suits violate Article II, in particular the Appointments Clause of § 2 and the 'Take Care' clause of § 3." 529 U.S. at 778 n.8. Simply put, the *Vermont Agency* case is not determinative on the Article II and Article III issues raised by Solo Cup, and the specific facts in this case must be analyzed to determine whether the plaintiff can properly maintain the present action in compliance with both Article II and Article III.

III.   **PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT BECAUSE HE HAS NOT PLED AN INJURY IN FACT THAT SATISFIES THE ARTICLE III "CASE OR CONTROVERSY" REQUIREMENT.**

Article III of the Constitution restricts the jurisdiction of federal courts to actual "cases or controversies." *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). If plaintiff cannot show that his complaint presents a justicable "case or controversy" that gives him Article III standing, then the Court must dismiss the case for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 109-10 (1998) (refusing to reach merits of case based upon lack of subject matter jurisdiction where plaintiff failed to show standing). The Supreme Court has held that a plaintiff has the burden to show Article III standing. *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). This requires that (1) the plaintiff has suffered an injury in fact, which is a harm that is both concrete or actual and imminent; (2) the injury was caused by the alleged conduct of the defendant; and (3) the alleged harm is redressable by the court. *Id.* These three standing requirements must be met in all cases, including *qui tam* actions. *Vt. Agency*, 529 U.S. at 771-72. Each possible avenue to standing that plaintiff has proposed is encumbered by insurmountable obstacles.

A.   **The U.S. Admits that Plaintiff Has Not Suffered Any Injury-In-Fact From the Alleged False Marking.**

There is no real dispute that plaintiff has not been personally injured in any way by the alleged false marking. The U.S. made no attempt to establish any harm to the plaintiff, and instead, rested its standing argument solely on the theory that plaintiff is a

partial assignee of the U.S.'s alleged sovereign injury. However, as explained below, that avenue to standing is also foreclosed to plaintiff, so he cannot meet his burden of establishing standing under Article III. *Friends of Earth*, 528 U.S. at 180-81.

### B.     Plaintiff Lacks Standing to Sue on Behalf of the U.S. as a *Qui Tam* Relator.

Because plaintiff has not been personally injured by the alleged false marking, the only possible way for standing to exist in this case is for § 292 to be interpreted to allow him to sue on behalf of the U.S. Although the U.S. spends a large part of its brief emphasizing that plaintiff *is not* suing on behalf of the United States in a representational capacity (in its Article II arguments), it simultaneously argues that plaintiff has representational standing because he *is* a partial assignee of the United States' interests when advocating for plaintiff's Article III standing. As part of this argument, the U.S. assumes that § 292 is a *qui tam* statute, like the False Claims Act, and that Congress has therein assigned a partial interest in the U.S.'s injury to plaintiff, which gives him Article III standing. However, the wording of § 292 demonstrates that it is not a *qui tam* statute, and regardless of the label applied to the statute, plaintiff cannot maintain this action on behalf of the U.S.

### 1.     35 U.S.C. § 292 is not a *Qui Tam* Statute.

A *qui tam* statute allows a private person to bring suit in the name of the United States, for the benefit of both the plaintiff and the U.S. *Vt. Agency*, 529 U.S. at 769. The full phrase "*qui tam pro domino rege quan pro se ipso*" in fact means "who pursues this action *on our Lord the King's behalf* as well as his own." *Id.* at 768 (emphasis added). In *Vermont Agency*, the Supreme Court held that *qui tam* relators bringing suit under the False Claims Act have Article III standing as partial assignees of the U.S.'s claims

against the defendant. *Id.* at 773.  The Court explained that a *qui tam* action redresses an injury to the U.S., so that the partial assignment of the United States' claims against a defendant in a *qui tam* statute confers standing on the private plaintiff. *Id.* at 773-78.

The U.S.'s attempts to label § 292 as a *qui tam* statute must fail, however, as § 292 contains no partial assignment of the United States' claims.  The Supreme Court has made clear that such an assignment must be made by Congressional action, and cannot be assumed. *Id.; see also United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 21 (1st Cir. 2007) ("There presently is no common-law right to bring a *qui tam* action, which is strictly a creature of statute."); *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84 (2d Cir. 1972) (holding that explicit authority to bring a *qui tam* action must be found in legislation).  "The right to proceed *qui tam* . . . arises only by affirmative statutory authorization.  In the absence of some unambiguous authorization, [a plaintiff] may not so proceed." *United States ex rel. Mattson v. N.W. Paper Co.*, 327 F. Supp. 87, 93 (D. Minn. 1971).

