IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW A. PEQUIGNOT, | ) |
| Plaintiff | ) |
| v. | ) 1:07cv897 (LMB/TCB) |
| SOLO CUP COMPANY, | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO THE CORRECTED BRIEF OF THE UNITED STATES AS INTERVENOR DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292**

Plaintiff Matthew A. Pequignot respectfully responds to the brief of the United States defending the constitutionality of 35 U.S.C. § 292. As his previous submissions indicate, Mr. Pequignot agrees with the United States that Section 292 is constitutional. In its brief, the United States focuses primarily on the long history of laws in England and the United States authorizing *qui tam* lawsuits—including laws passed by the First Congress—as evidence that Section 292 cannot raise constitutional concerns. U.S. Br. at 5-9. This brief highlights some of the other reasons that defendant Solo Cup Company's ("Solo Cup") constitutional challenges to Section 292 are without merit.[1]

---

[1] Because Mr. Pequignot and the United States agree about the constitutionality of Section 292, we asked Solo Cup's counsel to consent to Mr. Pequignot filing his brief on January 16, the day that the United States is to file its reply. This modification of the briefing schedule would have allowed Mr. Pequignot to comment on any new arguments raised by Solo Cup in response to the United States' defense of the statute. We believe that submitting a brief at that time would have better assisted the Court in its deliberations on the constitutional issues. Solo Cup's counsel did not respond to our inquiries for nearly two weeks and then refused to consent. If Solo Cup's brief, in fact, raises new arguments, Mr. Pequignot may seek leave from the Court to file a short response on January 16.

**ARGUMENT**

I. **MR. PEQUIGNOT HAS ARTICLE III STANDING TO PURSUE FALSE MARKING CLAIMS UNDER SECTION 292**

Mr. Pequignot agrees with the United States that *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765 (2000), is dispositive of Solo Cup's Article III challenge. U.S. Br. at 9-10. Even though the issue in *Vermont Agency* was whether a non-injured relator had Article III standing to pursue a claim under the False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733, the Supreme Court's reasoning squarely applies here to demonstrate that Mr. Pequignot has Article III standing to pursue a Section 292 claim whether or not he has been directly injured by the defendant's illegal conduct.

The relator in *Vermont Agency* alleged that the state agency had made false claims to the Environmental Protection Agency (the "EPA"), in violation of the FCA. The FCA provides that a private person may bring an action under the statute "for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). Just as Solo Cup has in this case, the state agency moved to dismiss on the ground that the relator was not directly injured by the agency's conduct and therefore lacked Article III standing. *Vermont Agency*, 529 U.S. at 770-71.

The Supreme Court observed that there was no doubt that the relator was suing to remedy an injury in fact suffered by the United States: (*i*) an injury to its sovereignty arising from the violation of its laws; and (*ii*) the proprietary injury resulting from the fraud on the EPA. *Vermont Agency,* 529 U.S. at 771. In this case, as in *Vermont Agency*, there is no question that the United States has suffered an injury to its sovereignty arising from the violation of its laws. Further, false marking offends the public's interest in relying on marking as "a ready means of discerning the status of the intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989).

The Court then considered the basis on which the relator could sue and determined that the FCA effected a partial assignment of the United States' claims to the relator. The Court held that "adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vermont Agency,* 529 U.S. at 773. In so doing, the Court explicitly embraced the concept of "representational standing" and "conclude[d], therefore, that the United States' injury in fact suffices to confer standing on [the relator]." *Id.* at 773-74.

Section 292, like the FCA, makes a partial assignment of the United States' claim to the relator. 35 U.S.C. § 292(b). Section 292, like the FCA, assigns a percentage of the recovery to the relator. *Id.* Although the United States can intervene in the case as an interested party under Rule 24 of the Federal Rules of Civil Procedure, Section 292 gives the relator the right to bring, litigate and control the action. To the extent that an FCA relator has Article III standing under the partial assignment theory, a Section 292 relator like Mr. Pequignot also has standing to sue as a partial assignee of the United States' injury.

The Court concluded its analysis by observing that Article III's case and controversy requirement "is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Vermont Agency,* 529 U.S. at 774 (internal citation omitted). To this end, the Court considered the long history of *qui tam* actions, *id.* at 773-78—a history recounted in even greater detail in the United States' brief, U.S. Br. at 5-9. *See also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 n.4 (1943) ("Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government") (internal citation omitted). In light of

3

this, the Court stated that history is "well nigh conclusive" that *qui tam* actions were the sort of cases and controversies amenable to judicial process. *Vermont Agency,* 529 U.S. at 777. Combining this historical analysis with its partial assignment, or representational standing, analysis, the Court held that the FCA relator had standing to sue the state agency even though the relator had not been directly injured by the agency's false claims. *Id*. at 777-78.

