IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW A. PEQUIGNOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 1:07-cv-00897-LMB-TCB |
| | ) |
| SOLO CUP COMPANY | ) |
| | ) |
| Defendant. | ) |

**REPLY BRIEF OF THE UNITED STATES AS INTERVENOR
DEFENDING THE CONSTITUTIONALITY OF 35 U.S.C. § 292**

**INTRODUCTION**

In our opening intervenor's brief defending the validity of 35 U.S.C. § 292, we pointed out first that it is very difficult for defendant Solo Cup Company to make a convincing argument that the *qui tam* provisions in that statute are unconstitutional, given that the First Congress and immediately succeeding Congresses enacted various *qui tam* statutes like Section 292(b) in their essential elements. When these early legislators – who included many framers of the recently adopted Constitution – enacted these statutes, they did so with a background of a full history of *qui tam* provisions in England and in the American colonies. Furthermore, the Supreme Court over the decades has issued decisions in numerous cases brought under *qui tam* provisions, and has never given any indication that such provisions are constitutionally infirm. Indeed, in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771-78 (2000), the Court held that *qui tam* relators have standing to sue in federal courts under Article III of the Constitution because they have received a partial assignment by Congress of a chose in action belonging to the United States; in so ruling, the Court explained that "[w]e are confirmed in this conclusion by the long tradition of *qui tam* actions in England and the American Colonies." *Id.* at 774.

Under such circumstances, the ordinary presumption in favor of the constitutionality of statutes enacted by Congress is immensely strengthened. In its briefs on the constitutional issues, Solo Cup has not even approached what should be necessary for it to convince this Court to strike down Section 292(b), which has been in existence since 1842.

Nevertheless, Solo Cup argues that a relator bringing suit under Section 292(b) lacks Article III standing. This argument is plainly wrong in light of *Vermont Agency*. No less than the relator there – who sued under the *qui tam* provisions of the False Claims Act – the relator here has standing because he has received by statute a partial assignment of the chose in action against Solo Cup belonging to the United States. The company asserts that Section 292(b) is not actually a *qui tam* statute because it does not by its facial terms provide for a relator to sue "on behalf of the United States." This linguistic argument is wrong because various statutes labeled by the Supreme Court as *qui tam* provisions also say nothing about a relator suing on behalf of the United States. And, the Supreme Court has described Section 292(b) as a *qui tam* provision. The simple fact is that the provisions of Section 292(b) authorize any person to sue for a violation of the statute, and to keep half of the recovery obtained while the United States receives the other half, and this is a classic *qui tam* mechanism partially assigning a cause of action from the United States to a relator.

Solo Cup further contends that Section 292(b) is unconstitutional because it asssertedly does not provide sufficient controls by the Attorney General over the relator's case; the company argues that the lack of controls renders Section 292(b) violative of the constitutional separation of powers doctrine because the Executive is deprived of the ability to control litigation that ultimately can benefit the United States. This argument has a very broad sweep because it means that Congress has enacted numerous invalid *qui tam* statutes over the decades, including the original version of the False Claims Act in 1863; these statutes too did not expressly provide mechanisms for the Attorney

General to control litigation by relators. In any event, Solo Cup has not rebutted the points we made in our opening brief demonstrating that the separation of powers doctrine in no way prohibits Congress from providing by statute that private parties can initiate and pursue litigation to benefit the United States as well as themselves.

Moreover, Solo Cup has primarily raised a hypothetical constitutional claim, as the company contends that private parties cannot constitutionally pursue litigation that the Executive Branch might wish to curtail. As we made clear in our opening brief, the Attorney General has participated here solely for the purpose of defending the validity of Section 292(b), and there is no interference in this case by the relator with the policies or desires of the Executive Branch. Accordingly, Solo Cup is unable to show that Congress has actually diminished the power of the Executive Branch over litigation.

## ARGUMENT

### I. THE LONG HISTORY AND USE OF THE *QUI TAM* MECHANISM IN ENGLAND AND THE UNITED STATES CONFIRMS ITS CONSTITUTIONALITY.

In response to our argument about the sterling pedigree in United States law concerning legislation authorizing *qui tam* actions, Solo Cup says that our historical discussion is "largely irrelevant" (Br. at 2) and "largely immaterial" (Br. at 4) to the constitutional issues here. And, Solo Cup notes (Br. at 4 n.1) that the First Congress passed certain unconstitutional acts, a fact that we had acknowledged in our opening brief.

