IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| _____ ) | |
| MATTHEW A. PEQUIGNOT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:07cv897 (LMB/TCB) |
| ) | |
| SOLO CUP COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

At the hearing on January 30, the Court requested supplemental briefing on whether the Federal Trade Commission ("FTC") or any other Executive Branch agency has the authority to enforce 35 U.S.C. § 292, or to otherwise reach false patent marking conduct. The Court also raised a number of issues related to whether Section 292 passes constitutional muster under Article II. Because counsel for plaintiff Matthew A. Pequignot did not have the opportunity to respond to many of these issues at the hearing, plaintiff addresses some of them in this supplemental brief. Mr. Pequignot acknowledges that this brief goes beyond what the Court requested, but respectfully requests that the Court consider the points set forth below.

**ARGUMENT**

**I.     THE ABILITY OF EXECUTIVE BRANCH AGENCIES TO ENFORCE
SECTION 292 DOES NOT BEAR ON THE CONSTITUTIONALITY OF THE
STATUTE**

Mr. Pequignot believes that the Department of Justice is the agency within the Executive Branch with the power to enforce Section 292, either through criminal prosecution or by bringing a civil suit of its own. On the question of whether other agencies within the Executive

Branch, such as the FTC, may also have the power to enforce Section 292, Mr. Pequignot defers to the United States. That said, the question does not bear on the statute's constitutionality.

Congress enacted a statute providing that "any person" can bring a civil *qui tam* action for false patent marking, where the private *qui tam* plaintiff receives 50% of the penalty and the United States receives the other 50%. 35 U.S.C. § 292(b). The question of whether private *qui tam* enforcement of Section 292 is necessary, given that the United States can also enforce the statute and may have other avenues of reaching false patent marking, is a policy matter that is properly addressed by Congress. The question has no relevance to whether the *qui tam* action provided in Section 292(b) is constitutional. Nor does the availability of other enforcement mechanisms decrease the significance of striking down a *qui tam* statute on Article II grounds, which, to the best of our knowledge, has never been done by any court since the First Congress enacted the first *qui tam* statutes in 1790.

## II.   THE HISTORICAL RECORD OF *QUI TAM* STATUTES SHOULD BE DISPOSITIVE OF THE ARTICLE II CHALLENGE

At the hearing, the Court questioned the relevance of the long history of *qui tam* statutes that the United States has described in detail in its briefs. The Court suggested that *qui tam* statutes are "not a favored form of statute, certainly not in the modern day." Tr. at 8:1-2. Even if *qui tam* statutes are less popular now than they used to be, that reflects a policy decision by Congress, not some constitutional infirmity with *qui tam* statutes. There is simply no indication that Congress has ever repealed a *qui tam* statute because it was concerned that the statute may violate Article II, unconstitutionally aggrandize the power of Congress or unconstitutionally impinge on the authority of the Executive. In fact, the legislative history directly contradicts any such notion.

### A.     Recent Congressional Action Demonstrates that Congress Still Favors *Qui Tam* Statutes Like Section 292

In 1998, Congress passed a new *qui tam* statute as part of the Vessel Hull Design Protection Act, 17 U.S.C. § 1326.  The new *qui tam* statute has none of the "control procedures" contained in the current version of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  On the contrary, it is nearly identical to Section 292:

> **(a) In general.**--Whoever, for the purpose of deceiving the public, marks upon, applies to, or uses in advertising in connection with an article made, used, distributed, or sold, a design which is not protected under this chapter, a design notice specified in section 1306, or any other words or symbols importing that the design is protected under this chapter, knowing that the design is not so protected, shall pay a civil fine of not more than $500 for each such offense.

> **(b) Suit by private persons.**--Any person may sue for the penalty established by subsection (a), in which event one-half of the penalty shall be awarded to the person suing and the remainder shall be awarded to the United States.

