IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|                          |   |                        |
|--------------------------|---|------------------------|
| MATTHEW A. PEQUIGNOT,    | ) |                        |
|                          | ) |                        |
| Plaintiff                | ) |                        |
|                          | ) |                        |
| v.                       | ) | 1:07cv897 (LMB/TCB)    |
|                          | ) |                        |
| SOLO CUP COMPANY,        | ) |                        |
|                          | ) |                        |
| Defendant.               | ) |                        |
|                          | ) |                        |

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Matthew A. Pequignot, respectfully submits this memorandum in support of his

Motion for Partial Summary Judgment against defendant Solo Cup Company ("Solo Cup").

## I.  PRELIMINARY STATEMENT

Mr. Pequignot seeks a partial summary judgment holding that: (*i*) Solo Cup is liable for

"false marking" under 35 U.S.C. § 292; (*ii*) Solo Cup committed a separate "offense" each time

it falsely marked one of its lids with either the expired '797 patent or the expired '569 patent, or

it falsely marked its packages for cups, utensils and bowls with certain language importing that

the products are patented; and (*iii*) for purposes of Section 292, the <u>minimum</u> number of

"offense[s]" for which Solo Cup can be fined "not more than $500" is ⬛⬛⬛ for lids

marked with the expired '797 patent, ⬛⬛⬛ for lids marked with the expired '569 patent,

and ⬛⬛⬛ for packages of cups, utensils and bowls marked with the language importing the

products are patented.

The factual predicate for this motion is based solely on Solo Cup's admissions in this

case made through the testimony of its Federal Rule of Civil Procedure 30(b)(6) witnesses, its

interrogatory answers, its admissions under Federal Rule of Civil Procedure 36, and its documents. Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue is being filed along with this motion and is cited herein as "Facts."

First, as to liability, this Court has already ruled that Solo Cup's marking of its products with the expired '797 and '569 patent numbers (the clear plastic cold cup lids in the case of the '797 patent, and white and black plastic hot cup lids in the case of the '569 patent) constitutes false marking under Section 292. *See* Memorandum Opinion dated March 28, 2008 ("March 2008 Mem. Op."), [D.E. 36], at 12. This Court also has held that manufacturing unpatented products in packaging marked with language that the products "may be covered by one or more U.S. or foreign pending or issued patents," also constitutes false marking under Section 292. March 2008 Mem. Op. at 14-15. Thus, under the law of the case, Solo Cup should be found liable under Section 292 if, in fact: (*i*) Solo Cup marked its lids with the expired '797 or '569 patents and/or put the "may be covered" language on its packaging for unpatented cups, utensils and bowls; and (*ii*) Solo Cup did so for the purpose of deceiving the public – that is, Solo Cup did not have a reasonable belief that the products were patented. *Id.*, at 15. There is no genuine dispute of material fact as to either issue.

With respect to Solo Cup's marking of lids with the expired patents, the company has admitted that: (*i*) the '797 patent expired on June 8, 1988 (Facts ¶ 44); (*ii*) the '569 patent expired on October 24, 2003 (*id.* ¶ 47); (*iii*) Solo Cup has never believed nor has it ever had reason to believe that the expired '797 patent or the expired '569 patent protects its products (*id.* ¶¶ 45-46; 48-50); and (*iv*) despite knowing that the '797 and '569 patents have expired, and despite knowing that expired patents do not protect its products, pursuant to a corporate policy adopted in or about the fall of 2000, Solo Cup deliberately has continued to mark billions of cold

cup lids and hot cup lids with the expired '797 patent and the expired '569 patent (*id.* ¶¶ 44-63.) In fact, Solo Cup is <u>still</u> falsely marking its lids with the expired patent numbers pursuant to its corporate policy to this day—even after the Court's ruling in March 2008 that marking with expired patents is a false marking for purposes of Section 292. (*Id.* at 63.)

With respect to Solo Cup's marking of packages containing unpatented cups, utensils and bowls with language importing the products are patented, Solo Cup has admitted to marking the packaging. (Facts ¶¶ 40-41.) Solo Cup also has admitted that it has deliberately marked the packages knowing that the products are not protected by a pending or issued patent, again, pursuant to a corporate policy. (*Id.* ¶¶ 64-65.)

Moreover, the evidence demonstrates that, in falsely marking the lids and packaging, Solo Cup had the intent to deceive the public for purposes of Section 292, because Solo Cup "'did not have a reasonable belief that the articles were . . . covered by a patent' or a pending patent application." March 2008 Mem. Op. at 15 (citing *Clontech Labs, Inc. v, Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005)). There is no dispute, genuine or otherwise, that this objective standard has been satisfied in this case. Indeed, Solo Cup has <u>admitted</u> the only facts relevant to its intent under the law of this case and the governing standard articulated by the Federal Circuit in *Clontech*: (*i*) that it knew that the '569 patent and '797 patent were expired and therefore no longer protected its lids (Facts ¶¶ 44-50; 56-61); and (*ii*) that it knew that the cups, utensils and bowls in the packaging that it marked with the language importing that the products were patented were in fact not protected by a pending or issued patent (*id.* ¶¶ 64-65). Put simply, Solo Cup not only had no "reasonable belief" that the products were covered by a patent, but in fact knew that they were not and deliberately marked the products as patented nevertheless.

