IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATTHEW A. PEQUIGNOT,                    )
                                         )
            Plaintiff                    )
                                         )
    v.                                   )        1:07cv897 (LMB/TCB)
                                         )
SOLO CUP COMPANY,                        )
                                         )
            Defendant.                   )
                                         )

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Matthew A. Pequignot, respectfully submits this memorandum in support of his Motion for Partial Summary Judgment against defendant Solo Cup Company ("Solo").

## I.    PRELIMINARY STATEMENT

Mr. Pequignot seeks a partial summary judgment holding that: (*i*) Solo is liable for "false marking" under 35 U.S.C. § 292; (*ii*) Solo committed a separate "offense" each time it falsely marked one of its lids with either the expired '797 patent or the expired '569 patent, or it falsely marked its packages for cups, utensils and bowls with certain language importing that the products are patented; and (*iii*) for purposes of § 292, the <u>minimum</u> number of "offense[s]" for which Solo can be fined "not more than $500" is ▮▮▮▮▮▮ for lids marked with the expired '797 patent, ▮▮▮▮▮▮ for lids marked with the expired '569 patent, and ▮▮▮▮▮▮ for packages of unpatented cups, bowls and utensils marked with the language that the products may be patented.

The factual predicate for this motion is based solely on the admissions Solo has made in this case through the testimony of its Federal Rule of Civil Procedure 30(b)(6) witnesses, its interrogatory answers, its responses to Federal Rule of Civil Procedure 36 requests for admissions ("RFAs"), and its documents. At pages 4 through 14 below, Mr. Pequignot sets forth in numbered paragraphs the material facts as to which there is no genuine dispute with citations to the supporting record evidence of Solo's admissions (the "Facts").

<u>First</u>, as to liability, this Court has already ruled that Solo's marking of its products with the expired '797 and '569 patent numbers (the clear plastic cold drink lids in the case of the '797 patent, and white and black plastic hot drink lids in the case of the '569 patent) constitutes false marking under § 292. *See* Memorandum Opinion dated March 24, 2008 ("March 2008 Mem. Op."), [D.E. 36], at 12. This Court also has held that manufacturing unpatented products in packaging marked with language that the products "may be covered by one or more U.S. or

foreign pending or issued patents" also constitutes false marking under § 292. *Id.* at 14-15. Thus, under the law of the case, Solo must be found liable under § 292 if, in fact: (*i*) Solo marked its lids with the expired '797 or '569 patents and/or put the "may be covered" language on its packaging for unpatented cups, utensils and bowls; and (*ii*) Solo did so for the purposes of deceiving the public—that is, if Solo did so without a reasonable belief that the products were patented. *Id.*, at 15. There is no genuine dispute of material fact as to either issue.

With respect to Solo's marking of lids with the expired patents, the company has admitted that: (*i*) the '797 patent expired on June 8, 1988 (Facts ¶¶ 1, 3); (*ii*) the '569 patent expired on October 24, 2003 (*id.* ¶¶ 5, 7); (*iii*) it knew that the '797 and '569 patents did not protect its products after they expired, and therefore had no belief, reasonable or otherwise, that the patents protected the products (*id.* ¶¶ 9, 16); and (*iv*) despite knowing that the '797 and '569 patents had expired, and despite knowing that the expired patents did not protect its products, it deliberately marked billions of cold and hot drink lids with the expired '797 and '569 patents pursuant to a corporate policy it claims to have adopted in the Fall of 2000 (*id.* ¶¶ 10-15.)  In fact, Solo is <u>still</u> falsely marking its lids with the expired patent numbers to this day, even after the Court's ruling in March 2008 that marking with expired patents is a false marking for purposes of § 292. (*Id.* at ¶¶ 14, 15.)

With respect to Solo's marking of packages containing unpatented cups, bowls and utensils with language importing that the products are patented, Solo has admitted to marking the packaging. (Facts ¶¶ 17, 19.)  Solo also has admitted that it has deliberately marked the packages knowing that the products are not protected by a pending or issued patent, again, pursuant to a corporate policy. (*Id.* ¶¶ 19, 20.)

Moreover, the evidence demonstrates that, in falsely marking the lids and packaging, Solo had the intent to deceive the public for purposes of § 292, because it "'did not have a reasonable belief that the articles were . . . covered by a patent' or a pending patent application." March 2008 Mem. Op. at 15 (citing *Clontech Labs, Inc. v, Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005)). There is no dispute, genuine or otherwise, that this objective standard has been satisfied in this case. Significantly, Solo has <u>admitted</u> the only facts relevant to its intent under the law of this case and the governing standard articulated by the Federal Circuit in *Clontech*: (*i*) that it knew that the '569 patent and '797 patent were expired and therefore no longer protected its lids (Facts ¶¶ 3, 7, 9, 16); and (*ii*) that it knew that the cups, bowls and utensils in the packaging that it marked with the language importing that the products were patented were in fact not protected by a pending or issued patent (*id.* ¶¶ 19-21). Put simply, Solo not only had no "reasonable belief" that the products were covered by a patent, but in fact knew that they were not and deliberately marked the products as patented or covered by a pending patent application nevertheless.

<u>Second</u>, the plain language of § 292(a) makes clear that each time Solo falsely marked a lid with either the expired '797 or the expired '569 patent number, and each time Solo falsely marked the packaging for the unpatented cups, bowls and utensils with the language importing that the products were patented, Solo committed a separate offense. The statute, by its terms, defines the offense as "mark[ing] upon, or affix[ing] to... <u>any</u> unpatented article the word 'patent' or any word or number importing that the same is patented . . . ." 35 U.S.C. § 292(a) (emphasis added). The Court should so rule as a matter of law. At trial, the finder of fact, under this proper interpretation, would still retain the latitude to calibrate the appropriate fine, because

the statute does not prescribe a minimum penalty per offense, but rather states that the offender "[s]hall be fined not more than $500 for every such offense."

Third, Solo has produced data showing, by month since the statute of limitations period began in 2002, the number of units manufactured for each of the products at issue in the case. For certain types of lids (605 series, 668 series, TL310 series, and TL308 series), Solo has admitted that all lids were marked with an expired patent. (Facts ¶¶ 3, 7.) These lids total ██████████ false marking offenses. (*Id.* ¶¶ 4, 8.) In addition, Solo has admitted that it marked ████████ packages of unpatented cups, bowls and utensils during the relevant time period with the language importing that the products are patented. (*Id.* ¶ 18.) For the remaining types of lids, some lids were falsely marked during the period, and others were not. (*Id.* ¶¶ 3, 7.) Based on the testimony of Solo's Rule 30(b)(6) witness and data provided by Solo, it is possible, through simple arithmetic, to determine the minimum number of lids that were falsely marked with the expired patents. These additional false markings bring the grand total of Solo's § 292 offenses to at least ██████████. (*Id.* ¶¶ 4, 8, 18.) Solo certainly committed far more offenses, but that is the absolute minimum number, and the Court should so find.