Section 292 is notably lacking in *any* indication that Congress intended to effect a partial assignment of the U.S.'s interest.  The statute does not provide for a private citizen to sue in the U.S.'s name, and does not state that the citizen sues on behalf of the U.S., as is true with *qui tam* statutes such as the False Claims Act.  35 U.S.C. § 292; *compare* 31 U.S.C.   § 3730(b)(1).  Instead, the plaintiff under § 292 brings suit in his or her own name.  Also, the U.S. is not the only party that is able to demonstrate a proprietary injury under § 292, which is a hallmark of *qui tam* statutes. *Vt. Agency*, 529 U.S. at 774-75 (the injury in a *qui tam* action is to the United States); *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (in a *qui tam* action, the injury-in-fact has

8

been suffered by the government); *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1458 (4th Cir. 1997) (in *qui tam* suit, government must have suffered the injury-in-fact); *see also* U.S. Br. at 2 ("the gravamen of a *qui tam* suit is an allegation of wrong done to the Federal Government").  Instead, competitors are able to plead a proprietary injury under § 292.  *Mohawk Indus., Inc. v. Interface, Inc.*, No. 07-212, 2008 WL 5210537, *3 (N.D. Ga. Nov. 6, 2008) (finding plaintiffs, as competitors of defendant, had suffered a clear injury-in-fact from the alleged false marking).  Furthermore, a successful plaintiff under § 292 is not paid out of the U.S.'s recovery.  Instead, the U.S. receives a portion of what the plaintiff recovers.

Section 292 is much more like the Medicare Secondary Payer Act ("MSP") than the False Claims Act.  The MSP purports to create a private right of action for anyone aware of certain types of Medicare fraud.  42 U.S.C. § 1395y(b)(3)(A).  Courts have refused to allow MSP suits by plaintiffs without any injury-in-fact, however, and have rejected arguments that the MSP is a *qui tam* statute.  *See, e.g.*, *Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008).

In *Stalley*, the Sixth Circuit noted that unlike the False Claims Act considered by the Supreme Court in *Vermont Agency*, the MSP contains no provision permitting a private person to bring suit on behalf of the United States.  *Id.* at 918.  The court found that "had Congress intended that the private action authorized by the MSP be brought on behalf of the United States, it would surely have made that clear in the language of the statute."  *Id.* ("the statute's provision creating a private right of action contains no hint of any intent that the United States—and not the private plaintiff—is the real party in interest in an action brought under that provision").  The court also found that the MSP's

lack of procedural safeguards permitting the U.S. to control litigation brought by a private person was persuasive evidence that the MSP is not a *qui tam* statute. *Id.* Because there is no valid assignment of the U.S.'s interests, a private plaintiff with no injury-in-fact lacks Article III standing to bring a claim under the MSP. *Id.* at 919.

Likewise, § 292 has none of the hallmarks of a valid *qui tam* statute. The provision contains no hint that the U.S. is the real party in interest, and no provisions concerning U.S. control of a private litigant's suit.[2] Indeed, § 292, in its current form, was enacted long after the original version of the FCA, yet the differences in the language of the FCA and § 292 are remarkable. The first version of the FCA, enacted in 1863, stated that lawsuits thereunder

> may be brought and carried on by any person, as well as for himself as for the United States, the same shall be at the sole cost and charge of such person, and shall be in the name of the United States . . . .

Act of March 2, 1863, ch. 67, § 4, 12 Stat. 696. Contrary to § 292, the FCA made clear that the action is brought on behalf of and in the name of the U.S. Surely, if the intent of Congress was for § 292 to function similarly to the FCA, it could have included specific language to that effect. However, it chose not to do so. Section 292 is not a *qui tam* statute, and standing cannot exist based on an argument that it is.