Solo Cup's arguments notwithstanding, the holding and reasoning of *Vermont Agency* apply with equal force to Section 292, even though Section 292 lacks some of the FCA's specific procedural provisions permitting the government to intervene in and exert control over a *qui tam* suit. *See* D's Br. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction [D.E. 34] at 2-4, 9-11; D's Reply Br. [D.E. 48] at 1, 3-5.  These procedural provisions of the FCA were not germane to the Supreme Court's decision in *Vermont Agency*.  Nor do they have anything to do with Mr. Pequignot's Article III standing to sue under Section 292.  Once the Court determined that the FCA relator retained an interest in the case after the United States intervened—namely, a portion of the recovery—it concluded that there had been a partial assignment of the government's claims and that the relator had standing. *Vermont Agency,* 529 U.S. at 772-74. The FCA's specific procedural requirements, therefore, had no bearing on the Court's analysis. Similarly, whether or not the United States intervenes in a Section 292 case, the relator retains a 50% interest in the claim, meaning that there has been a partial assignment and the relator has Article III standing.  35 U.S.C. § 292(b).

Solo Cup's argument that the conclusion should be different here than in *Vermont Agency* because Section 292 does not contain the FCA's language that the violator can sue "for the person and for the United States Government . . . in the name of the Government," also misses the mark.  *See* D's Br. in Supp. at 9-10; D's Reply Br. at 5-8.  In *Vermont Agency,* the Court

4

considered whether the relator could sue, based on this language from the FCA, as a designated representative, or agent, of the government. *Vermont Agency,* 529 U.S. at 772. The Court rejected this theory and opted instead for the partial assignment approach, which does not depend on the language in the FCA. *Id.* at 772-74. Similarly, in its brief, the United States emphasizes that a *qui tam* relator is <u>not</u> suing as the United States or as a representative of the United States, but as a private person, even though the lawsuit may further public goals. U.S. Br. at 14, 19-21. For the same reasons that there is a partial assignment under the FCA and a relator can sue on the basis of the United States' injury in fact, there is a partial assignment under Section 292 and Mr. Pequignot, or any other person, can sue on the basis of the United States' injury in fact.

## II.     SECTION 292 DOES NOT VIOLATE ARTICLE II'S TAKE CARE CLAUSE

Mr. Pequignot also agrees with the United States that Solo Cup's contention that Section 292 violates the Take Care Clause, D's Br. in Supp. at 11-12; D's Reply Br. at 13-14, goes against the plain language of the Clause, the long historical precedent of *qui tam* actions and the substantial weight of court precedent. Although not directly relevant to Solo Cup's motion to dismiss, Mr. Pequignot disagrees with the United States that "serious constitutional issues" would be raised if the Executive Branch wished to intervene in a Section 292 *qui tam* case and take it in a different direction than the relator. U.S. Br. at 22. That, of course, is not this case, as the United States notes, because the United States has not intervened on the merits or attempted to redirect the suit. *Id.* at 3-4, 22. Mr. Pequignot therefore agrees with the United States that the issue concerning it need not be decided here, *id.*, but explains below that, even if the government did seek intervention under Federal Rule of Civil Procedure 24, no Article II issue would arise.

The Take Care Clause of the Constitution provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § III. Implicit in Solo Cup's argument that the Executive Branch's authority would be unconstitutionally impinged by allowing Mr.

5

Pequignot to sue Solo Cup for the United States' injury is the view that the Take Care Clause vests <u>all</u> power for enforcement of federal laws with the Executive Branch, and that Congress encroaches on that power by sharing the enforcement power with a private *qui tam* litigant. However, the plain language of the Take Care Clause "does not require Congress to prescribe litigation by the Executive as the <u>exclusive</u> means of enforcing federal law." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (*en banc*) (emphasis in original); *see also United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 751 (9th Cir. 1993) (rejecting assertion that "<u>all</u> prosecutorial power of any kind belongs to the Executive Branch") (emphasis in original).