As noted above, though, the Supreme Court in *Vermont Agency*, 529 U.S. at 774-777, found the historical record of *qui tam* statutes of immense value in resolving the Article III standing issue, and the full Fifth Circuit held that this history answered a separation of powers challenge as well. *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749, 752 (5th Cir. 2001) (*en banc*) ("[W]e are

persuaded that it is logically inescapable that the same history that was conclusive on the Article III question in [*Vermont Agency v. United States ex rel.*] *Stevens* with respect to qui tam lawsuits initiated under the [False Claims Act] is similarly conclusive with respect to the Article II question concerning this statute").

Moreover, we explained in our opening brief (at 11-13) that the Supreme Court has made clear that, in construing the Constitution, the Court is heavily influenced by legislation passed by the early Congresses, and by a history of practice by the branches of the Federal Government: "[T]raditional ways of conducting government * * * give meaning to the constitution." *Mistretta v. United States*, 488 U.S. 361, 401 (1988).

Solo Cup's response (Br. at 4-5) is that all of this history and practice are meaningless because: (1) relator suits under Section 292(b) are brought in the name of the individual, rather than in the name of the United States; (2) the United States does not suffer a proprietary injury by a violation of Section 292; (3) the United States does not have substantial control over an action brought under Section 292(b); and (4) a relator in an action under Section 292(b) is not paid out of the recovery of the United States. While these descriptions about the operation of Section 292(b) are partially accurate, Solo Cup never explains why they are constitutionally significant.

More important, the company's argument disregards the fact that Section 292(b) is like several of the *qui tam* provisions passed by the First Congress, and described by the Supreme Court in *Vermont Agency*, 529 U.S. at 776 n.6, as statutes providing for *qui tam* actions. For example, the Act of March 1, 1790, in Section 3 (1 Stat. 102), provided a cause of action and a bounty of half the fine for certain failures to file census returns. In Section 1 of the Act of July 5, 1790 (1 Stat. 129), Congress extended this provision. And, Sections 1 and 4 of the Act of July 20, 1790, provided for suits to be brought by persons to collect half of the fines for certain practices involving seamen. 1

4

Stat. 131, 133. Further, Section 44 of the Act of March 3, 1791 (1 Stat. 209), authorized private individuals to sue for and receive half of the goods forfeited for unlicensed trading with Indian tribes. None of these statutes included controls for the Executive over a relator's suit or provided for suits to be brought in the name of the United States, and none involved a proprietary injury to the United States.

Thus, our historical argument retains its full force as applied to Section 292(b), which in its central parts closely resembles other *qui tam* provisions passed by the First Congress.

The bottom line is that we are aware of no precedent holding that the constitutionality of *qui tam* provisions turns in any way on whether a statute provides expressly that a suit is brought on behalf of the United States, and or that the term "United States" is part of the caption of a relator's suit. Section 292(b) provides for relators to bring actions that unquestionably are on behalf of the United States, given that the latter receives half of the proceeds in a successful action.

Our main point is that Section 292(b) is, in its essential elements, the same as various statutes passed by the early Congresses, and it therefore is an integral part of the long history in English and American law of enacting and enforcing *qui tam* statutes. Consequently, the pedigree of such laws applies fully to this section, and strongly supports the conclusion that this provision is consistent with constitutional principles.

## II.   A *QUI TAM* RELATOR UNDER SECTION 292(b) HAS ARTICLE III STANDING.

As already noted, in *Vermont Agency*, the Supreme Court found that a *qui tam* relator under the False Claims Act has Article III standing to sue because he receives "a partial assignment of the Government's damages claim." 529 U.S. at 771-78. Solo Cup contends that this holding does not apply to this case for several reasons.

Solo Cup appears to argue initially (Br. at 4-5) that the Article III standing ruling in *Vermont Agency* turned in part on the amount of control exercised by the Executive over litigation brought under the *qui tam* provisions of the modern version of the False Claims Act. We see no evidence in the *Vermont Agency* opinion to support this argument. Rather, the analysis used by the Supreme Court there plainly applies fully as well to an action brought under Section 292(b).

In addition, Solo Cup contends (Br. at 7-12) that Section 292(b) is not a *qui tam* statute and that it does not authorize Pequignot's suit. This first point is puzzling given that the Supreme Court in *Vermont Agency* specifically described Section 292(b) as a *qui tam* statute. 529 U.S. at 768 n.1.[1] And, the statute has been so labeled by other courts over the years. See *Claderwood v. Mansfield*, 71 F.Supp. 480 (N.D.Ca. 1947); *Winne v. Snow*, 19 F. 507, 508 (S.D.N.Y. 1884); *Pentlarge v. Kirby*, 19 F. 501, 503 (S.D.N.Y. 1884).