17 U.S.C. § 1326.

The fact that Congress enacted a new *qui tam* statute as recently as 1998 refutes the suggestion that Congress may have repealed other *qui tam* statutes because of constitutional concerns.   Significantly, the new statute closely tracks the language of Section 292 and demonstrates that, as of 1998, Congress both "favored" this form of statute and believed that it was constitutional.   The Vessel Hull Design Protection Act is similar in structure to the numerous *qui tam* statutes that have existed for centuries, including Section 292.  Like Section 292 and the numerous other *qui tam* statutes, the Vessel Hull Design Protection Act does not have any of the built-in control provisions contained in the current version of the FCA allowing the Executive to intervene in and exercise control over an FCA case.  This is strong evidence that Congress does not view such provisions as constitutionally required.  It is also strong evidence that Congress does not view such built-in control provisions as a benchmark for measuring the

constitutionality of a *qui tam* statute, as some courts have presumed in considering the constitutionality of the FCA.

We are not aware of any instance where Congress repealed a *qui tam* statute due to constitutional concerns.  Most recently, Congress repealed the *qui tam* provisions in 25 U.S.C. § 81, which allowed a *qui tam* action against parties contracting with Indian tribes in an unlawful manner.  *See* Indian Tribal Economic and Contracts Encouragement Act of 2000, Pub. L. 106-179, 114 Stat. 46 (amending 25 U.S.C. § 81).  The Senate Report (Indian Affairs Committee) stated that the *qui tam* provisions were being repealed because they introduced uncertainty into contracts with Indian tribes.  S. Rep. No. 106-150, at 7.  The Report did not mention any constitutional concerns. [1]

### B.   *Vermont Agency* and *Riley* Recognized that the Long History of *Qui Tam* Statutes Like Section 292 Is Dispositive of Their Constitutionality

The decisions made by Congress to repeal particular *qui tam* statutes also do not diminish the long historical record by Congress and the courts of creating and enforcing these statutes, all of which have lacked the built-in "control" features of the current version of the FCA.  *See* U.S. Br. at 6-7 & n.3. [2]  Illustrating the point, in *United States ex rel. Marcus v. Hess*, 317 U.S. 537,

---

[1]   Nor does the repeal of particular statutes suggest a wholesale attempt to remove *qui tam* statutes from federal law.  The United States has pointed to three existing *qui tam* statutes, in addition to Section 292 (which was amended in 1952), the FCA, and the Vessel Hull Design Protection Act.  U.S. Br. [D.E. 89-2] at 8 n.6.  Modern England's decision to repeal its own *qui tam* statutes—which the Court mentioned at the hearing—does not speak to the constitutional question presented here.  Moreover, England apparently repealed its remaining *qui tam* statutes in 1951, a year before Congress chose to amend Section 292, and 47 years before Congress enacted the Vessel Hull Design Protection Act, demonstrating a divergence between the two nations on the usefulness of *qui tam* actions.  *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S 765, 776 (2000) (noting that England repealed its remaining *qui tam* statutes in 1951).

[2]   As a representative example, one of the *qui tam* statutes passed by the First Congress stated, in reference to census returns:

541 (1943), a case involving the old version of the FCA, the Supreme Court soundly rejected the district court's view that *qui tam* actions "have always been regarded with disfavor." *Id.* ("Qui tam suits have been frequently permitted by legislative action, and have not been without defense by the courts"). The court also rejected the United States' argument that it should have more control over the relator. *Id.* at 546-48. The Supreme Court did so without the slightest hint that any constitutional problem was raised by the old version of the FCA, which lacked most of the control provisions of the current version. *Id.*

More recently, Justice Stevens and Justice Souter concluded that the historical pedigree of *qui tam* actions resolves the question of whether *qui tam* statutes violate Article II:

> The historical evidence summarized by the Court . . . is obviously sufficient to demonstrate that *qui tam* actions are 'cases' or 'controversies' within the meaning of Article III. That evidence, together with the evidence that private prosecutions were commonplace in the 19th century . . . is also sufficient to resolve the Article II question . . . .