Second, the plain language of Section 292(a) makes clear that each time Solo Cup falsely marked a lid with either the expired '797 or the expired '569 patent number, and each time Solo Cup marked the packaging for the unpatented cups, utensils and bowls with the language importing that the products are patented, Solo Cup committed a separate offense. The statute, by its terms, defines the offense as "mark[ing] upon, or affix[ing] to... any unpatented article the word 'patent' or any word or number importing that the same is patented . . . ." 35 U.S.C. § 292(a) (emphasis added.) The Court should so rule as a matter of law. At trial, the finder of fact, under this proper interpretation, would still retain the latitude to calibrate the appropriate fine, because the statute does not prescribe a minimum penalty per offense, but rather states that the offender "[s]hall be fined not more than $500 for every such offense."

Third, Solo Cup has produced data showing, by month since the statute of limitations period began in 2002, the number of units manufactured for each of the products at issue in the case. For certain types of lids (605 series, 668 series, TL310 series, and TL308 series) Solo Cup has admitted that all lids were marked with an expired patent. (Facts ¶¶ 4, 12, 33, 34.) These lids total                    false marking offenses. (*Id.* ¶¶ 24, 39.) In addition, Solo Cup has admitted that it marked           ` packages of cups, utensils and bowls during the relevant time period with the language importing that the products are patented. (*Id.* ¶ 43.) For the remaining types of lids, some lids were falsely marked, and others were not. (*Id.* ¶¶ 13-20.) Based on the testimony of Solo Cup's Rule 30(b)(6) witness and Solo Cup's data, it is possible through simple arithmetic to determine the minimum number of these lids that were  marked with the expired patents. These additional offenses bring the grand total of Solo Cup's Section 292 offenses to at least                    (*Id.* ¶¶ 24, 39, 43.) Solo Cup certainly committed far more offenses, but,

**DACTED**

4

based on Solo Cup's own data and admissions, that is the absolute minimum number of offenses, and the Court should so find.

## II.    UNDISPUTED FACTS

### A.    Mr. Pequignot is a *Qui Tam* Relator Suing as the Partial Assignee of the United States' Claim for Injuries Arising from Solo Cup's Violation of Section 292

Mr. Pequignot, a patent attorney currently living in California, has brought this case under Section 292 as a *qui tam* relator, which means that he is suing on behalf of the United States for its injury arising from the violation of its laws. (Facts ¶ 1; *see also* 35 U.S.C. § 292(b) ("[a]ny person" may sue for the penalty provided by Section 292, "in which event one-half shall go to the person suing and the other to the use of the United States"); Memorandum Opinion dated March 27, 2009, [D.E. 105], at 14 (Section 292 is a *qui tam* provision.) Through this action, Mr. Pequignot seeks to vindicate the important public interest behind Section 292, and underlying federal patent policy, to "permit[] full and free competition in the use of ideas which are in reality a part of the public domain." *Clontech Labs., Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1356 (Fed. Cir. 2005) (internal citation omitted).

### B.    Solo Cup Has Marked Billions of its Cold Cup Lids and Hot Cup Lids with Expired Patents Even Though it Knows And Has Known for Years That the Patents Do Not Protect the Lids

#### 1.  Since September 5, 2002—the Beginning of the Statute of Limitations Period—Solo Cup has Marked At Least ⎯⎯ Cold Cup Lids with the '797 Patent Number

Solo Cup is based in Highland Park, Illinois, and manufactures disposable food service products, including the lids, cups, utensils and bowls at issue in this case. (Facts ¶¶ 2, 3.) Solo Cup was the assignee of Reissue Patent No. 28,797 ("the '797 patent"). (Facts ¶ 4.) The '797 patent expired on June 8, 1988. (*Id.* ¶ 5.) Before the '797 patent expired, it protected Solo Cup's clear plastic lids of the type placed on cups containing cold drinks, as well as the "soufflé" lids

REDACTED

5

that can be applied to small disposable condiment containers, such as those used for salsa in restaurants. The cold cup lids once protected by that '797 patent include the following types of lids at issue in this case: the 600 series, 605 series, 624 series, 626 series, 640 series, 662 series, 668 series, 695 series, PL2 series, and PL4 series. (*Id.* ¶¶ 8-9.)