## II.   MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

### A.   Solo Has Marked Billions Of Cold And Hot Drink Lids With The Expired '797 And '569 Patent Numbers, Knowing That The Patents Were Expired And Knowing That The Expired Patents Did Not Protect The Lids

#### 1.   Since September 5, 2002 – the Beginning of the Statute of Limitations Period – Solo has Marked At Least ██████████ Cold Drink Lids with the Expired '797 Patent Number

1. The '797 patent (Reissue Patent No. 28,797) expired on June 8, 1988. (PA-0359, D's Resp. to Pl's RFA No. 1.) Before it expired, the '797 Patent protected Solo's clear plastic lids used for cold drink cups and for small disposable condiment containers, such as those used for salsa in restaurants. (PA-0121, 0129, Rule 30(b)(6) Smith Tr. at 37, 70.) The lids for small

4

condiment containers are sometimes referred to as "soufflé" lids.

2.   The cold drink and soufflé lids (collectively, "cold drink lids") at issue in this case were protected by the '797 patent before it expired and are identified by the following Solo product codes: 600TS 0090, 605TP, 624TS, 626TP 0090, 626TS 0090, 640TP 0090, 640TS 0090, 662TP 0090, 662TS 0090, 668TS, 695TP, 695TS, D668S, M600P 0090, M600S 0090, M640S 0090, PL2, PL4 0090, and PL4TS 0090.  (PA-0121, 0130, Rule 30(b)(6) Smith Tr. at 37, 74.)  All cold drink lids with the same base product code – that is, 600, 605, 624, 626, 640, 662, 668, 695, PL2 and PL4 – are the same lid and manufactured with the same mold cavities, as described further below.  *See, e.g.*, PA-0126, Rule 30(b)(6) Smith Tr. at 58; PA-0578-0579, Rule 30(b)(6) Healy Tr. at 89-93.[1]

3.   Solo knew, by June 16, 2000 at the latest, that the '797 patent was expired.  (PA-0453-0454, D's Resp. to Pl's Amended Int. No. 7; PA-0123, Rule 30(b)(6) Smith Tr. at 45-47; PA-0468-69, Pl's Ex. 3 (email from counsel so informing Solo of patent's expiration).)  Yet, from that time through the present, Solo has continued to mark some or all of its cold drink lids with the expired '797 patent number, as follows:

- Solo marked all of its 605 lids with the expired '797 patent. (PA-0126, Rule 30(b)(6) Smith Tr. at 60; PA-0364, D's Resp. to Pl's RFA No. 10; PA-0615 (mold chart); PA-0524 (product image).)

- Solo marked all of it 668 lids with the expired '797 patent. (PA-0369-0370, D's Resp. to Pl's RFA No. 18; PA-0371-0372, D's Resp. to Pl's RFA No. 21; PA-0128, Rule 30(b)(6) Smith Tr. at 67; PA-0616 (mold chart); PA-0529 (product image).)

---

[1]  *See also* PA-0126, Rule 30(b)(6) Smith Tr. at 58 (600 lid); PA-0578, Rule 30(b)(6) Healy Tr. at 91-92 (600 lid); PA-0126, Rule 30(b)(6) Smith Tr. at 59-60 (605 lid); PA-0126-0127, Rule 30(b)(6) Smith Tr. at 60-61 (624 lid); PA-0127, Rule 30(b)(6) Smith Tr. at 62 (626 lid); PA-0128, Rule 30(b)(6) Smith Tr. at 65 (640 lid); PA-0578, Rule 30(b)(6) Healy Tr. at 92 (640 lid); PA-0128, Rule 30(b)(6) Smith Tr. at 66 (662 lid); PA-0128, Rule 30(b)(6) Smith Tr. at 67 (668 lid); PA-0128-0129, Rule 30(b)(6) Smith Tr. at 68-69 (695 lid); PA-0129, Rule 30(b)(6) Smith Tr. at 70-72 (PL2 lid); PA-0129-0130, Rule 30(b)(6) Smith Tr. at 72-73 (PL4 lid).  The cold drink and soufflé lids are hereinafter referred to by their base product codes.

- Solo marked some of its 600 lids with the expired '797 patent. (PA-0364, D's Resp. to Pl's RFA No. 9; PA-0372, D's Response to Pl's RFA No. 22; PA-0373, D's Resp. to Pl's RFA No. 23; PA-0126, Rule 30(b)(6) Smith Tr. at 58-59; PA-0615 (mold chart); PA-0523 (product image).)

- Solo marked some of its 624 series lids with the expired '797 patent. (PA-0365, D's Resp. to Pl's RFA No. 11; PA-0127, Rule 30(b)(6) Smith Tr. at 61; PA-0615 (mold chart); PA-0525 (product image).)

- Solo marked some of its 626 lids with the expired '797 patent. (PA-0365-0366, D's Resp. to Pl's RFA Nos. 12, 13; PA-0127, Rule 30(b)(6) Smith Tr. at 62; PA-0615 (mold chart); PA-0526 (product image).)

- Solo marked some of its 640 lids with the expired '797 patent. (PA-0367-0368, D's Resp. to Pl's RFA Nos. 14, 15; PA-0373-0374, D's Response to Pl's RFA No. 24; PA-0128, Rule 30(b)(6) Smith Tr. at 65-66; PA-0615 (mold chart); PA-0527 (product image).)

- Solo marked some of its 662 lids with the expired '797 patent. (PA-0368-0369, D's Resp. to Pl's RFA Nos. 16, 17; PA-0128, Rule 30(b)(6) Smith Tr. at 66-67; PA-0615 (mold chart); PA-0528 (product image).)

- Solo marked some of its 695 lids with the expired '797 patent. (PA-0370-0371, D's Resp. to Pl's RFA Nos. 19, 20; PA-0129, Rule 30(b)(6) Smith Tr. at 69:4-11; PA-0616 (mold chart); PA-0553 (product image).)

- Solo marked some of its PL2 lids with the expired '797 patent. (PA-0374, D's Resp. to Pl's RFA No. 25; PA-0129, Rule 30(b)(6) Smith Tr. at 72; PA-0617 (mold chart); PA-0531-0532 (product image).)

- Solo marked some of its PL4 lids with the expired '797 patent. (PA-0375-0376, D's Resp. to Pl's RFA Nos. 26, 27; PA-0130, Rule 30(b)(6) Smith Tr. at 73; PA-0617 (mold chart); PA-0533 (product image).)