### 2.    Section 292 Does Not Authorize This Suit.

35 U.S.C. § 292(b) provides that "any person may sue for the penalty." Plaintiff bases his right to bring this action on the broad scope of the term "any person," viewed in isolation. Although this language seems broad, federal courts must still operate with the limitation of deciding only actual "cases or controversies." Hence, as has been shown

---

[2] While one of the four factors considered by the court in *Stalley* is present here – namely the sharing of a portion of the recovery with the U.S. – this one factor is not determinative, and the totality of the factors indicate that § 292 is not a *qui tam* statute.

with the Medicare Secondary Payer Act, courts have interpreted similar language (allowing "any person" to bring suit) to require that a plaintiff have suffered a personal injury-in-fact in order to comport with Article III's "case or controversy" requirement. *See Stalley*, 517 F.3d 911.

In the analogous area of trademark law, for example, the Lanham Act provides that a violator of the statute "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125. Courts have held that the phrase "any person who believes" cannot be read literally without creating constitutional standing problems. This phrase has therefore been limited to competitors whose commercial interests have been injured. *See, e.g.*, *Made in the USA Found. v. Phillips Foods, Inc.*, 365 F.3d 278 (4th Cir. 2004); *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998); *Stanfield v. Osbourne Indus.*, 52 F.3d 867, 873 (10th Cir. 1995). Likewise, environmental statutes such as the Clean Air Act that provide for enforcement by "any person" have been interpreted to require the plaintiff to plead a particularized injury-in-fact. *See, e.g.*, 16 U.S.C. § 1540(g); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citizen must have injury-in-fact for standing to bring suit).

And although the phrase "any person" of § 292 has not itself been interpreted in the holding of any court of which Solo Cup is aware, some courts applying the provision have *assumed* that it requires the plaintiff to have suffered a particularized injury-in-fact caused by the alleged false marking. *See, e.g.*, *Mohawk Indus.*, 2008 WL 5210537, at *3 (finding plaintiffs, as competitors of defendant, had suffered a clear injury from the alleged false marking, giving plaintiffs standing). Accordingly, "any person" under

§ 292 can be reasonably interpreted to mean "any person that has suffered an injury-in-fact," which would exclude the current plaintiff, as he has not plead any personal injury.

**IV.   IF THE PRESENT PLAINTIFF HAS ARTICLE III STANDING TO BRING THE PRESENT LAWSUIT, SECTION 292 VIOLATES THE "TAKE CARE" CLAUSE OF ARTICLE II BECAUSE IT GIVES A PRIVATE PARTY EXECUTIVE POWER WITHOUT SUFFICIENT CONTROL BY THE EXECUTIVE BRANCH.**

The Framers of the Constitution created a government characterized by the separation of powers.  Each branch of government was given its own arena of control.  As part of this separation of powers, Article II, § 3 provides that the President "shall take Care that the Laws be faithfully executed."  This duty to enforce federal laws has been termed the most "fundamental" power of the Executive Branch.  *Meyers v. United States*, 272 U.S. 52, 117 (1926).  It includes the authority to investigate and litigate offenses against the United States.  *Buckley v. Valeo*, 424 U.S. 1, 124 (1976).

When one branch interferes with powers granted by the Constitution to a separate branch, the doctrine of separation of powers is violated.  *Clinton v. Jones*, 520 U.S. 681, 701 (1997).  The Supreme Court has described three ways Congress can encroach on the Executive or Judicial Branches: (1) by removing a constitutionally-granted power from another branch; (2) by involving itself in the appointment or removal of officers performing Executive functions; or (3) *by vesting another branch's powers in individuals who, although not controlled by Congress, are not part of the branch authorized by the Constitution to exercise those powers.  See Clinton*, 520 U.S. at 701; *N. Pipeline Constr. Co. v. Marathon Pipeline Constr. Co.*, 458 U.S. 50, 87 (1982); *Buckley*, 424 U.S. at 1.  It is by this third method that Congress has impermissibly encroached upon the Executive Branch's duty to take care that the laws be faithfully executed in § 292.  By assigning the U.S.'s interests to private citizens, Congress has vested Executive Branch powers in the

citizens without providing the Executive sufficient control over any suits to ensure that the laws are faithfully executed.