As the United States notes in its brief, Congress routinely authorizes private citizens to act as "private attorneys general," enforcing the laws through civil actions for monetary and injunctive relief, as well as for punitive damages. U.S. Br. at 15-16. Examples include the Clean Air Act, 42 U.S.C. § 7604, the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Moreover, as detailed thoroughly in the United States' brief, *qui tam* provisions have a long history, both before and after the nation's founding, so that private citizens have incentives to bring lawsuits to protect certain interests of the United States. U.S. Br. at 5-9.

Solo Cup argues that, because Section 292 does not have provisions like the FCA which expressly allow for government intervention and control of a *qui tam* suit, Section 292 violates the Take Care Clause. D's Reply Br. at 13-14. The lack of such provisions in Section 292, however, does not lead to the conclusion that the statute violates the Take Care Clause any more than it leads to the conclusion that Section 292 is infirm under Article III. As set forth here and in the United States' brief, the plain language of the Take Care Clause and long history of *qui tam* statutes show that private citizens may have a role in enforcing federal laws, whether or not

the Executive Branch is involved.  Moreover, Section 292 does not interfere with the Executive Branch's enforcement authority because nothing in the statute precludes the United States from prosecuting violators civilly or criminally, or requires the United States to commit any resources to a case brought by a *qui tam* relator.  U.S. Br. at 18-19.

Nor would the Executive Branch's authority be unconstitutionally impinged if a *qui tam* relator pursued a case against the wishes of the Executive Branch.  The United States asserts in its brief, without explanation, that "serious constitutional issues" would be raised in a Section 292 case, unlike this one, where the United States wishes to intervene and take the case in a different direction than the relator.  U.S. Br. at 22.  In fact, the constitutional analysis would be the same in that case as in this case and would lead to the same conclusion.  As the United States explains in its brief, a *qui tam* relator is a private person suing—not as the United States or as a representative of the United States—but as a partial-assignee of the United States' injury.  *Id.* at 14, 19-21.  Therefore, subject to the United States' ability to intervene in the case as a real party in interest, and other protections afforded by statute and the Federal Rules of Civil Procedure, *id.* at 22, n.11, the *qui tam* relator may take the lawsuit in whichever direction he chooses.  As the United States notes in its brief, "[f]ederal law frequently permits private parties to file civil actions alleging violations of federal law, <u>even if governmental officials believe that no violation has occurred</u>."  *Id.* at 15 (emphasis added).  Indeed, as also noted in the United States' brief, the original version of the FCA "made no provision for intervention or control by the Executive Branch over a relator's suit."  *Id.* at 8 (citing Act of March 2, 1863, at ch. 67, § 6, 12 Stat. 698).  Thus, consistent with the Take Care Clause and separation of powers principles, Congress can authorize private persons to prosecute violations of federal law even if the Executive Branch disagrees with the prosecution of a particular lawsuit.

## CONCLUSION

As the United States has concluded, Solo Cup's constitutional challenges to Section 292 are without merit. Under the clear authority of *Vermont Agency,* Section 292(b) effects a partial assignment of the United States' injury in fact arising from the violation of the statute to any person. Mr. Pequignot therefore has Article III standing to pursue claims against Solo Cup for falsely marking products as patented, in violation of Section 292. Nor does Section 292's grant of enforcement power to private litigants violate the Take Care Clause. Since the First Congress, Congress has enacted *qui tam* provisions like Section 292 so that private citizens may aid in the enforcement of federal laws. Section 292 does not impermissibly interfere with the Executive Branch's authority because the United States is not required to commit its resources to any case and nothing precludes the United States from bringing its own enforcement action or intervening in a case.

For these reasons, and the reasons set forth in Mr. Pequignot's opposition to Solo Cup's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P 12(b)(1), Solo Cup's motion should be denied.

Dated:  January 9, 2008                         Respectfully submitted,

/s/ Ellen D. Marcus
Ellen D. Marcus
Virginia Bar. No. 44314
Carl S. Kravitz (admitted *pro hac vice*)
Jane M. Ricci (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)
emarcus@zuckerman.com
ckravitz@zuckerman.com
jricci@zuckerman.com

> Mia K. Poston
> Virginia Bar No. 68548
> PEQUIGNOT + MYERS, LLC
> 2027 Newcastle Avenue
> P.O. Box 669
> Cardiff by the Sea, California  92007
> (202) 328-1200 (telephone)
> (202) 328-2219 (facsimile)
> mposton@pmiplaw.com
>
> *Attorneys for Plaintiff Matthew A. Pequignot*

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2009, I electronically filed Plaintiff's Response to the Brief of the United States as Intervenor Defending the Constitutionality of 35 U.S.C. § 292 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

/s/ Ellen D. Marcus