More important, Solo Cup fails to explain why it would matter for constitutional purposes whether a statute is properly labeled a *qui tam* provision, or an 'informer' statute, or something else. In *Vermont Agency*, the Supreme Court used both terms to describe statutes like Section 292(b), and its constitutional analysis manifestly did not turn in any way on which label was most appropriate. See 529 U.S. at 775-78.

Solo Cup appears to argue also that in a true *qui tam* case, the underlying injury has been suffered by the United States. That is precisely the situation here: Congress has set standards for conduct regarding patent markings, and has provided that persons violating those standards shall be fined up to $500 for every offense, which are obviously thus viewed by Congress as offenses against

---

[1] We note that in its brief Solo Cup heavily relies on the Eleventh Circuit decision in *Stalley on behalf of the United States v. Orlando Regional Health-Care System, Inc.*, 524 F.3d 1229 (11th Cir. 2008). That opinion states that the Supreme Court in *Vermont Agency* recognized Section 292(b) as a *qui tam* statute. See 524 F.3d at 1233.

the United States. Significantly, in *Vermont Agency*, the Supreme Court explained that it was "beyond doubt that the complaint asserts an injury to the United States – both the injury to its sovereignty arising from violation of its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the alleged fraud." 529 U.S. at 771.  Thus, the Court recognized an injury suffered by the United States from violation of its laws.[2]

The company further seems to contend (Br. at 9-10) that a statute is actually a *qui tam* provision only if there are statutory provisions for the United States to control litigation brought by relators. However, as noted above, many of the statutes identified by the Supreme Court in *Vermont Agency* as *qui tam* provisions had no such provisions for Executive control. It may be that such control is a factor to be considered in analyzing whether a statute passes muster under Article II of the Constitution, but we are aware of no accepted definition that requires such control before a statute is properly labeled as a *qui tam* provision. And, again, such a label would have no constitutional significance in any event.[3]

---

[2] Congress prohibits false marking in part because a properly marked patented article provides the public with "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Adkins*, 489 U.S. 141, 162 (1989). This is consistent with federal patent policy, which recognizes an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969). False marking harms that public interest because it "misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005) (footnote omitted).

[3] We note that, to the extent that it might matter for constitutional purposes, the case brought by a relator under Section 292(b) is a civil action. Although Section 292(a) provides for criminal offenses, the suit authorized by Section 292(b) is civil in nature. See *Filmon Process Corp. v. Spell-Right Corp.*, 404 F.2d 1351, 1355 (D.C. Cir. 1968) ("We agree with the judicial pronouncements that 35 U.S.C. § 292(b), while penal, is not a criminal statute"); *Clontech Laboratories, Inc., v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("The statute supplies a civil fine for false

### III. THE *QUI TAM* MECHANISM IN SECTION 292(b) DOES NOT FACIALLY VIOLATE CONSTITUTIONAL SEPARATION OF POWERS PRINCIPLES.

Finally, Solo Cup contends (Br. at 15-19) that Section 292(b) violates the separation of powers doctrine because the statute does not provide the Executive with sufficient tools to control litigation by a relator brought to benefit, in part, the United States. However, as we pointed out in our opening brief, this issue about the asserted necessity for the Executive to have power to control litigation under Section 292(b) is not before this Court today because the Attorney General has not attempted to, or shown any desire to, control this litigation in a way contrary to its handling by the relator. If the Government comes to believe that such actions are warranted here, it will take the steps necessary to ensure that the best interests of the United States in the litigation are met. Because efforts by the Government to control this case have not been attempted, much less thwarted, Solo Cup is improperly asking this Court to reach out to strike down an Act of Congress on the basis of a hypothetical problem that might never occur. Thus, the question of whether or not the statute as applied is constitutional where the Government seeks to control the litigation is simply not before this Court.[4]

---

marking of articles."). This conclusion fully comports with the analysis of the Supreme Court in *Stockwell v. United States*, 80 U.S. 531, 542-43 (1871), concerning *qui tam* provisions of the Act of March 2, 1799, imposing duties on imported goods ("the use of the terms "suits" and "to be sued for . . . manifestly contemplates civil actions"). See also *Helvering v. Mitchell*, 303 U.S. 391, 402 (1938) ("That Congress provided a distinctly civil procedure for the collection of the [penalty] indicates clearly that it intended a civil, not a criminal, sanction").