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S 765, 801 (2000) (Stevens, J., dissenting). Although the Court was considering the FCA in *Vermont Agency*, the two Justices, writing in dissent, reached their conclusion without ever considering the "control" provisions of the FCA. Rather, for them, the long history of Congress enacting, and the courts enforcing, *qui tam* statutes (none of which had the built-in control provisions of the modern-day FCA) demonstrates that *qui tam* statutes do not violate Article II.

---

> And every marshal failing to file the returns of his assistants . . . shall, for every such offence, forfeit the sum of eight hundred dollars; all which forefeitures shall be recoverable . . . by action of debt, information or indictment; the one half thereof to the use of the United States and the other half to the informer; but where the prosecution shall be first instituted on behalf of the United States, the whole shall accrue to their use.

1 Stat. 102 (1790). The statute had no built-in means of Executive "control" over the action.

Similarly, in *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749, 752 (5th Cir. 2001) (*en banc*), the Fifth Circuit observed that "it is logically inescapable that the same history that was conclusive on the Article III question in [*Vermont Agency v.*] *Stevens* . . . is similarly conclusive with respect to the Article II question concerning this statute."  While the Fifth Circuit went on to discuss the control provisions in the current version of the FCA, it nevertheless held that the history of *qui tam* statutes (which, again, all lacked the controls of the modern-day FCA) was "conclusive" on the Article II question.  *Id.* at 752.

In light of these cases, we respectfully submit that this Court's observation that Section 292 is "so different in structure from the current FCA," Tr. at 12:22, is not a basis for questioning the constitutionality of Section 292.  On the contrary, the FCA's structure is an anomaly among *qui tam* statutes and Solo Cup has not pointed to any legislative history suggesting that the recent addition to the FCA of built-in control provisions was constitutionally driven.  Section 292, which does not have those built-in control provisions, is similar to the *qui tam* statutes that have existed throughout this nation's history, including those passed by the First Congress.  *See, e.g.,* U.S. Br. at 6-7 & n.3 (explaining history of *qui tam* actions and including a list of the *qui tam* statutes passed by the First Congress); Act of March 2, 1863, 12 Stat. 696 (the original version of the FCA, enforced for over 100 years without the current built-in control procedures); Vessel Hull Design Protection Act, 17 U.S.C. § 1326 (*qui tam* statue passed just 10 years ago without any of the FCA's built-in control provisions).  Section 292 is also similar in structure to the *qui tam* statutes that the Supreme Court found "well nigh conclusive" of the Article III question in *Vermont Agency*, that Justices Stevens and Souter said answered any Article II question (in their dissent on another point in *Vermont Agency*), and that the *en banc* Fifth Circuit found dispositive of the Article II issue in *Riley*.

## III.    ARTICLE II DOES NOT REQUIRE THE BUILT-IN CONTROL PROVISIONS OF THE FCA

As noted in the briefs submitted earlier by Mr. Pequignot and the United States, Congress routinely authorizes private citizens to sue for violations of federal law, where the outcome benefits both the private plaintiff and the United States. *See, e.g.,* Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5; U.S. Br. at 15-17; Pl's Response to the Br. of the United Sates [D.E. 92] at 6; U.S. Reply Br. [D.E. 95] at 9-10. Congress also routinely authorizes private citizens to act as "private attorneys general," enforcing federal laws through civil actions for monetary damages, as well as for injunctive relief, civil penalties and punitive damages. *See* U.S. Br. at 15-17; Pl's Response to the Br. of the U.S. at 6; U.S. Reply Br. at 9-10. These statutes do not include the same degree of controls built into the FCA. When bringing an action under one of these laws, a private litigant is redressing his or her own claim, but is also furthering the United States' interests through enforcing its laws and providing a benefit to the public that goes beyond the private litigant's personal interests.