Although the '797 patent expired in 1988, Solo Cup contends that it did not realize this fact until June 2000. (Facts ¶ 5.) Nonetheless, it is undisputed that Solo Cup knew of the '797 patent's expiration no later than June 2000. (*Id.* ¶ 5.) Solo Cup admits that it has continued to mark its cold cup lids with the '797 patent even after it discovered that the patent expired. In particular, from June 2000 to the present, Solo Cup has marked with the expired '797 patent every one of its 605 and 668 lids, and some of its 600, 624, 626, 640, 662, 668, 695, PL2 and PL4 lids. (*Id.* ¶¶ 10-20.) Even today—21 years after the '797 patent expired and nine years after Solo Cup supposedly first figured that out—the company is still marking its cold cup lids with the expired '797 patent number. (*Id.* ¶¶ 10, 63.)

Although it was requested in discovery, Solo Cup has not provided data about how many of its lids were marked with the expired '797 patent during the statute of limitations period from September 5, 2002 to the present. However, based on Solo Cup's own data and the admissions of its corporate representative, using simple arithmetic, plaintiff has calculated that Solo Cup has marked <u>at least</u>                    cold cup lids with the expired '797 patent number during the relevant time period. (Facts ¶ 24.)

### 2. Since the Expiration of the '569 Patent on October 24, 2003, Solo Cup has Marked At Least          Hot Cup Lids with the '569 Patent Number

Solo Cup was the assignee of U.S. Patent No. 4,589,569 ("the '569 patent"). (Facts ¶ 25.) The '569 patent expired on October 24, 2003. (*Id.* ¶ 26.) Before the '569 patent expired, it protected Solo Cup's "Traveler" lids, which are lids for hot drink cups, such as the type that

6

might be found on a Caribou coffee cup. (*Id.* ¶ 28.) The hot cup lids once protected by the '569 patent include the following types of lids at issue in this case: the TL316 series, the TL310 series, and the TL308 series. (*Id.* ¶¶ 29-30.)

Solo Cup admits that it knew that the '569 patent was going to expire before its expiration on October 24, 2003. (*Id.* ¶ 31.) Nonetheless, Solo Cup admits that it has continued to mark its hot cup lids with the '569 patent from October 24, 2003 to the present (or until the product was discontinued). In particular, from October 24, 2003 to the present, Solo Cup has marked the expired '569 patent on every one of its TL310 and TL 308 lids and on some of its TL 316 lids. (*Id.* ¶¶ 32-35.) Even today—almost six years after the '569 patent expired—the company is still marking hot cup lids with the expired '569 patent number. (*Id.* ¶ 34.)

Although it was requested in discovery, Solo Cup has not provided data about how many of its lids were marked with the expired '569 patent since the patent expired. However, based on Solo Cup's own data and the admissions of its corporate representative, using simple arithmetic, plaintiff has calculated that Solo Cup has marked at least _____ hot cup lids with the expired '569 patent number. (Facts ¶¶ 38-39.) **REDACTED**

### 3. Solo Cup Admits That It Has Never Had a Reasonable Belief That Either the Cold Cup Lids or the Hot Cup Lids Are Covered by the Expired Patents

Solo Cup admits that the '797 patent no longer protects the cold cup lids and that the patent has not protected the cold cup lids since the expiration of the patent. (Facts ¶¶ 44, 46.) Solo Cup further admits that it has known since at least June 16, 2000 that the '797 patent is expired. (*Id.* ¶ 45.) Finally, Solo Cup admits that it does not now have nor has it ever had any reason to believe that the '797 patent protects the cold cup lids after the expiration of the patent on June 8, 1988. (*Id.* ¶ 46.)¶

Solo Cup similarly admits that the '569 patent no longer protects the hot cup lids and that the patent has not protected the hot cup lids since the expiration of the patent. (*Id.* ¶¶ 47, 49.) Solo Cup further admits that it has known since the '569 patent expired on October 24, 2003 that the patent is expired. (*Id.* ¶¶ 47, 48.) Finally, Solo Cup admits that it does not now have nor has it ever had any reason to believe that the '569 patent protects the hot cup lids after the expiration of the patent. (*Id.* ¶ 49.)

Despite these admissions, Solo Cup developed and implemented a corporate policy whereby it has knowingly and deliberately marked billions of lids with the expired '797 and '569 patent numbers. (*Id.* ¶¶ 52, 54.) Solo Cup contends that it adopted this policy based on the advice of counsel, even though counsel advised Solo Cup in writing in 2000 that "[t]he false marking of a product with a patent number does create liability for the offender," and that, with respect to the expired '797 patent, "Best case scenario is to remove the number, if possible." (*Id.* ¶¶ 51, 52, 53, 55.) Whether or not Solo Cup developed the policy based on counsel's advice— and the evidence that Solo Cup ever received that advice is weak and undermined by the testimony of its own corporate representative and the lawyers who supposedly gave the advice— Solo Cup and its lawyers admit that the advice did <u>not</u> have anything to do with whether the expired '797 patent or the expired '569 patent protected Solo Cup's products. (*Id.* ¶¶ 53, 55, 56, 57, 58.) Indeed, Solo Cup has admitted that Solo Cup knew at the time that it adopted the policy and knows now that the expired patents do <u>not</u> protect its products. (*Id.* ¶¶ 50, 59, 60.)