4.    Based on Solo's data and information (*see* PA-0615-0617A (mold chart and supplemental e-mail from Solo's counsel); PA-0618-0630 (manufacturing data); PA-0132-0133, Rule 30(b)(6) Smith Tr. at 82-87 (admitting process for determining minimum number of mold cavities in use with expired patent numbers)), between September 5, 2002 and January 2009, Solo has marked <u>at least</u> ███████████ cold drink lids with the expired '797 patent. As described in the Declaration of Scott Hanna (*see* PA-0631-0637, Hanna Decl. ¶¶ 13, 15, 17, 21,

24, 28, 30, 34, 37, 40), the minimum numbers, by product type, marked with the expired patent are as follows.

| | |
|---|---|
| 600 | |
| 605 | |
| 624 | |
| 626 | |
| 640 | |
| 662 | **REDACTED** |
| 668 | |
| 695 | |
| PL2 | |
| PL4 | |
| TOTAL | |

**2. Since October 24, 2003 – the Date on which the '569 Patent Expired – Solo has Marked at Least ██████ Hot Drink Lids with the Expired '569 Patent Number**

5. The '569 patent (U.S. Patent 4,589,569) expired on October 24, 2003. (PA-0359, D's Resp. to Pl's RFA No. 1.) Before it expired, the '569 patent protected Solo's "Traveler" lids, which were used for hot drink cups, such as the type that might be found on a Caribou coffee cup. (PA-0121, Rule 30(b)(6) Smith Tr. at 38; PA-0136, Smith Tr. at 99.)

6. The "Traveler" or hot drink lids at issue in this case were protected by the '569 patent before it expired and are identified by the following Solo product codes: T316B 0001, TL310B, TL310R, TL308B, and TL308R 0003. (PA-0139, Rule 30(b)(6) Smith Tr. at 109-10; PA-0140-

0141, Rule 30(b)(6) Smith Tr. at 113-17.)  As with the cold drink lids, all hot drink lids with the

same base product code – that is, TL316, TL310 and TL308 – are the same lid and are

manufactured with the same mold cavities.  (PA-0140, Rule 30(b)(6) Smith Tr. at 113-14, 116;

PA-0578-0579, Rule 30(b)(6) Healy Tr. at 89-93.)[2]

7.   Solo knew that the '569 patent expired on October 24, 2003.  (PA-0137, Rule 30(b)(6)

Smith Tr. at 103-04; PA-0455-0457, D's Resp. to Pl's Amended Int. No. 8; PA-0472, Pl's Ex. 7

(March 9, 2004 e-mail acknowledging that the '569 patent expired in 2003 and that it "is no

longer a valid Patent").)  Yet, from that time to the present, Solo continued to mark some or all

of its hot drink lids with the expired '569 patent number, as follows (*see generally*, PA-0141,

Smith Tr. at 117):

- Until May 2008, Solo marked all of its TL310 lids with the expired '569 patent.  (PA-0140, Rule 30(b)(6) Smith Tr. at 114-115; PA-0361-0362, D's Resp. to Pl's RFA Nos. 5, 6; PA-0616 (mold chart); PA-0535-0536 (product images).)

- Until the present, Solo marked all of its TL308 lids with the expired '569 patent.  (PA-0140-0141, Rule 30(b)(6) Smith Tr. at 116-117; PA-0362-0363, D's Resp. to Pl's RFA Nos. 7, 8; PA-0617 (mold chart); PA-0537-0538 (product images).)

- Until August 2007,  Solo marked some of its TL316 lids with the expired '569 patent.  (PA-0139, Rule 30(b)(6) Smith Tr. at 109-110; PA-0360-0361, D's Resp. to Pl's RFA No. 4; PA-0616 (mold chart); PA-0534 (product image).)

8.   Based on Solo's data and information, (*see* PA-0615-17A (mold chart and

supplemental e-mail from Solo's counsel); PA-0618-30 (data); PA-0132-0133, Rule 30(b)(6)

Smith Tr. at 82-87 (admitting process for determining minimum number of mold cavities in use

with expired patent numbers)), between October 24, 2003 and January of 2009, Solo marked <u>at</u>

<u>least</u> ███████ hot drink lids with the expired '569 patent number.  As described in the

---

[2] Solo appears to have produced the manufacturing data only for the black version of the "TL316" series lid.  Solo should be required to produce the total number of TL316 series lids that Solo has manufactured.

Hanna Declaration (PA-0637-0638, Hanna Decl. ¶¶ 43, 46, 49, the minimum numbers, by product type, marked with the expired patent are as follows.

| 308 | REDACTED |
| 310 | |
| 316 | |
| TOTAL | |

### 3. Pursuant to its Corporate Policy, Solo Marked Its Cold and Hot Drink Lids with the Expired '797 and '569 Patent Numbers, Knowing That The Expired Patents Did Not Protect The Products

9.  Solo not only knew by June 16, 2000 that the '797 patent was expired and by October 24, 2003 that the '569 patent was expired, *see* ¶¶ 1, 3, 5, 7 above, but also that the patents, once expired, did not protect the company's cold and hot drink lids.  (PA-0156-0157, Smith Rule 30(b)(6) Tr. at 179-81 (admitting that Solo knew, since at least 2000, that once a patent expires, it no longer provides protection); PA-0453-55, D's Resp. to Pl's Amended Int. No. 7 (admitting that '797 patent did not provide protection after expiration, except that Solo could sue for pre-expiration infringement); PA-0455-57, D's Resp. to Pl's Amended Int. No. 8 (same as to '569 patent).)

10.  In June and July, 2000, Stephen Smith, Solo's Director of Product Engineering and one of its Rule 30(b)(6) designees in this case, corresponded by email with Solo's outside counsel, Robert Diehl, about the expired '797 patent.  (PA-0468-70, Pl's Ex.'s 3, 4.)  In Mr. Diehl's last email in the series on July 28, 2000, he advised Solo that "[t]he false marking of a product with a patent number does create liability for the offender, " and further that the "[b]est case scenario is to remove the number, if possible."  (PA-0470, Pl's Ex. 4.)

11.  Solo manufactures its cold and hot drink lids with what are called mold cavities,

which make imprints in heated plastic sheets. (PA-0113-0015, 0127, 0160, Smith Rule 30(b)(6) Tr. at 6, 12-14, 64, 195-96.) With each stroke of a Solo machine (which has a "mold base" with a specified number of separate mold cavities), each mold cavity in the mold base makes one imprint and one lid. (*Id.*) If a mold cavity includes an expired patent number, then the expired patent number is marked on the lid in the manufacturing process. (PA-0160, Smith Rule 30(b)(6) Tr. at 195-96.) To stop marking its lids with the expired patents, Solo had to replace one part of the three-part mold cavity that included the expired patent. (PA-0151-0152, Smith Rule 30(b)(6) Tr. at 160-61.) Solo did not replace the mold cavities for its cold and hot drink lids, or the parts of the cavities with the expired patents, when it learned that the '797 and '569 patents had expired. (PA-0117, 0125, 0138, 0147, Rule 30(b)(6) Smith Tr. at 23, 53-54, 106-08, 143-44.)