    **A.**    **Section 292 Does Not Give the Executive Branch "Sufficient Control" Over a Private Citizen's Suit Brought on Behalf of the U.S.'s Interests.**

In determining whether Congress has violated the separation of powers doctrine, a court must focus on the extent to which Congress has prevented another branch of government from accomplishing its constitutionally assigned functions (here, the Executive Branch's duty to take care that the laws be faithfully executed). *United States v. Nixon*, 418 U.S. 683, 711-12 (1974). More specifically, to determine whether the Take Care Clause of Article II has been violated by a statute, the pertinent question is whether the statute gives the Executive Branch "sufficient control" over the statute's enforcement "to ensure that the President is able to perform his constitutionally assigned duties" regardless of whether the statute provides for a civil or criminal right of action. *Morrison v. Olsen*, 487 U.S. 654, 696 (1988) (upholding constitutionality of independent prosecutor statute because it gave the Executive Branch "sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties"); *see also Printz v. United States*, 521 U.S. 898, 922 (1997) (striking provisions of the Brady Act that "effectively transfers this responsibility [to take care that the laws be faithfully executed] to thousands of [state officers] without meaningful Presidential control"); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002) (United States retains "sufficient control" under False Claims Act to satisfy Article II); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) ("the Executive retains significant control over litigation pursued under the FCA by a qui

tam relator"); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (under FCA "the Executive Branch retains 'sufficient control' over the relator's conduct to insure that the President is able to perform his constitutionally assigned duties"); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 758 (1993) (holding that Executive Branch retains "sufficient control" over relators under False Claims Act).

Although the Supreme Court has explained that Article II determinations require application of this "sufficient control" test, the Court has not faced the issue of whether statutes permitting actions by private citizens, where the only alleged harm is to the U.S., are valid under Article II.  Several Justices, however, have flagged that there is a potential Article II violation for statutes that allow a citizen to sue without an injury-in-fact.  In *Vermont Agency*, for example, the Court emphasized that it "expressed no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of Section 2 and the Take Care Clause of Section 3." 529 U.S. at 778 n.8.  In *Friends of the Earth*, 528 U.S. at 197, Justice Kennedy's concurrence began with the statement that "Difficult and fundamental questions are raised when we ask whether exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization, are permissible in view of the responsibilities committed to the Executive by Article II of the Constitution of the United States."  In *Lujan*, 504 U.S. at 577, Justice Scalia explained that the Article III standing requirement was important to prevent Article II violations, and in *Federal Election Commission v. Akins*, 524 U.S. 11, 36-37 (1998), he argued in his dissent that the Federal Election Campaign Act violated Article II because it allowed individuals without an injury-in-fact to sue.

Several lower courts have addressed whether the *qui tam* provisions of the False Claims Act violate Article II[3]. Because the U.S. claims that plaintiff has standing as a *qui tam* partial assignee of the United States' interests, from an assignment purportedly made *sub silencio* in § 292, an analysis of the application of Article II to the False Claims Act is instructive. The False Claims Act, which like § 292 allows for a civil action by an individual, has been held to pass Article II muster only because of the multiple safeguards that permit the U.S. to control the litigation—the Executive Branch must retain sufficient control over a *qui tam* relator's suit to comport with the Take Care clause.

The safeguards of the False Claims Act that courts have deemed vital to its validity under Article II are (1) an FCA action must be brought "in the name of the Government," with notice of the complaint and supporting evidence served on the U.S. *before* the relator is permitted to serve the complaint on the defendant; (2) the U.S. has the power to intervene in any FCA action and control its prosecution; (3) the U.S. can seek to limit the relator's participation; (4) the U.S. can seek dismissal of a relator's suit "notwithstanding the objections of the [relator]", while the realtor cannot dismiss the action without the Attorney General's written consent; (5) the U.S. can seek to stay the relator's discovery; (6) the U.S. can seek alternative remedies, "notwithstanding the objections of the [relator]"; and (7) the U.S. retains the right to be served with all papers, to limit discovery, and to limit recovery even if it chooses *not* to intervene. 31 U.S.C. §§ 3729-3733; *United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1175-76 (10th Cir. 2001); *Riley*, 252 F.3d 749 ("[a]ny intrusion by the [FCA] *qui tam* relator in the Executive's Article II power is comparatively modest, especially given the control

---

[3] It does not appear that any court has evaluated § 292 under Article II.

mechanisms inherent in the FCA to mitigate such an intrusion"); *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 743 ("the FCA gives the Attorney General sufficient means of controlling or supervising relators to satisfy separation of powers concerns").