[4] Moreover, as we noted in our opening brief, the Government actually does have significant methods to utilize if it believes that control over this action is warranted. These include: (1) the right to be notified of the filing of the *qui tam* complaint, 35 U.S.C. § 290; (2) the right to appear in the *qui tam* litigation (28 U.S.C. §§ 517 and 518), and to intervene if the relator cannot adequately represent the interests of the United States (Fed. R. Civ. P. 24(a)(2)); and (3) the right to veto a settlement by the *qui tam* plaintiff in cases in which the United States has intervened as a party by withholding its consent to a voluntary dismissal (*id.* 41(a)(1)(A)(ii)). The Government also possesses additional rights that may be employed with court approval: (1) the right to intervene upon a showing

Solo Cup also claims (Br. at 1-2, 7) that our arguments here are self-contradictory because we rely on the Supreme Court's ruling in *Vermont Agency* that a relator has Article III standing as a partial assignee of the chose in action belonging to the United States, and at the same time we contend that Section 292(b) does not violate the Article II separation of powers doctrine because the relator does not sue as the United States. The company states (Br. at 1) that we are thus arguing that the relator represents the interests of the United States, but does not represent the interests of the United States. Solo Cup misunderstands our argument.

We pointed out in our opening brief that a relator under Section 292(b) has Article III standing because he has partially been assigned the chose in action of the United States for violation of Section 292. We explained (at 9-10) that a relator has standing – as found by the Supreme Court – because he represents his own interests as a partial assignee, and also sues in part on behalf of the United States, which is entitled to half of any penalties collected through the suit. The Supreme Court made clear in *Vermont Agency* that a relator's standing does not come from status as a statutorily designated agent of the United States. See 529 U.S. at 772. Rather, his standing is based on "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id*. at 773.

This point is fully consistent with our separation of powers argument that *qui tam* statutes do not violate Article II of the Constitution because a relator does ***not*** sue ***as*** the United States. His action certainly benefits the United States, if it is successful. But, as we demonstrated in our opening

---

that the Government's claim "shares with the main action a common question of law or fact," *id.* 24(b); and (2) the right to a protective order staying the relator's discovery upon a showing that it would interfere with the Government's investigation or prosecution arising out of the same facts, *id.* 26(c). The applicability of those provisions to a *qui tam* action under Section 292(b) are simply not at issue in this case.

brief (at 15-16), a *qui tam* relator is in that sense no different from a private plaintiff who successfully sues under statutes such as Title VII of the Civil Rights Act and the Sherman Act, thereby simultaneously vindicating his own interests and those of the United States. This principle is also demonstrated by private parties who successfully win statutorily authorized punitive damage awards. Congress clearly can create causes of action for private litigants to benefit the interests of the United States without undermining the Executive's constitutional power. A separation of powers issue would arise instead if Congress attempted to provide for a private litigant to sue as the United States Government, because that function is reserved for officials in the Executive Branch.

Congress has taken no such action through Section 292(b). The *qui tam* provisions of that statute are thus constitutional.

Solo Cup also relies (Br. at 13) on dictum in the Supreme Court's decision in *Printz v. United States*, 521 U.S. 898, 922 (1997)), suggesting that Congress would violate the separation of powers doctrine by requiring state officials to implement a federal law without meaningful Presidential control. By its own terms, however, the *Printz* dictum is inapplicable to this case. The Supreme Court there expressly noted that the potential separation of powers problem that it identified is not as pronounced where the non-federal actor is not required, but instead voluntarily chooses, to "implement" federal law. 521 U.S. at 923 n.12. *Printz*'s apparent recognition of the different situation posed by voluntary exercise of implementing power by state officials strongly implies that federal law simply authorizing the filing of law suits by *qui tam* relators does not violate separation of powers principles.

## CONCLUSION

For the foregoing reasons and those stated in the Government's opening brief, defendant's challenge to the constitutionality of 35 U.S.C. § 292 should be rejected.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

DANA BONETE
Acting United States Attorney


_____/s/_____
STEVEN E. GORDON
Assistant United States Attorneys
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: 703-299-3817
Steve.Gordon@usdoj.gov



_____/s/_____
JOYCE R. BRANDA
DOUGLAS N. LETTER
MICHAEL D. GRANSTON
GORDON A. JONES
Civil Division, U.S. Department of Justice
Post Office Box 261, Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 307-0473
gordon.jones@usdoj.gov
Attorneys for United States of America

DATED: January 16, 2009