From an Article II perspective, the *qui tam* relator under Section 292 is in the same position as a private litigant under Title VII or the Sherman Antitrust Act, 15 U.S.C. § § 9, 15, or a private attorney general under the Safe Drinking Water Act, 42 U.S.C. § 300j-8, or the Clean Water Act, 33 U.S.C. § 1365. *See also* U.S. Br. at 16 & n.8 (listing examples of federal statutes that authorize an award of punitive damages). The *qui tam* relator is suing for the violation of a federal statute, and if he prevails, will benefit himself (as a partial assignee of the claim) and the United States (both by vindicating federal law and by providing a monetary benefit to the public). As the United States has noted in its briefs and at the hearing, if a private litigant's lawsuit under a federal statute does not aggrandize Congress's power or impinge on the Executive's authority, then neither can a Section 292 relator's lawsuit because there is no

meaningful distinction between the two lawsuits.  U.S. Br. at 15-17;  U.S. Reply Br. at 9-10; Tr. at 31:8-32:5.  That is, there is no principled basis, much less a constitutional one, for saying that there needs to be one type of Executive control over suits enforcing federal law through a private right of action, and a higher level of Executive control over suits enforcing federal law through *qui tam* actions.

Solo Cup has suggested that the difference is that the *qui tam* plaintiff does not have his own injury-in-fact.  *See* Tr. at 24:9-19; Solo Cup's Br. in Opp'n to U.S. Brief [D.E. 90] at 14-15. But that is an Article III question, and the Supreme Court has held that the *qui tam* plaintiff, as a partial-assignee of the United States' claim, has standing.  *See Vermont Agency*, 529 U.S. at 777-78.

Solo Cup, nonetheless, cites to two Justice Scalia opinions (one majority and one dissenting) in which he indicated that the "case or controversy" requirement of Article III could have separation of powers implications in certain situations.[3]  Solo Cup's Br. in Opp'n to U.S. Br. at 14-15 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992); *Federal Election Commission v. Akins*, 524 U.S. 11, 36-37 (1998) (Scalia, J., dissenting)).  Under Justice Scalia's theory, which he explains further in his dissent in *Friends of the Earth*, 528 U.S. at 209-10 (Scalia, J., dissenting), in certain circumstances, if a court can enforce federal law without a case or controversy being presented, the court would be aggrandizing its power and impinging on the Executive's power to enforce the law.  *See, e.g.*, *Akins*, 524 U.S. at 36-37 (Scalia, J., dissenting) (noting that the majority was usurping Executive authority by empowering a private citizen to bring a suit to compel the Federal Election Commission to enforce its regulations against a third

---

[3]  Solo Cup also points to Justice Kennedy's concurrence in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 197 (2000) (Kennedy, J., concurring), which simply noted that "difficult" questions are raised when private litigants pursue public fines, but he refused to weigh in further on the issue, as Justice Scalia did in his own dissent in that case.

party).  As a result, Justice Scalia would require more to establish injury-in-fact for Article III standing than the majority of the Court.  *See id*; *Friends of the Earth*, 528 U.S. at 209-10 (Scalia, J., dissenting).

However, *Vermont Agency* makes clear that even Justice Scalia does not have these concerns for *qui tam* statutes.  He wrote the majority opinion in that case holding that the *qui tam* relator had sufficient injury-in-fact, as a partial-assignee of the United States' claim, to satisfy the case or controversy requirement.  Having met his standard for the case or controversy requirement, the separation of powers concerns that Justice Scalia described in *Akins*, *Friends of the Earth*, and *Lujan*, that the court could be aggrandizing its power at the Executive's expense, did not come into play.