Solo Cup's corporate policy to mark lids with the expired '797 and '569 patents is still in place. Even after the Court's ruling in this case that "marking an article with an expired patent number is a false marking under 35 U.S.C. § 292(a)," March 2008 Mem. Op. at 12, Solo Cup

continues to mark its cold cup lids and hot cup lids with the expired patents, pursuant to its corporate policy. (*Id.* ¶ 63.)

   **C.  Solo Cup Has Marked Millions of Packages of Cups, Utensils and Bowls With Language Importing that Those Products are Patented Even Though Solo Cup Knows and Has Known All Along That The Products Are Unpatented**

      **1.  From October 2004 to April 2008 Solo Cup Has Marked Packages of Cups, Utensils and Bowls With Language Importing That Those Products are Protected by a Patent**

Solo Cup has systematically marked the packaging of the cups, utensils and bowls at issue in this case with this language importing that the products were protected by issued or pending patents:

> This product may be covered by one or more U.S. or foreign pending or issued patents. For details, contact www.solocup.com.

(Facts ¶ 40.) The packaging of every one of the following products identified in the Second Amended Complaint was marked with this language from at least October 2004 through April 2008: 9 oz. "ULTRA COLORS" cups (identified by stock number TU9G on their packaging or TP9 on the cups), 3 oz. "ULTRA COLORS" cups (identified by stock number B3100T on their packaging or P3A on the cups), 500 piece "Heavyweight Knives," 500 piece "Heavyweight Spoons," 500 piece "Heavyweight Forks," 18 oz. white plastic bowls (identified by stock number FCB18W), 18 oz. silver plastic bowls (identified by stock number FCB18C), and 18 oz. gold plastic bowls (identified by stock number FCB18J). (*Id.* ¶ 41.) Although it was requested in discovery, Solo Cup has provided no information regarding the total number of 9 oz. "ULTRA COLORS" cups that were produced during this time period. (*Id.* ¶ 42.) For the seven other product types, the minimum number of falsely marked packages is                   (*Id.* ¶ 43.)

REDACTEL

**2. Solo Cup Admits That It Has it Never Had a Reasonable Belief That Cups, Utensils or Bowls are Covered by a Pending or Issued Patent**

Solo Cup admits that, despite its marking the products' packaging with language importing that the products are patented, Solo Cup does not have a reasonable belief, nor did it ever have a reasonable belief, that the cups, utensils or bowls were ever protected by a pending or issued patent. (Facts ¶ 64.) Solo Cup contends that it marked the packages of the cups, utensils and bowls based on the advice of counsel. (*Id.* ¶ 65.) However, Solo Cup admits that, at the time that it was marking the packaging with the language, it knew that the cups, utensils and bowls were not covered by a pending or issued patent, and its counsel has never told it otherwise. (*Id.*)

## III. ARGUMENT

Summary judgment should be granted Mr. Pequignot because "the evidence shows that no genuine issue of material fact exists" that Solo Cup has violated Section 292 by its false marking, with the intent to deceive the public, of at least ⟋ lids with expired patents, as well as its false marking, with the intent to deceive the public, of at least of packages containing cups, utensils and bowls with language importing that the products are patented. Mr. Pequignot is therefore "entitled to judgment as a matter of law." *National City Bank of Indiana v. Turnbagh,* 463 F.3d 325, 329 (4th Cir. 2006); Fed. R. Civ. P. 56(c) (judgment should be entered for movant "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"); *see also Celotex Corp. v. Cartrett,* 477 U.S. 317, 327 (1986) (summary judgment is not a "disfavored procedural shortcut," but should be viewed as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") (internal citation omitted).

Section 292(a) provides, in relevant part:

> Whoever marks upon, or affixes to . . . any unpatented article the word 'patent' or any word or number importing the same is patented, for the purposes of deceiving the public; . . . Shall be fined not more than $500 for every such offense.