12. Instead, Solo says that, in the Fall of 2000, after becoming aware that the '797 patent had expired and corresponding with Mr. Diehl, it adopted a policy under which it would continue to use existing mold cavities, with the '797 expired patent number, until the cavities wore out or were damaged. Under the policy, as cavities wore out or were damaged, they would be replaced with a new ones that did not include the expired patent number. (PA-0117, Smith Rule 30(b)(6) Tr. at 23-24; PA-0453-0455, D's Resp. to Pl's Amended Int. No. 7 (describing policy).) Solo knew at the time that, under the policy, it would continue to mark lids with the expired '797 patent number. (PA-0117, Rule 30(b)(6) Smith Tr. at 23 (under the policy that Solo adopted "until [mold] cavities became worn or damaged, Solo used existing cavities with the expired patent numbers on them"); PA-0161-0162, Rule 30(b)(6) Smith Tr. at 200-201 (Solo adopted the policy knowing that it would continue marking its lids with the expired patent under the policy).)

13. Solo contends that it adopted the same policy with respect to the "Traveler" or hot

drink lids, after the '569 patent expired on October 24, 2003.  (PA-0138, Smith Rule 30(b)(6) Tr. at 107-08; PA-0455-0457, D's Resp. to Pl's Amended Int. No. 8 (describing policy); *see also* Mold Chart, at PA-0615-0617, setting forth how many mold cavities still included the expired '797 and '569 patent numbers as of May 2009 (or when product was discontinued) and how many did not.)

14.  Solo knew that mold cavities can last 10 to 15 years or longer (PA-0144, 0149-0150, Rule 30(b)(6) Smith Tr. at 129-30, 152-53), that under its policy, it would be marking cold and hot drink lids marked with the expired '797 and '569 patents until the last mold cavity was replaced (PA-0161-0162, 0220, Rule 30(b)(6) Smith Tr. at 200-01, 427-28), and as noted, that the expired patents no longer protected the lids (PA-0157, Rule 30(b)(6) Smith Tr. at 182 (admitting that Solo believed that the patents no longer protected the company's lids at time policy adopted).)  Solo has admitted that, under its policy, there was no time limit beyond which it would stop using mold cavities with the expired patent numbers, (PA-0148, Rule 30(b)(6) Smith Tr. at 147), and that it continues use old mold cavities with the expired '797 and '569 patent numbers in the manufacturing process to this day.  (PA-0125, Rule 30(b)(6) Smith Tr. at 54; PA-0615-0617 (mold chart).)

15.  Solo did not change its policy, or stop marking its products with the expired '797 and '569 patents, after this Court's ruling on March 24, 2008, that "marking an article with an expired patent number is a false marking under 35 U.S.C. § 292(a)."  (PA-0297, Eveleigh Tr. at 6-7; PA-0342, Eveleigh Tr. at 186-88; PA-0615-0617 (mold chart).)

### 4.  Solo's Advice Of Counsel, Assuming That it Was Ever Received, Did Not Involve Whether the Expired Patents Protected the Lids.

16.  Solo contends that it adopted the policy of using existing mold cavities with expired patent numbers until worn or damaged based on the advice of counsel.  (PA-0134, Rule 30(b)(6)

Smith Tr. at 90-91.)  It says that counsel advised the company that it could proceed under the policy.  (*Id.*; PA-0453-0457, D's Resp. to Pl's Amended Int. Nos. 7, 8.)  Although there are several disputed issues as to whether Solo actually received that advice, and if so, when it received the advice, none is material to this motion, because it is undisputed that whatever advice Solo received, the advice was <u>not</u> that the expired patents continued to protect the company's lids. (PA-0157, Rule 30(b)(6) Smith Tr. at 181-82 (Smith does not recall ever discussing with outside counsel whether a product is protected by an expired patent and does not recall ever receiving any advice on that topic); PA-0044, Diehl Tr. at 169 (Diehl does not recall discussing with Solo at any time whether the company had a reasonable belief that the expired '797 patent protected its products); PA-0079, Kuczma Tr. at 92 (Kuczma does not recall ever giving advice to Solo about whether the expired '797 patent protected its products); PA-0084, Kuczma Tr. at 109-10 (Kuczma does not know whether she ever advised Solo about whether the expired '569 patent protected its products); PA-0086, Kuczma Tr. at 120 (same); PA-0334, Eveleigh Tr. at 153-54 (Solo's current in-house intellectual property counsel is not aware of Solo ever receiving advice from counsel about whether the expired '797 patent protects its products).)  Solo received no advice on that subject and the advice that it received, if any, did not provide any basis for a belief, whether good faith or otherwise, that the expired patents protected the company's cold or hot drink lids.  To the contrary, as set forth above in ¶ 9 above, Solo has admitted that it knew that the expired patents did not protect its products.

**B.**   **Solo Marked The Packaging For The Cups, Bowls and Utensils at Issue With The "May Be Covered" Language, Knowing That the Cups, Bowls and Utensils Were Not Patented**

**1.**   **Solo Marked Millions Of Packages For The Cups, Bowls And Utensils With The "May Be Covered" Language**

17.  From October 2004 through March 2008, Solo marked all packaging for the cups,

bowls, and utensils at issue in the case – 9 oz "ULTRA COLORS' cups (identified by stock number TU9G on their packaging or TP9 on the cups), 3 oz "ULTRA COLORS" cups (identified by stock number B3100T on their packaging or P3A on the cups), 500 piece "Heavyweight Knives," Heavyweight Spoons," and "Heavyweight Forks," and 18 oz. white, silver and plastic bowls (identified by stock numbers FCB18W, FCB18C and FCB18J, respectively) – with the following language:

> This product may be covered by one or more U.S. or foreign pending or issued patents. For details, contact www.solocup.com.

(PA-0458-0460, D's Resp. to Pl's Amended Int. No. 14; PA-0539-0552 (product images); *see also* PA-0191, Smith Tr. at 312; PA-0297-0298, Eveleigh Tr. at 7-11.)

18. Based on data provided by Solo, and as explained in the Hanna Declaration (*see* PA-0638-0642, Hanna Decl. ¶¶ 58, 64, 70, 75, 80, 85, 90) the number of these cups, bowls and utensils marked with the "may be covered" language in the October 2004 through March 2008 period is as follows:

| | |
|---|---|
| 3 oz. "ULTRA COLORS" cups | |
| 500 piece "Heavyweight Knives" | |
| 500 piece "Heavyweight Spoons," | |
| 500 piece "Heavyweight Forks," | REDACTED |
| 18 oz. white plastic bowls | |
| 18 oz. silver plastic bowls | |
| 18 oz. gold plastic bowls | |
| TOTAL | |

## 2. Solo Knew That The Cups, Bowls And Utensils Were Not Patented

19. Solo marked the packaging for its products with the language that "[t]his product may be covered by one or more U.S. or foreign pending or issued patents" on all packaging, whether or not the products were patented. (PA-0185-0186, 0197, Rule 30(b)(6) Smith Tr. at 285-89, 335-36). It did so knowing that the packaging would be used for unpatented products

(as well as for patented products).  (PA-0185-0186, Rule 30(b)(6) Smith Tr. at 288-89.)