These safeguards (or any safeguards) are ***entirely*** lacking from § 292.[4]  Section 292 provides no opportunity for U.S. oversight or control whatsoever.  The Supreme Court has held that Article II requires that the Executive Branch be given "sufficient control" over Executive Branch powers exercised by another.  *Nixon*, 418 U.S. at 711-112.  The application of this standard to § 292 is made easy by the complete absence of *any* control retained in the Executive Branch over a private citizen's suit under § 292.  The Executive Branch is thus effectively precluded from its duty to "take care" that the laws be faithfully executed.

This lack of Executive Branch control would lead to untenable results if plaintiffs without any injury-in-fact were permitted to bring suit under § 292.  According to the U.S., any member of the public could sue for the same acts of false marking.  Although the FCA provides safeguards permitting only one relator suit for each injury to the government, § 292 lacks any such controls.  Under the U.S. reading of § 292, therefore, thousands of suits could potentially be brought against Solo Cup for the same governmental sovereign injury based on the same alleged false markings.[5]

---

[4] It is interesting to note that the False Claims Act provisions addressing actions by private persons is several paragraphs long and contains explicit recitations of governmental controls, whereas the § 292 provision addressing who may bring an action thereunder is only a single sentence long and includes no governmental controls.

[5] While Solo Cup believes that subsequent lawsuits alleging the same governmental sovereign injury would be barred, the U.S. was noncommittal, stating only that subsequent lawsuits "may" be barred.  (U.S. Br. at 20.)

The U.S. states that "[t]he Judicial Branch cannot compel the Executive to pursue an enforcement action that it believes is unwarranted." (U.S. Br. at 18.)  But under the U.S.'s interpretation of § 292, the Executive Branch is in danger of being compelled to prosecute an enforcement action that it believes is unwarranted by the *Congressional Branch*.  Where a plaintiff has no personal injury-in-fact and is suing only for the government's sovereign injury (as here), the lack of any safeguards in § 292 ensuring sufficient Executive control over the plaintiff leave the fate of the action for the government's injury entirely in the hands of the plaintiff.

As the U.S. admits, where a plaintiff sues as the partial assignee of the government's injury, any resulting judgment "may have preclusive effect in a subsequent suit brought by the United States." (*Id.* at 20.)  This is true regardless of the skill or diligence of the plaintiff—there is no statutory mechanism under § 292 to ensure that the public interest is actually being served, and nothing to stop the plaintiff from undercutting the public interest for his own via settlement or otherwise (in contrast to the FCA, which gives the U.S. the right to control the litigation).  If a plaintiff sues pursuant to § 292 based on the government's sovereign injury, and then settles for a tiny fraction of what could be recovered (which plaintiff can do under § 292 with no permission or agreement from the U.S.), the government is estopped from later bringing suit itself to recover the full amount of damages to which it (and the public) is entitled.  In short, the lack of safeguards in § 292, as contrasted with the many found in the FCA, show that a plaintiff with no personal injury-in-fact cannot proceed as a "partial assignee of the government's injury" without a violation of Article II.

**B.     The U.S.'s Decision Not to Substantively Intervene Fails to Save Section 292 From Being Unconstitutional as Applied to the Facts of This Case.**

The U.S. admits that the lack of Executive Branch control of a § 292 private citizen plaintiff may render the statute unconstitutional under Article II when the U.S. seeks to substantively intervene (as permission from the Judicial Branch would be required for any intervention or control of the plaintiff).  (U.S. Br. at 22.)  However, the U.S. goes on to argue that § 292 cannot be found unconstitutional in this case because the U.S. is *not* seeking to substantively intervene.  (*Id.*)  This argument ignores the purpose of the Article II requirements; and it runs counter to the appellate court decisions that have held that the lack of government intervention in cases brought under statutes, such as the False Claims Act, increases, rather than decreases, the risk of an Article II violation.