By holding Section 292 unconstitutional, this Court would implicate the constitutionality of all federal statutes where Congress allows a private litigant to sue for violation of federal law and the outcome benefits the litigant and the United States (through injunctive relief, civil penalties, punitive damages, and/or the vindication of a federal statute).  Moreover, such a holding would be inconsistent with the constitutional marker laid down by the Supreme Court in *Morrison v. Olson*, 487 U.S. 654 (1988).  *Morrison* found no separation of powers violation by a statute that allowed for appointment of an independent counsel wielding <u>criminal</u> prosecution powers.  Once the independent counsel was appointed, the Executive Branch could not control the independent counsel or any aspect of her criminal prosecution.  The only oversight was by Congress, with the Executive's recourse limited to removal of the counsel, but only for "good cause."  Despite the almost complete absence of Executive control over one of its core functions, the Supreme Court held that the statute did not infringe on the Executive's authority to enforce the laws.  *Id*. at 694-96.  In contrast to the statute at issue in *Morrison*, a civil *qui tam* action does

not involve the core Executive function of enforcing criminal law.   And, as set forth in the following section, *qui tam* actions are subject to substantial Executive control, even if the basis for that control is not built into the *qui tam* statute.

## IV.   INSOFAR AS SOME EXECUTIVE CONTROL OVER A SECTION 292 LAWSUIT IS CONSTITUTIONALLY REQUIRED, THOSE MECHANISMS ARE PROVIDED FOR BY STATUTE

As set forth in the United States' Reply Brief at 8 n.4, the Executive has rights to intervene in and exercise control over a relator's Section 292 case and these rights are comparable to the Executive's rights built into the current version of the FCA.   At the hearing, the Court suggested that these control mechanisms might not count because they do not appear in Section 292 itself, but instead appear elsewhere in the U.S. Code or in the Federal Rules of Civil Procedure (which are enacted by Congress).   Tr. at 12:4-5; 12:17-13:1.   Federal statutes, however, exist within the larger statutory framework of the U.S. Code.   It therefore seems inconceivable that one statute would be constitutional because notice, intervention and other rights of the Executive to control the litigation are built into the statute, whereas the same statute would be unconstitutional, because those same, or equivalent, rights are contained in other Congressional enactments.   Beyond the inefficiency of requiring that already existing rights be restated in federal statute after federal statute, it would exalt form over substance to judge the constitutionality of federal statutes on that basis.

In addition, the Court questioned the efficacy of 35 U.S.C. § 290 (found in the same chapter as Section 292), which provides for notice of any action under Title 35, including false patent marking under Section 292, to the Executive Branch.   Tr. at 22:15-24.   Although the statute provides that the notice must be sent to the United States Patent & Trademark Office ("PTO") rather than to the Department of Justice, the FTC or some other government agency, we respectfully submit that it is not for the courts to second-guess Congress's judgment that notice

10

should go to the PTO.  Moreover, as the Department of Justice noted at the hearing, it could ask

the PTO for notification of all false patent marking actions if it believed that such actions

implicated enforcement concerns.   Tr. at 31:2-7.   The point is that any question about the

efficacy of the notice within the Executive Branch is an internal Executive Branch matter; it does

not have constitutional implications and should not be a basis for a court to invalidate a *qui tam*

statute like Section 292.

## V.   SECTION 292 IS CONSTITUTIONAL AS APPLIED IN THIS CASE

As the United States stressed in its briefs, U.S. Br. at 22-23, U.S. Reply Br. at 8, and at

the hearing, Tr. at 10:22-15:6, there is no conflict between Mr. Pequignot's case and the United

States' interests at this juncture.   The United States is aware of Mr. Pequignot's case and has

decided not to intervene on the merits because the case is consistent with the United States'

desires, policies and enforcement objectives.   Nor has the United States attempted to assume

control of the case or been thwarted in any way in that regard.   Thus, as the United States noted,

even if the Court believes that there could be a constitutional issue if the United States wanted to

exercise control and was in some way thwarted, that case is not before this Court.   *See* U.S. Br. at

22-23; U.S. Reply Br. at 8; Tr. at 10:22-15:6.