Three elements must be established to show a violation of Section 292(a): "(1) an article was marked with the word 'patent' or any word or number that imports that the article is patented; (2) the article so marked was an 'unpatented article'; and (3) the marking was 'for the purposes of deceiving the public.'" *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.,* 434 F. Supp. 2d 445, 451 (S.D. Tex. 2006). The third element is established where the preponderance of the evidence shows that the false marker "did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent)." *Clontech Labs., Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352-53 (Fed. Cir. 2005). All three of these elements are easily satisfied in this case based on Solo Cup's own admissions and unrebutted evidence. In addition, Solo Cup's own admissions demonstrate that it is liable for at least [REDACTED] of offenses under Section 292. **REDACTED**

### A. Solo Cup Has Violated Section 292 By Falsely Marking its Lids with Expired Patents For the Purposes of Deceiving the Public

This Court has already held in this case that "marking an article with an expired patent number is a false marking under 35 U.S.C. § 292(a)," March 2008 Mem. Op. at 12, and Solo Cup admits that it has marked cold cup lids and hot cup lids with the expired '797 and '569 patent numbers. (Facts ¶¶ 10-20, 24, 32-35, 39.) Thus, it is undisputed that Solo Cup falsely marked the lids, and the only issue remaining in determining whether Solo Cup violated Section 292 is whether Solo Cup marked the lids with the expired patents "for the purposes of deceiving the public." 35 U.S.C. § 292(a).

In *Clontech Labs.,* the Federal Circuit's seminal case on Section 292, the court held that the intent requirement of the statute is "established in law by objective criteria," and that drawing

the inference of intent is warranted from "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity." 406 F.3d at 1352 (emphasis and citations omitted). With respect to the cold cup lids and hot cup lids, the "fact of misrepresentation" is not in dispute—the Court has held that marking with an expired patent is false. March 2008 Mem. Op. at 12. As for the second prong of the *Clontech* test for inferring fraudulent intent, the Federal Circuit held that Section 292 plaintiffs "must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent)." *Clontech*, 406 F.3d at 1352-53. Again, this is not in dispute, Solo Cup <u>admits</u> that it does not have nor has it ever had reason to believe that the cold cup lids or hot cup lids were covered by the expired patents. (Facts ¶¶ 44-50, 56-61.) Based on this unrebutted evidence of a misrepresentation and Solo Cup's knowledge of its falsity, the Court must draw the inference that Solo Cup falsely marked the lids for the purposes of deceiving the public. *See, e.g., DP Wagner Mfg., Inc.*, 434 F. Supp. 2d at 456-57 (granting summary judgment against defendant for false marking where evidence was unrebutted that defendant marked its products knowing that the patents did not cover the products); *A.G. Design & Assocs, LLC v. Trainman Lantern Co., Inc.*, No. C07-5158RBL, 2009 WL 168544, at *2-3 (W.D. Wash. Jan. 23, 2009) (denying summary judgment to plaintiff, an alleged false marker, where defendant presented evidence that plaintiff began marking products with "patent pending" label before applying for a patent, thus supporting inference that plaintiff had "knowledge of the mislabeling").

Nor is there any evidence for Solo Cup to rebut the inference of fraudulent intent. Solo Cup can only assert that it did not intend to deceive the public when it adopted the corporate policy to mark its lids with expired patents. But, *Clontech* made abundantly clear that "the mere

assertion by a party that it did not intend to deceive will not suffice to escape statutory liability," and "the inference of intent to deceive cannot be defeated with blind assertions of good faith where the patentee has knowledge of mismarking." *Clontech*, 406 F.3d at 1352, 1353 n.2; *see also DP Wagner Mfg., Inc.*, 434 F. Supp. 2d at 457 ("Mere denial of intent, however, does not legally suffice to create a fact issue regarding good faith").

Finally, the advice of counsel upon which Solo Cup supposedly based its corporate policy to mark is lids with the expired patents is completely irrelevant to whether it had the intent required by Section 292. Solo Cup and its counsel both <u>admit</u> that counsel never advised Solo Cup that the cold cup lids or hot cup lids were covered by the expired patents. (Facts ¶¶ 56-60.) Thus, any advice that Solo Cup received does not speak to whether Solo Cup had a "reasonable belief that the articles were properly marked (i.e., covered by a patent)"—the only question other than falsity that must be answered in determining whether to infer intent. *Clontech*, 406 F.3d at 1352-53; *see also Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1288 (N.D. Ohio 1991) ("mere fact" that defendants accused of false patent marking "had consulted a patent attorney" did not "exonerate" them).

**B. Solo Cup Has Violated Section 292 By Falsely Marking its Cups, Utensils and Bowls with Language Importing that Those Products Are Patented For the Purposes of Deceiving the Public**

With respect Solo Cup marking its packages of cups, utensils and bowls with the statement that the products "may be covered by one or more U.S. or foreign pending or issued patents," this Court has already held in this case that the marking is a "culpable false marking" if Mr. Pequignot "can demonstrate by a preponderance of the evidence that Solo intended to deceive the public—*i.e.*, that Solo 'did not have a reasonable belief that the articles were . . . covered by a patent' or a pending patent application." March 2008 Mem. Op. at 15 (quoting *Clontech*, 406 F.3d at 1353. Solo Cup has since <u>admitted</u> that it has never believed nor has it

ever had reason to believe that any of the cups, utensils or bowls contained in the packaging marked with the language were protected by a patent or a pending patent application. (Facts ¶¶ 64, 65.) Based on this admission, the Court must hold that Solo Cup falsely marked the packages for the purposes of deceiving the public.