20.  Solo knew that the cups, bowls or utensils at issue in the case were not protected by a patent or pending patent application.  (PA-0458-0460, D's Resp. to Pl's Amended Int. No. 14; *see also* PA-0376-0377, D's Resp. to Pl's RFA No. 28, 29 (admitting that cups have not been protected by a Solo pending or issued patent); PA-0176-0177, Rule 30(b)(6) Smith Tr. at 258-62 (same); PA-0377-0379, D's Resp. to Pl's RFAs No. 30, 31, 32 (admitting that utensils have not been protected by a Solo pending or issued patent); PA-0177-0178, Rule 30(b)(6) Smith Tr. at 263-66 (same); PA-0380-0382, D's Resp. to Pl's RFAs No. 33, 34, 35 (admitting that bowls have not been protected by a Solo pending or issued patent); PA-0178-0179, Rule 30(b)(6)Smith Tr. at 266-69 (same); PA-0184, Rule 30(b)(6) Smith Tr. at 281 (admitting that, during the period from September 2002 through the present, Solo knew that the cups, utensils and bowls were not covered or protected by a U.S. or foreign patent and were not subject to a pending patent application by Solo).)

21.  Solo contends that it adopted the "may be covered" language for all of its packaging based on the advice of counsel.  But it undisputed that whatever advice Solo received in this respect did not touch on whether the cups, bowls and utensils at issue in this case were covered or protected by a U.S. or foreign patent or subject to a pending patent application.  (PA-0457-0460, D's Response to Pl's Amended Interrogatory No. 14 (Solo received advice to use the "may be covered" language and decided to put it on all of its packaging, whether or not the packaging was for products protected by patents); PA-0191-0192, Smith Tr. at 312-13 (Kuczma gave the advice to use the language); PA -0065, Kuczma Tr. at 33-35 (same); PA-0095-0096, Kuczma Tr. at 156-57 (same); PA-0185-0186, 0193, 0197, Smith Tr. at 285-89, 317, 335-36 (Smith decided to use the language for all packaging, whether or not the products are patented); PA-0185-0186,

Smith Tr. at 288-89 (Solo Cup marked language on packaging knowing that it contained unpatented products).)

## III.   ARGUMENT

Summary judgment should be granted Mr. Pequignot because "the evidence shows that no genuine issue of material fact exists" that Solo has violated § 292 by its false marking, with the intent to deceive the public, of at least ███████ lids with expired patents, as well as its false marking, with the intent to deceive the public, of at least ██████ packages containing cups, bowls and utensils with language importing that the products are patented.

### A.   Solo Has Violated § 292 By Falsely Marking its Lids with Expired Patents For the Purposes of Deceiving the Public

Section 292(a) provides, in relevant part: "Whoever marks upon, or affixes to . . . any unpatented article the word 'patent' or any word or number importing the same is patented, for the purposes of deceiving the public; . . . Shall be fined not more than $500 for every such offense." Thus, the plaintiff must establish three elements prove a violation of § 292(a): "(1) an article was marked with the word 'patent' or any word or number that imports that the article is patented; (2) the article so marked was an 'unpatented article'; and (3) the marking was 'for the purposes of deceiving the public.'" *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.,* 434 F. Supp. 2d 445, 451 (S.D. Tex. 2006).

This Court has already held that "marking an article with an expired patent number is a false marking under 35 U.S.C. § 292(a)," March 2008 Mem. Op. at 12, and Solo admits that it has marked its cold and hot drink lids with the expired '797 and '569 patent numbers. (Facts ¶¶ 3, 7.) Thus, it is undisputed that Solo falsely marked the lids, and the only remaining issue on liability is whether Solo marked the lids with the expired patents "for the purposes of deceiving the public." 35 U.S.C. § 292(a). The intent element is established where the preponderance of

the evidence shows that the false marker "did not have a reasonable belief that the articles were

properly marked (*i.e.*, covered by a patent)." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d

1347, 1352-53 (Fed. Cir. 2005).   This Court expressly recognized that this is the test for

determining whether the false marking was for "the purposes of deceiving the public" in its

March 24, 2008 Memorandum Opinion, at 15.  The test is easily satisfied by Solo's admissions.

In *Clontech Labs.*, the Federal Circuit's seminal case on § 292, the court held that the

intent requirement is "established in law by objective criteria," and that drawing the inference of

intent is warranted from "the fact of misrepresentation coupled with proof that the party making

it had knowledge of its falsity."  406 F.3d at 1352 (emphasis and citations omitted).  With respect

to the cold and hot drink lids, the "fact of misrepresentation" is not in dispute.  This Court has

held that marking with an expired patent, as Solo admits it has done, is false.  March 2008 Mem.

Op. at 12.

As for the second prong of the *Clontech* test for inferring fraudulent intent, the Federal

Circuit held that § 292 plaintiffs "must show by a preponderance of the evidence that the party

accused of false marking did not have a reasonable belief that the articles were properly marked

(i.e., covered by a patent)." *Clontech*, 406 F.3d at 1352-53.  Again, this is not in dispute.  Solo

<u>admits</u> that it knew the expired '797 and '569 patents no longer protected its products, and

therefore, that it had no belief, reasonable or otherwise, that the expired patents covered or

protected the lids.  (Facts ¶¶ 9, 16.)  Based on this un-rebutted evidence of a misrepresentation

and Solo's knowledge of its falsity, the Court must draw the inference that Solo falsely marked

the lids for the purposes of deceiving the public. *See, e.g., DP Wagner Mfg., Inc.*, 434 F. Supp.

2d at 456-57 (granting summary judgment against defendant for false marking where evidence

was un-rebutted that defendant marked its products knowing that the patents – including an expired patent – did not cover the products).

Moreover, Solo has admitted through its Rule 30(b)(6) witness that when it marks a product as patented, it is notifying consumers that at least one patent protects the product. (PA-0170, Rule 30(b)(6) Smith Tr. at 235; *see also* PA-0499, Pl's Ex. 38 (e-mail from Solo's in-house counsel advising members of Solo's marketing department that "adding the word 'patented' to literature (in addition to any marking on the product) is nice to have as it will give others additional notice of our patent and make them think twice about copying the product.") When this admission is coupled with Solo's admissions that it was deliberately marking its products with the expired patents as a matter of corporate policy and was doing so with knowledge that the patents did not protect the lids, the "falsity" and "intent" is obvious. As the Federal Circuit said in *Clontech*, "intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." 406 F.3d at 1352.