Article II prohibits Congress from granting powers belonging to the Executive Branch to another branch or a private party without leaving the Executive Branch sufficient control to take care that the laws be faithfully executed.  If § 292 implicitly assigned to private citizens the U.S.'s injury from violations of the false marking statute, the constitutional infirmity lies in the U.S.'s grant of Executive power to private citizens with no Executive oversight.  This is true regardless of whether or not the U.S. seeks to intervene because, when the alleged injury is to the U.S., a *qui tam* relator represents the U.S.'s interest, even if the U.S. chooses not to intervene.

In fact, the absence of U.S. intervention creates a greater risk of an Article II violation than a case where the U.S. has intervened and directs the litigation, as the suit proceeds with no input from the Executive Branch.  Courts addressing the validity of the False Claims Act under Article II, for example, have been careful to circumscribe their

rulings on that statute to pass constitutional muster only where the U.S. actually does intervene.  *See, e.g., United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1175-76, 1176 n.6 (10th Cir. 2001) ("We express no opinion regarding whether the FCA's *qui tam* provisions violate the separation of powers or the Take Care Clause in circumstances other than those presented in this case . . . . Accordingly, we agree with the Fifth, Sixth, and Ninth Circuits, and hold that at least where the Government intervenes, the *qui tam* provisions of the FCA do not violate the separation of powers by transgression of the Take Care Clause."); *Riley*, 252 F.3d at 753.  Solo Cup agrees with the U.S. that § 292 presents constitutionality concerns, but it disagrees that the fact that the U.S. has decided not to substantively intervene in this case eliminates those concerns.

The U.S.'s suggestion that the courts would probably decide to allow the U.S. to intervene if it wanted to only serves to highlight § 292's Article II problems:  requiring the courts to decide whether the U.S. has the ability to intervene simply shifts Executive power to the Judicial Branch.  The U.S. also appears to misrepresent the issue raised by Solo Cup when it argues that because a *qui tam* relator does not proceed *as* the United States or its agent, there can be no Article II issues.  This argument is redolent of an Appointments Clause[6] analysis, but has no place here.  Solo Cup has made clear its position that § 292 violates the Take Care clause of Article II because Congress took constitutionally-designated Executive powers away from the Executive Branch and gave them to private citizens, without giving the Executive Branch sufficient control over the citizens' suits.[7]

---

[6]  The Appointments Clause is another grant of power to the Executive Branch found in Article II, but has not been raised by Solo Cup in this case.

[7]  Because Solo Cup has only argued that the statute is unconstitutional as applied to the facts of this case, Solo Cup is not asking the Court to strike down the statute as facially unconstitutional.  Solo Cup is arguing

## V.      CONCLUSION

Plaintiff lacks any injury-in-fact from the alleged false marking and therefore has no standing to maintain this action under Article III.   The U.S. asserts that he has standing as a *qui tam* relator because § 292 effected a partial assignment of the United States' interests in enforcing that statute.   If this is correct, then that assignment was made with no provision for Executive Branch control over the action and therefore violates the Take Care clause of Article II, section 3.

Dated: January 9, 2009                    Respectfully submitted,

/s/ Mary C. Zinsner
Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
Attorneys for Solo Cup Company
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4380
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com


Jason C. White, Esquire
HOWREY LLP
321 North Clark Street, Suite 3400
Chicago, IL  60654
Telephone: 312-595-1239
Fax: 312-595-2250
whitej@howrey.com

---

only that this plaintiff, with no injury-in-fact, cannot prosecute this action consistent with constitutional requirements.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2009, I will electronically file with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ellen D. Marcus, Esquire
Zuckerman Spaeder LLP
1800 M Street, N.W.
Washington, D.C.  20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
Email: emarcus@zuckerman.com

Mia K. Poston, Esquire
Pequignot + Myers, LLC
1636 R Street, NW
Third Floor
Washington, D.C.  20009
Telephone: (202) 328-1200
Facsimile: (202) 328-2219
Email: mposton@pmiplaw.com

*Counsel for Plaintiff*

Steven E. Gordon
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA  22314
Telephone: (703) 299-3700
Email: steve.gordon@usdoj.gov

*Counsel for United States of America*

/s/ Mary C. Zinsner
Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
Attorneys for Solo Cup Company
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703) 734-4334

Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com