Consequently, Solo Cup's Article II challenge is a facial challenge to Section 292(b).   If

Solo Cup's position were adopted by this Court, then Section 292(b) would be struck down in its

entirety, with serious implications for the Vessel Hull Design Protection Act and other *qui tam*

statutes.   The Supreme Court, however, recently warned courts that striking down statutes in

their entirety based on facial challenges runs counter to many tenets of constitutional

interpretation, judicial restraint and our representative system of government.   In *Washington*

*State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1190-91 (2008), the

Supreme Court observed:

> [When] determining whether a law is facially invalid, we must be careful not to . . . speculate about "hypothetical" or "imaginary" cases. . . .   Exercising judicial restraint in a facial challenge frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy. . . .
>
> Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. . . . Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that [a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

(internal quotations omitted). *See also Gonzales v. Carhart*, 550 U.S. 124 (2007) (as-applied challenges are the "basic building blocks of constitutional adjudication").

Striking down Section 292(b) because it allegedly lacks sufficient built-in procedures for the Executive to exercise control over relators' civil *qui tam* lawsuits would be a drastic action. The Court would have to skip over the fact that the Executive would not be exercising any more control in this case than it already has (including its intervention under Federal Rule of Civil Procedure 5.1 to defend the constitutionality of Section 292 and its determination not to intervene in the merits of the case), and conclude that the statute is unconstitutional because the United States might be thwarted in what it has decided not to do.  In other words, the Court would have to imagine a purely hypothetical scenario in which the United States wanted to take the litigation in a different direction than Mr. Pequignot, but could not do so because of deficiencies in the statute.  *See* Tr. at 11:9-11.  That hypothetical situation, however, is not before the Court.  And even if the hypothetical scenario presented a constitutional issue (it does not), the Court should not reach out to resolve it.  *See Riley*, 252 F.3d at 753 ("The record before us is devoid of any showing that the government's ability to exercise its authority has been thwarted in cases where it was not an intervenor").

**CONCLUSION**

Solo Cup must meet a high burden to establish that a duly-enacted law is unconstitutional.  When a court "is asked to invalidate a statutory provision that has been approved by both Houses of the Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should do so only for the most compelling constitutional reasons." *Mistretta v. United States,* 488 U.S. 361, 384 (1989) (citation omitted).  Solo Cup has not met this high burden for challenging the facial validity of Section 292(b).  For the foregoing reasons, and the reasons stated in Plaintiff's Opposition to Solo Cup Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) [D.E. 45], Plaintiff's Response to the Corrected Brief of the United States as Intervenor Defending the Constitutionality of 35 U.S.C. § 292 [D.E. 92], and Plaintiff's Reponse to Defendant Solo Cup Company's Opposition to the Brief of the United States as Intervenor Defending the Constitutionality of 35 U.S.C. § 292 [D.E. 96-3], Mr. Pequignot respectfully requests that this Court deny Solo Cup's Motion to Dismiss for Lack of Subject Matter Jurisdiction.


Dated:  February 6, 2009                    Respectfully submitted,

                                            /s/ Ellen D. Marcus

                                            Ellen D. Marcus
                                            Virginia Bar. No. 44314
                                            Carl S. Kravitz (admitted *pro hac vice*)
                                            Jane M. Ricci (admitted *pro hac vice*)
                                            *Attorneys for Plaintiff Matthew A. Pequignot*
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, N.W., Suite 1000
                                            Washington, D.C. 20036
                                            (202) 778-1800 (telephone)
                                            (202) 822-8106 (facsimile)

emarcus@zuckerman.com
ckravitz@zuckerman.com
jricci@zuckerman.com

Mia K. Poston
Virginia Bar No. 68548
PEQUIGNOT + MYERS, LLC
1636 R Street, N.W., Third Floor
Washington D.C.  20009
(202) 328-1200 (telephone)
(202) 328-2219 (facsimile)
mposton@pmiplaw.com

*Attorneys for Plaintiff Matthew A. Pequignot*

## CERTIFICATE OF SERVICE

I certify that on February 6, 2009, I electronically filed Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

/s/ Ellen D. Marcus

Ellen D. Marcus
Virginia Bar. No. 44314
*Attorneys for Plaintiff Matthew A. Pequignot*
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)
emarcus@zuckerman.com