C.     Solo Cup Should be Fined Some Amount Up to $500 for Each of the Falsely Marked Lids and Each of the Falsely Marked Packages of Cups, Utensils and Bowls

Having demonstrated beyond any dispute that Solo Cup has violated Section 292 by falsely marking its lids, cups, utensils, and bowls for the purposes of deceiving the public, this Court should find as a matter of law that each falsely marked Solo Cup lid, and each falsely marked package of cups, bowls, forks, knives, and spoons is a separate offense under Section 292, punishable by a fine of up to $500. This motion presents a straightforward question of law appropriately resolved on summary judgment—whether each false marking on an article is a separate offense under Section 292. Section 292 provides a civil penalty of up to $500 per "every such offense" which, under the unambiguous language of the statute, plainly means each false marking of a product. 35 U.S.C. § 292(a). Beyond the plain language of the statute, both the relevant case law and public policy considerations compel the conclusion that Solo Cup should be fined for each false marking on an article, rather than some alternative formulation. Interpreting the term "offense" correctly to mean each false marking on an article will provide this Court with the latitude to order effective, but fair punishment that deters companies such as Solo Cup from deliberately misleading consumers and competitors. The fine that should be awarded per offense can be determined by the fact finder at trial.

## 1. Section 292 Requires a Penalty For Each False Marking of an Article

### a. The Plain Language of Section 292 Provides That Each False Marking of an Article Is an Offense

The plain meaning of Section 292 is that each false marking of a product, or "article," is an "offense," for which the offender shall be fined "not more than $500." Thus, for purposes of determining the amount of a penalty under Section 292, a defendant has committed a separate offense for each false marking on a product (the "article" within Section 292). In other words, applying the plain language of the statute, Solo Cup committed a separate offense each time it falsely marked a lid with an expired patent or falsely marked the packaging for its cups, utensils or bowls with the language importing that the products were patented.

It is a well-established rule that "[t]he starting point for [the] interpretation of a statute is always its language." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted); March 2008 Mem. Op. at 6. A statute's plain meaning is ordinarily "the end of the matter," absent something special about the statute's structure or relationship to other statutes that would call into question this plain meaning. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). Section 292 provides in relevant part:

> Whoever marks upon, or affixes to . . . any unpatented article the word 'patent' or any word or number importing the same is patented, for the purposes of deceiving the public; . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). In short, the statute prohibits the false marking of "any unpatented article" and directs that a fine shall be assessed for "every such offense."

Focusing on the plain meaning of the provision, it is clear that each false marking on an article is a separate offense. <u>First</u>, the word "article" refers to the thing, or item, that has been falsely marked, and it is the false marking on the "article" that constitutes the "offense," not the

decision to falsely mark or some other formulation. Second, Congress used the singular noun, "article," rather than the plural "articles," thus conveying the singular nature of each offense. Third, Congress modified the singular term "article," with the word "any," underscoring that a separate offense occurs each time "any . . . article" is falsely marked. Fourth, and finally, Section 292 specifies that "every such offense"—namely, the false marking of "any . . . article"—shall be penalized. The statute does not say that "such offense"—namely, false marking in general—shall be punished. Instead, Congress chose to modify "such offense" with the term "every," again confirming the separate and distinct nature of each false marking. The use of the word "every," when read with the remainder of the provision, also dispels any notion that the false marking of numerous articles could constitute only a single offense. Thus, under the plain language of Section 292, when a party falsely marks multiple articles, as Solo Cup has done here, each false marking of a lid or package of products constitutes a separate "offense" that shall be punished by a fine of not more than $500.

Because the plain meaning of Section 292 is clear, this Court need not look any further than the language of the statute. *Chevron U.S.A.*, 467 U.S. at 842. However, the statute's legislative history, if considered, provides further proof that every false marking of an article constitutes a separate offense. As originally enacted in 1842, the first false marking statute provided in relevant part:

> That . . . if any person . . . shall affix the [word "patent" or the words "letters patent, or the word "patentee"] . . . on any unpatented article, for the purpose of deceiving the public, he . . . shall be liable for <u>such offense, to a penalty of not less than one hundred dollars</u>.

Patent Act of 1842, ch. 263, § 5, 5 Stat. 543, 544 (1842) (emphasis added).

Twenty-eight years later, in the Patent Act of 1870, Congress amended Section 292. It added the modifying word "every," thus penalizing "<u>every</u> such offense" (emphasis added), as

Section 292 still requires today.[1]  This Court should presume that Congress' addition of the word "every" has meaning.  *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 701 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect").  The addition of the word "every" highlights, and reinforces, Congress's intent to impose a penalty for each false marking of an "article."