Nor, under the applicable standard, is there any record evidence that Solo could use to rebut the inference of intent. *Clontech* made clear that "the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability," and "the inference of intent to deceive cannot be defeated with blind assertions of good faith where the patentee has knowledge of mismarking." *Clontech,* 406 F.3d at 1352, 1353 n.2; *see also DP Wagner Mfg., Inc.,* 434 F. Supp. 2d at 457 ("Mere denial of intent, however, does not legally suffice to create a fact issue regarding good faith"). Thus, Solo's generalized protestations that it did not intend to deceive the public when it falsely marked billions of lids over the past nine years pursuant to a corporate

policy, even if expressed through a witness, are legally insufficient to overcome the undisputed evidence that Solo did so with knowledge that the expired patents did not protect the products.

Similarly, the advice of counsel upon which Solo supposedly based its corporate policy to mark its lids with the expired patents is legally insufficient and completely irrelevant to whether it had the intent required by § 292. Solo and its in-house IP counsel (Mr. Eveleigh) both admit that counsel never advised Solo that the cold or hot drink lids were covered or protected by the expired patents. (Facts ¶ 16.) Rather, as best as can be divined from the deposition testimony, Solo contends that its outside counsel advised the company that it could proceed with the corporate policy, under which it has deliberately marked billions of unpatented articles for nine years (and counting, not even including the 12 years that Solo was marking with the expired '797 patent before it allegedly discovered in 2000 that the patent was expired) with the expired patents. This advice, even if given at the time the policy was supposedly adopted (which we would dispute if it were material to this motion), does not speak to whether Solo had a "reasonable belief that the articles were properly marked (i.e., covered by a patent)," which is the only question other than falsity that must be answered in determining whether to infer intent. *Clontech*, 406 F.3d at 1352-53; *see also Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.*, 786 F. Supp. 1287, 1288 (N.D. Ohio 1991) ("mere fact" that defendants accused of false patent marking "had consulted a patent attorney" did not "exonerate" them); March 2008 Mem. Op. at 15. As a result, the supposed advice, if given, could not absolve Solo of liability under the applicable standard set by *Clontech*.

**B.      Solo Has Violated § 292 By Falsely Marking The Packaging For Its Cups, Bowls And Utensils with Language Importing that Those Products Are Patented For the Purposes of Deceiving the Public**

With respect Solo's marking its packages of cups, bowls and utensils with the statement that the products "may be covered by one or more U.S. or foreign pending or issued patents,"

18

this Court has already held that the marking is a "culpable false marking," if the plaintiff "can demonstrate by a preponderance of the evidence that Solo intended to deceive the public—*i.e.*, that Solo 'did not have a reasonable belief that the articles were . . . covered by a patent' or a pending patent application." March 2008 Mem. Op. at 15 (quoting *Clontech,* 406 F.3d at 1353. Solo has since <u>admitted</u> that it knew the cups, bowls and utensils at issue were never patented, and therefore, that it has never believed, whether in good faith or otherwise, that the products contained in the packaging marked with the language were protected by a patent or a pending patent application. (Facts ¶¶ 19-21.) Based on this admission, the Court must hold that Solo falsely marked the packages for the purposes of deceiving the public. Again, Solo's supposed advice of counsel – namely, that it should use the language – does not go to the question of whether Solo had a reasonable belief that the cups, bowls and utensils were patented and is immaterial to this motion.

**C.    Solo Should be Fined Up to $500 for Each of the ▮▮▮▮▮▮▮▮▮▮Falsely Marked Lids and Each of the ▮▮▮▮▮▮, Falsely Marked Packages of Cups, Bowls and Utensils**

In addition to finding that Solo has violated § 292 by falsely marking its lids, cups, bowls and utensils, this Court should also find as a matter of law that <u>each</u> falsely marked Solo lid, and <u>each</u> falsely marked package of cups, bowls, and utensils constitutes a separate offense under § 292, punishable by a fine of up to $500. To be clear, we are asking this Court to determine, as a matter of law, the meaning "offense" within § 292 – namely, that it means each false marking on an unpatented article – and then by that test, the minimum number of false marking offenses Solo has committed. Mr. Pequignot is not seeking a ruling at this time on the per offense fine that should be imposed.

1.   **Section 292 Requires a Penalty For Each False Marking of an Article**

The interpretation of the term "offense" presents a straightforward question of law appropriately resolved on summary judgment:  whether each false marking on an article is a separate offense under § 292.  Section 292 provides a civil penalty of up to $500 for "every such offense" which, under the unambiguous language of the statute, means each false marking of a product or its packaging.  35 U.S.C. § 292(a).  The relevant case law and public policy considerations also compel the conclusion.  Interpreting the term "offense" correctly to mean each false marking on an article, rather than some alternative formulation not supported by the language of the statute that would eviscerate the force of the statute, will provide this Court with sufficient latitude to order effective, but fair, punishment that deters companies such as Solo from engaging in mass false marking.

a.   **The Plain Language of § 292 Provides That Each False Marking of an Unpatented Article Is an Offense**

The plain meaning of § 292 is that each false marking of a product, or "article," is an "offense," for which the offender shall be fined "not more than $500."  Thus, for purposes of determining the amount of a penalty under § 292, a defendant has committed a separate offense for each false marking on a product (the "article" within § 292).

It is a well-established rule that "[t]he starting point for [the] interpretation of a statute is always its language." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted); March 2008 Mem. Op. at 6.  A statute's plain meaning is ordinarily "the end of the matter," absent something special about the statute's structure or relationship to other statutes that would call into question this plain meaning. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984).  Once again, § 292 provides in relevant part:

> Whoever marks upon, or affixes to . . . any unpatented article the word 'patent' or any word or number importing the same is patented, for the purposes of deceiving the public; . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). The statute, in short, prohibits the false marking – that is, the marking upon, or affixing to "any unpatented article" and directs that a fine shall be assessed for "every such offense."

First, the word "article" refers to the thing, or item, that has been falsely marked, and it is the false marking on the "article" that constitutes the "offense," not the decision to falsely mark or some other formulation. Second, Congress used the singular noun, "article," rather than the plural "articles," thus conveying that the false marking of each article is a separate offense, rather than there being one offense for the false marking of multiple articles. Third, Congress modified the singular term "article," with the word "any," underscoring that a separate offense occurs each time "any . . . article" is falsely marked. Fourth, and finally, § 292 specifies that "every such offense" – namely, the false marking of "any . . . article" – shall be penalized. The statute does not say that "such offense" is false marking in general or the decision to falsely mark. Instead, Congress chose to modify "such offense" with the term "every," again confirming the separate and distinct nature of each false marking. The use of the word "every," when read with the remainder of the provision, also dispels any notion that the false marking of numerous articles could constitute only a single offense. Thus, under the plain language of § 292, each of Solo's false markings constitutes a separate "offense" that shall be punished by a fine of not more than $500.