### b. This Court Should Follow the Case Law Adopting the Correct Interpretation of Section 292, Consistent with the Statute's Plain Meaning

There is very little case law interpreting Section 292, and the Federal Circuit has yet to address how the number of offenses under Section 292 should be determined.[2]  However, a number of other courts have held, in interpreting an earlier version of Section 292, that each falsely marked product or article constitutes a separate "offense."  Moreover, there is abundant case law holding that similar language in similar statutes means that each offense is subject to a separate penalty.  Together, these cases provide strong support for interpreting Section 292 consistent with its plain meaning.

In *Pentlarge v. Kirby*, 19 F. 501, 502 (S.D.N.Y. 1884), the court held that, under the version of Section 292 in effect at the time (the original statute, as amended by the Patent Act of 1870), a $100 fine would apply to each of defendant's products that were falsely marked as patented, for a total fine of $6,000.  The court expressly found each falsely marked article was a separate offense, noting "[t]he articles stamped may be of comparatively little value; yet a penalty of $100 is fixed for the stamping of each." *Id.*; *see also Tompkins v. Butterfield*, 25 F.

---

[1] In 1952, Congress amended Section 292 to eliminate the requirement of a minimum penalty of $100 for each offense, and replaced it with the current maximum penalty of $500. *See* 66 Stat. 814 (amending statute).

[2] A decision on the issue may be forthcoming in the relatively near future in *Forest Group, Inc. v. Bon Tool Co.*, No. H-05-41272008 WL 4376346 (S.D. Tex. Sep. 22, 2008), which is on appeal to the Federal Circuit, Case No. 2009-1044.

17

556, 560-61 (D. Mass. 1885) (defendant sold saddle-trees, each falsely marked; court instructed jury to render a verdict based on a maximum of 50 violations).

Courts have consistently held that similar language in similar statutes—that is, terms such as "every," "each," or "any" offense—means that each offense must be counted separately in calculating a total penalty. For example, in *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 959-60 n.3 (3d Cir. 1981), the Court of Appeals for the Third Circuit held that each of defendant's more than 16 million deceptive mailings "constituted a separate violation" of the Federal Trade Commission Act, which provided for "a civil penalty of not more than $10,000 for each violation." In so doing, the court rejected defendant's efforts to group each bulk mailing into one offense, as contrary to the plain language of the statute. *Id.* at 966-67; *see also Geffen v. Baltimore Mkts. Inc.*, 191 A. 24, 28 (Pa. 1937) (where the Trademark Act required a $200 penalty for "any" unlawful "use" of a trademark, the defendant was liable for 25 separate sales made to the plaintiff). Numerous other courts have rejected attempts to group similar individual offenses into one offense, contrary to a statute's plain meaning. *See, e.g.*, *United States v. Mirama Enters., Inc.*, 387 F.3d 983, 986-88 (9th Cir. 2004) (where defendant failed to report that between 30,000 and 40,000 juicers in the stream of commerce might pose a risk, it committed 30,000 to 40,000 reporting offenses under the Consumer Product Safety Act, providing a "civil penalty not to exceed $[6,000] for each such violation.") (emphasis in original); *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 340-41 (E.D. Va. 1997) (where Clean Water Act provided for a "civil penalty not to exceed $25,000 per day for each violation," and defendants violated permit each day in multiple ways, the maximum penalty on that day may exceed $25,000) (emphasis in original); *Southern Ry. Co. v. State*, 75 N.E. 272, 277 (Ind. 1905) (Court awarded recovery for over 400 violations, representing each instance railroad company failed to

post information as required by statute, rejecting argument that only single penalty could be imposed in violation of plain language of statute).

As mentioned above, the Federal Circuit is currently reviewing a recent decision by a district court in Texas, *Bon Tool*, in which the court ignored the controlling language of the statute and held that a "single decision" to falsely mark a certain product, with the intent to deceive the public, constituted a "single offense" for purposes of calculating the damages under Section 292. Mr. Pequignot respectfully submits that *Bon Tool* was wrongly decided and is not controlling or persuasive authority, as the district court chose not to examine the plain language of the statute but, instead, was primarily concerned with not imposing a disproportionate penalty that theoretically could result from equating each false marking of an article with an offense. The district court's concern, however, was without basis, because it did not account for the statute's directive to award "not more than $500 for every such offense." 35 U.S.C. § 292(a). What the district court completely failed to consider was that, if the term "offense" is interpreted correctly, a court still has the latitude to award less than the statute's maximum penalty of $500 per offense and, therefore, to calibrate the penalty to the merits of the particular case without departing from the statute's plain meaning. Based on this misconception, the district court in *Bon Tool* opted for its unnatural reading of the term "offense," and in the process, eviscerated the deterrent and punitive effect of the statute.