Because the plain meaning of § 292 is clear, this Court need not look any further than the language of the statute. *Chevron U.S.A.*, 467 U.S. at 842. However, the statute's legislative history, if considered, provides further proof that every false marking of an article constitutes a

21

separate offense.  As originally enacted in 1842, the first false marking statute provided in

relevant part:

> That . . . if any person . . . shall affix the [word "patent" or the words "letters
> patent, or the word "patentee"] . . . on any unpatented article, for the purpose of
> deceiving the public, he . . . shall be liable for <u>such offense, to a penalty of not
> less than one hundred dollars</u>.

Patent Act of 1842, ch. 263, § 5, 5 Stat. 543, 544 (1842) (emphasis added).

Twenty-eight years later, in the Patent Act of 1870, Congress amended § 292.  It added

the modifying word "every," thus penalizing "<u>every</u> such offense" (emphasis added), as § 292

still requires today.[3]  This Court should presume that Congress' addition of the word "every" has

meaning.  *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687,

701 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to

have real and substantial effect").  The addition of the word "every" highlights, as just explained,

and reinforces, Congress's intent to impose a penalty for each false marking of an "article."

### b. This Court Should Follow the Case Law Adopting the Correct Interpretation of § 292, Consistent with the Statute's Plain Meaning

There is very little case law interpreting § 292, and the Federal Circuit has yet to address

how the number of offenses under the statute should be determined.[4]   However, at least one

modern court and a number of other courts interpreting an earlier version of § 292 have held that

each falsely marked product or article constitutes a separate "offense."   Moreover, there is

abundant case law holding that similar language in similar statutes means that each offense is

---

[3] In 1952, Congress amended § 292 to eliminate the requirement of a minimum penalty of $100 for each offense, and replaced it with the current maximum penalty of $500.  *See* 66 Stat. 814 (amending statute).

[4] A decision on the issue may be forthcoming in the relatively near future in *Forest Group, Inc. v. Bon Tool Co.*, No. H-05-4127, 2008 WL 4376346 (S.D. Tex. Sep. 22, 2008), which is on appeal to the Federal Circuit, Case No. 2009-1044.

subject to a separate penalty.   Together, these cases provide strong additional support for interpreting § 292 consistent with its plain meaning.

In *Enforcer Prods., Inc. v. Birdsong*, No. 1-93-CV-1701-CC, at 20-21 (N.D. Ga. Nov. 29, 1995) (Exhibit A), the district court held that a fine would be awarded on a per article basis for each falsely marked product under § 292.   In that case, the Court found that the defendant had falsely marked its flea trap products and packaging with a patent that did not cover the product, in violation of 35 U.S.C. § 292.   The Court then held that it would assess a fine for "each offense of falsely marking a flea trap product," fining the defendants "$50 for each flea trap product or product packaging of defendants falsely marked." *Id.* at 20.

Courts interpreting an earlier version of § 292 also adopted this correct interpretation of § 292.   In *Pentlarge v. Kirby*, 19 F. 501, 502 (S.D.N.Y. 1884), the court held that, under the version of § 292 in effect at the time (the original statute, as amended by the Patent Act of 1870), a $100 fine would apply to each of defendant's products that were falsely marked as patented, for a total fine of $6,000.   The court expressly found each falsely marked article was a separate offense, noting "[t]he articles stamped may be of comparatively little value; yet a penalty of $100 is fixed for the stamping of each." *Id.*; *see also Tompkins v. Butterfield*, 25 F. 556, 560-61 (D. Mass. 1885) (defendant sold saddle-trees, each falsely marked; court instructed jury to render a verdict based on a maximum of 50 violations); *French v. Foley*, 11 F. 801 (S.D.N.Y. 1882) (noting that § 292 in effect at time was "penal" in that it imposed a penalty of $100 for each offense, for a total fine of $4500 for affixing false marking upon 45 pens but finding plaintiff failed to prove liability).

Courts have consistently held that similar language in similar statutes – that is, terms such as "every," "each," or "any" offense – means that each offense must be counted separately in

23

calculating a total penalty.  For example, in *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 959-60 n.3 (3d Cir. 1981), the Court of Appeals for the Third Circuit held that each of defendant's more than 16 million deceptive mailings "constituted a separate violation" of the Federal Trade Commission Act, which provided for "a civil penalty of not more than $10,000 for each violation."  In so doing, the court rejected defendant's efforts to group each bulk mailing into one offense, as contrary to the plain language of the statute.  *Id.* at 966-67; *see also Geffen v. Baltimore Mkts. Inc.*, 191 A. 24, 28 (Pa. 1937) (where the Trademark Act required a $200 penalty for "any" unlawful "use" of a trademark, the defendant was liable for 25 separate sales made to the plaintiff).  Numerous other courts have rejected attempts to group similar individual offenses into one offense, contrary to a statute's plain meaning.  *See, e.g., United States v. Mirama Enters., Inc.*, 387 F.3d 983, 986-88 (9th Cir. 2004) (where defendant failed to report that between 30,000 and 40,000 juicers in the stream of commerce might pose a risk, it committed 30,000 to 40,000 reporting offenses under the Consumer Product Safety Act, providing a "civil penalty not to exceed $[6,000] for <u>each such violation.</u>") (emphasis in original); *United States v. Smithfield Foods, Inc.*, 972 F. Supp. 338, 340-41 (E.D. Va. 1997) (where Clean Water Act provided for a "civil penalty not to exceed $25,000 <u>per day for each violation,</u>" and defendants violated permit each day in multiple ways, the maximum penalty on that day may exceed $25,000) (emphasis in original); *Southern Ry. Co. v. State*, 75 N.E. 272, 277 (Ind. 1905) (Court awarded recovery for over 400 violations, representing each instance railroad company failed to post information as required by statute, rejecting argument that only single penalty could be imposed in violation of plain language of statute).

As mentioned above, the Federal Circuit is currently reviewing a recent decision by a district court in Texas, *Bon Tool*, 2008 WL 4376346, in which the court completely ignored the

controlling language of the statute and held that a "single decision" to falsely mark a certain product, with the intent to deceive the public, constituted a "single offense" for purposes of calculating the damages under § 292. *Bon Tool*, we submit, was wrongly decided and is not controlling or persuasive authority, as the district court chose not to examine the plain language of the statute, but instead was primarily concerned with not imposing a disproportionate penalty that theoretically could result from equating each false marking of an article with an offense. The district court's concern, however, was without basis, because it did not account for the statute's directive to award "not more than $500 for every such offense." 35 U.S.C. § 292(a). And it could not possibly justify the district court rewriting the statute to meet its own concept of the appropriate policy choice.