By contrast to the current version of the statute, which mandates the imposition of a penalty of "not more than $500" for "every such offense," courts applying pre-1952 versions of Section 292 could not control the total amount of the award by setting a lower per offense penalty. Before the 1952 amendment to the statute, Section 292 imposed a minimum penalty, rather than the current maximum penalty. *See* 66 Stat. 814. As a result, some courts strayed

from the plain meaning of the statute, and in particular to the plain meaning of the term "offense," to avoid total penalties that they viewed as too punitive. *See, e.g., London v. Everett H. Dunbar Corp.*, 179 F. 506, 508 (1st Cir. 1910) (noting, under pre-1952 version of Patent Act, that per offense minimum could result in "an enormous sum of penalties, entirely out of proportion to value of articles"). To the extent these cases ever had any validity, they (and any modern decisions relying on such cases) are no longer persuasive because Section 292 no longer imposes a minimum fine and this Court therefore has the latitude to fashion an appropriate penalty when awarded on a per offense basis.

### c. Public Policy Considerations Favor Treating Each False Marking on an Article as a Separate Offense

Preserving the force of Section 292 by treating each false marking of an article as a separate offense serves important public interests that this Court has expressly recognized in its earlier rulings in this case. In *Clontech Labs., Inc.*, the Federal Circuit observed that false marking harms the public because it:

> misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in the article.

406 F.3d at 1356-57 (footnote omitted). The court noted further that Section 292 "permits full and free competition in the use of ideas which are in reality a part of the public domain." *Id.* at 1356. *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989).

This Court has similarly observed in this case:

> Patent markings are an essential component of this system. The "Patent No. XXX" imprint, is, in effect, a "no trespassing" sign. Would-be inventors and consumers justifiably rely on such marks to assume that the patent holder retains control over how the article can be used, displayed, modified or licensed.

March 2008 Mem. Op. at 10-11. When companies like Solo Cup have "free reign" to falsely mark their products, it forces consumers and competitors to expend the effort and expense to determine whether the product is actually patented, or whether it is a product in the public domain. *Id.* at 11-12. When false marking is widespread, patent markings cannot be relied upon, costs are borne by the wrong parties and the patent system as a whole is undermined.

Affording Section 292 its plain meaning and defining "offense" as each false marking of an article will further the interests of a fair patent system and Congress's intent to foster competitive marketplaces. Under this proper interpretation, the Court would have the flexibility to impose an appropriate fine designed to deter and punish Solo Cup's extensive false marking while protecting the integrity of the patent system.

By contrast, under an alternative interpretation artificially limiting the number of offenses, such as imposing a single penalty for each "decision" to mark, the statute would effectively be eviscerated because there would be no meaningful downside for false marking. If such an interpretation were the law, false markers such as Solo Cup would have the "free reign" that this Court is concerned about to continue to mark expired patents on their products and to otherwise engage in deception with impunity, knowing that their maximum fine for deciding to falsely mark a product is $500, no matter how many products are falsely marked. After receiving a slap on the wrist, Solo Cup and the other false markers would continue to unfairly benefit from consumers' belief that a "patented" product is better or more technically sophisticated than its unpatented peers, and would shift the cost of determining whether a product is patented to consumers and competitors. *See* 7 Donald S. Chisum, Chisum on Patents 20.03(7)(c)(vii) (1999) (noting that false marking may "create a misleading impression that the product is technologically superior to previously available ones.").

## IV.  CONCLUSION

For the foregoing reasons, Mr. Pequignot's motion for partial summary judgment should

be granted and the Court should hold that Solo Cup is liable under Section 292 for at least

REDACTED offenses, each punishable by a fine of up to $500.

Dated:  June 12, 2009

Respectfully submitted,

/s/ Ellen D. Marcus
Ellen D. Marcus (Virginia Bar. No. 44314)
emarcus@zuckerman.com
Carl S. Kravitz (admitted *pro hac vice*)
ckravitz@zuckerman.com
Jane Ricci (admitted *pro hac vice*)
jricci@zuckerman.com
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)

Mia K. Poston (Virginia Bar No. 68548)
mposton@pmiplaw.com
Pequignot + Myers, LLC
1636 R Street, N.W., Third Floor
Washington D.C.  20009
(202) 328-1200 (telephone)
(202) 328-2219 (facsimile)

*Attorneys for Plaintiff Matthew A. Pequignot*

## CERTIFICATE OF SERVICE

I certify that on June 12, 2009, I electronically filed Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

/s/ Ellen D. Marcus
Ellen D. Marcus (Virginia Bar. No. 44314)
emarcus@zuckerman.com
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)

*Attorney for Plaintiff Matthew A. Pequignot*