Moreover, the district court in *Bon Tool* completely failed to consider that, if the term "offense" is interpreted correctly, a court still has the latitude to award less than the statute's maximum penalty of $500 per offense and, therefore, to calibrate the penalty to the merits of the particular case without departing from the statute's plain meaning. Based on this misconception, the district court opted for its unnatural reading of the term "offense," and in the process, eviscerated the deterrent and punitive effect of the statute.

By contrast to the current version of the statute, which mandates the imposition of a penalty of "not more than $500" for "every such offense," courts applying pre-1952 versions of § 292 could not control the total amount of the award by setting a lower per offense penalty. Before the 1952 amendment to the statute, § 292 imposed a minimum penalty, rather than the current maximum penalty, and there could have been a legitimate concern that the statute would require a disproportionately large fine. *See* 66 Stat. 814. As a result, some courts strayed from the plain meaning of the statute, and in particular to the plain meaning of the term "offense," to

avoid total penalties that they viewed as too punitive. *See, e.g., London v. Everett H. Dunbar Corp.*, 179 F. 506, 508 (1st Cir. 1910) (noting, under pre-1952 version of Patent Act, that per offense minimum could result in "an enormous sum of penalties, entirely out of proportion to value of articles"). To the extent these cases ever had any validity, they (and any modern decisions relying on such cases) are no longer persuasive because § 292 no longer imposes a minimum fine and this Court therefore has the latitude to fashion an appropriate penalty when awarded on a per offense basis.

### c. Public Policy Considerations Favor Treating Each False Marking on an Article as a Separate Offense

Preserving the force of § 292 by treating each false marking of an article as a separate offense serves important public interests that this Court has expressly recognized in its earlier rulings in this case. In *Clontech Labs., Inc.*, the Federal Circuit observed that false marking harms the public because it:

> misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in the article.

406 F.3d at 1356-57 (footnote omitted). The court noted further that § 292 "permits full and free competition in the use of ideas which are in reality a part of the public domain." *Id.* at 1356. *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989).

This Court has similarly observed in this case:

> Patent markings are an essential component of this system. The "Patent No. XXX" imprint, is, in effect, a "no trespassing" sign. Would-be inventors and consumers justifiably rely on such marks to assume that the patent holder retains control over how the article can be used, displayed, modified or licensed.

March 2008 Mem. Op. at 10-11. When companies like Solo have "free reign" to falsely mark their products, it forces consumers and competitors to expend the effort and expense to

26

determine whether the product is actually patented, or whether it is a product in the public domain. *Id.* at 11-12. When false marking is widespread, patent markings cannot be relied upon, costs are borne by the wrong parties and the patent system as a whole is undermined.

Affording § 292 its plain meaning and defining "offense" as each false marking of an article will further the interests of a fair patent system and Congress's intent to foster competitive marketplaces. Under this proper interpretation, the Court would have the flexibility to impose an appropriate fine designed to deter and punish Solo's extensive false marking while protecting the integrity of the patent system.

By contrast, under an alternative interpretation artificially limiting the number of offenses, such as imposing a single penalty for each "decision" to mark, each day or week of false marking or some other test not derivative of § 292's plain meaning, the statute would effectively be eviscerated because there would be no meaningful downside for false marking. If such an interpretation were the law, false markers such as Solo would have the "free reign" that this Court is concerned about to continue to mark expired patents on their products and to otherwise engage in deception with impunity, knowing that their maximum fine for deciding to falsely mark a product is $500, no matter how many products are falsely marked. After receiving a slap on the wrist, Solo and the other false markers would continue to unfairly benefit from consumers' belief that a "patented" product is better or more technically sophisticated than its unpatented peers, and would shift the cost of determining whether a product is patented to consumers and competitors. *See* 7 Donald S. Chisum, Chisum on Patents 20.03(7)(c)(vii) (1999) · (noting that false marking may "create a misleading impression that the product is technologically superior to previously available ones.").

27

Moreover, a misinterpretation of the term "offense" would not only have an impact in civil cases such as this one brought by a *qui tam* relator or brought directly by the United States, but would also negatively undermine the United States' criminal enforcement of the statute. Because § 292 is also a criminal statute, to the extent that an unnatural reading of the statute were adopted to limit the number of "offenses" for a company's false marking of a mass produced product, that same limitation would apply to any criminal action brought by the government under the statute. Such an interpretation would not only destroy the incentives to bring a § 292 *qui tam* action, but would also destroy the ability of the government to pursue a meaningful criminal penalty against a party who violates the statute. The Supreme Court has cautioned against interpreting *qui tam* statutes in ways that hamper the government's enforcement capability, and the Court should decline to do so here. *See U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 541-42 (1943).

### 2. Solo Has Committed At Least ████████ Offenses Under § 292 Each Punishable by a Fine of Up to $500

The plain meaning of § 292, its legislative history, well-reasoned precedent and public policy all support this Court's finding, as a matter of law, that each false marking on a product or packaging is a separate offense for purposes of § 292. As set forth in Facts ¶¶ 4, 8, 18 above, and in the Hanna Declaration, PA0631-0642, based on data, information and admissions from Solo, Solo falsely marked at least ████████ unpatented articles in violation of § 292. Therefore, the Court should find that Solo has committed at least ████████ offenses under § 292, with each punishable by a fine to be determined at trial of "not more than $500."

## CONCLUSION

For the foregoing reasons, Mr. Pequignot's motion for partial summary judgment should

be granted and the Court should hold that Solo is liable under § 292 for at least ▉▉▉▉▉▉

offenses, each punishable by a fine of up to $500.


Dated:  June 18, 2009                                    Respectfully submitted,

                                                         /s/ Ellen D. Marcus
                                                         Ellen D. Marcus (Virginia Bar. No. 44314)
                                                         emarcus@zuckerman.com
                                                         Carl S. Kravitz (admitted *pro hac vice*)
                                                         ckravitz@zuckerman.com
                                                         Jane Ricci (admitted *pro hac vice*)
                                                         jricci@zuckerman.com
                                                         ZUCKERMAN SPAEDER LLP
                                                         1800 M Street, N.W., Suite 1000
                                                         Washington, D.C. 20036
                                                         (202) 778-1800 (telephone)
                                                         (202) 822-8106 (facsimile)


                                                         Mia K. Poston (Virginia Bar No. 68548)
                                                         mposton@pmiplaw.com
                                                         Pequignot + Myers, LLC
                                                         1636 R Street, N.W., Third Floor
                                                         Washington D.C.  20009
                                                         (202) 328-1200 (telephone)
                                                         (202) 328-2219 (facsimile)

                                                         *Attorneys for Plaintiff Matthew A. Pequignot*

**CERTIFICATE OF SERVICE**

I certify that on June 18, 2009, I electronically filed Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

/s/ Ellen D. Marcus
Ellen D. Marcus (Virginia Bar. No. 44314)
emarcus@zuckerman.com
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800 (telephone)
(202) 822-8106 (facsimile)

*Attorney for Plaintiff Matthew A. Pequignot*