**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| MATTHEW A. PEQUIGNOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 1:07-CV-897-LMB-TCB |
| v. | ) | |
| | ) | **Filed Under Seal** |
| SOLO CUP COMPANY, | ) | **(Unredacted Version)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT SOLO CUP COMPANY'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND FOR
ATTORNEY FEES AND/OR COSTS PURSUANT TO
35 U.S.C. § 285, FEDERAL RULE OF CIVIL PROCEDURE 54(d),
LOCAL RULE 54(D) AND 28 U.S.C. § 1920**

Jason C. White (admitted *pro hac vice*)
Robert W. Unikel (admitted *pro hac vice*)
HOWREY LLP
321 North Clark Street
Suite 3400
Chicago, IL 60654
Telephone: 312-595-1239
Fax: 312-595-2250
whitej@howrey.com
unikelr@howrey.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com

*Attorneys for Solo Cup Company*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   SOLO IS ENTITLED TO AN AWARD OF COSTS AS THE PREVAILING
      PARTY ........................................................................................................ 2

      A.    Solo is the Prevailing Party ............................................................... 3

      B.    Solo Incurred Necessary and Reasonable Costs in Defending this Action. ................. 4

            1.    Hearing Transcript and Deposition Transcript and Videography Costs ............... 4

            2.    *Pro Hac Vice* Fees ............................................................. 5

      C.    Summary of Taxable Costs ................................................................ 6

III.  BECAUSE THIS CASE IS "EXCEPTIONAL" UNDER 35 U.S.C. § 285, SOLO
      SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND
      REMAINING COSTS ................................................................................... 6

      A.    Pequignot's False Marking Claims and Legal Positions Were Frivolous At Best,
            Vexatious At Worst, Thereby Justifying an Award of Fees and Costs Under
            § 285 ............................................................................................... 7

      B.    Pequignot's Litigation Tactics Further Justify An Award of Attorneys Fees
            and Costs Under § 285 .................................................................. 11

      C.    Solo Is Entitled to All Additional Costs Under § 285 ............................... 13

      D.    Solo is Entitled to All of its Attorneys' Fees Under § 285 ......................... 14

      E.    Solo's Attorneys' Fees are Reasonable ................................................ 14

            1.    Time and Labor Required (*Johnson* Factor #1) .................................. 16

            2.    The Novelty and Difficulty of the Questions (*Johnson* Factor #2) ............... 16

            3.    Skill Requisite to Properly Perform the Legal Service (*Johnson* Factor #3) ........ 17

            4.    Customary Fees (*Johnson* Factor #5) ........................................... 18

            5.    Amount Involved and the Results Obtained (*Johnson* Factor #8) ................. 20

            6.    Experience, Reputation and Ability of Attorneys (*Johnson* Factor #9) .............. 21

            7.    Awards in Similar Cases (*Johnson* Factor #12) .................................. 22

DM_US:22404925_1

F.    At a Minimum, Pequignot's Pursuit of the Case After Discovery Made Clear There Was No Evidence of an Intent to Deceive Was Unjustified and Frivolous, Thereby Warranting an Award of Fees and Costs From That Date Forward. ......................... 22

IV.    CONCLUSION............................................................................................................. 24

DM_US:22404925_1

# TABLE OF AUTHORITIES

## Cases

*Abraskin v. Entrecap Corp.*,
  55 F. Supp. 2d 224 (S.D.N.Y. 1999) ...................................................................... 6

*Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co.*,
  227 U.S.P.Q. 665 (C.D. Cal. 1985) ..................................................................... 10

*Auto. Prods. PLC v. Tilton Eng'g, Inc.*,
  855 F. Supp. 1101 (C.D. Cal. 1994) .................................................................... 13

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 n.28 (4th Cir. 1978) ...................................................................... 15

*Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*,
  738 F.2d 1237 (Fed. Cir. 1984) ............................................................................ 6

*BCD, LLC v. BMW Mfg. Co.*,
  No. 05-2152, 2008 WL 724061 (D.S.C. Mar. 17, 2008) ...................................... 5

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) .............................................................................................. 15

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................ 15

*Boler Co. v. Tuthill Corp.*,
  No. 2:04-cv-286, 2007 WL 3046450 (S.D. Ohio Oct. 17, 2007) .................... 10, 11

*Brasseler, USA I, LLP v. Stryker Sales Corp.*,
  267 F.3d 1370 (Fed. Cir. 2001) .......................................................................... 15

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) ................................................................ 7, 13, 14

*Cherry v. Champion Int'l Corp.*,
  186 F.3d 442 (4th Cir. 1999) ....................................................................... 3, 4, 5

*Clontech Labs., Inc. v. Invitrogen Corp.*,
  406 F.3d 1347 (Fed. Cir. 2005) ............................................................................ 9

*Codex Corp. v. Milgo Elec. Corp.*,
  541 F. Supp. 1198 (D. Mass. 1982) .................................................................... 14

*Cofield v. Crumpler*,
  179 F.R.D. 510 (E.D. Va. 1998) ........................................................................... 4

*Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*,
  854 F.2d 219 (7th Cir. 1988) ............................................................................... 3

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
  ___ F.3d ___, 2009 WL 2748365 (8th Cir. Sept. 1, 2009) ................................... 5

*Fells v. Va. Dep't of Transp.*,
  605 F. Supp. 2d 740 (E.D. Va. 2009) ................................................................ 2, 3

iii

*Forest Group v. Bon Tool Co.*,
    No. 05-4127, 2008 WL 2962206 (S.D. Tex. July 29, 2008)............................................. 10, 12

*Glaxo Group Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004) ..................................................................................... 6

*Grissom v. Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008)......................................................................................... 14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................................................... 15

*J.P. Stevens Co. v. Lex Tex Ltd.*,
    822 F.2d 1047 (Fed. Cir. 1987)..................................................................................... 7, 13

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974).................................................................... 15, 17, 20, 21

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004)..................................................................................... 14

*Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*,
    613 F. Supp. 2d 670 (D. Md. 2009) .............................................................................. 21

*Little v. Mitsubishi Motors N. Am., Inc.*,
    514 F.3d 699 (7th Cir. 2008).......................................................................................... 5

*London v. Everett H. Dunbar Corp.*,
    179 F. 506 (1st Cir. 1910).............................................................................................. 17

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
    76 F.3d 1178 (Fed. Cir. 1996)....................................................................................... 4

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)....................................................................................... 6

*Maxwell v. Angel-Etts of Cal., Inc.*,
    Nos. 01-1601 53 Fed. Appx. 561, 2002 WL 31809442 (Fed. Cir. Dec. 13, 2002).................. 13

*Microstrategy Inc. v. Crystal Decisions, Inc.*,
    586 F. Supp. 2d 256 (D. Del. 2008) .............................................................................. 21

*Morrison v. Reichhold Chems., Inc.*,
    97 F.3d 460 (11th Cir. 1996).......................................................................................... 4

*Nordek Corp. v. Garbe Iron Works, Inc.*,
    No. 81-7188, 1983 U.S. District LEXIS 17451 (N.D. Ill. Apr. 25, 1983)............................... 7

*Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*,
    899 F.2d 291 (4th Cir. 1990).......................................................................................... 3

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003)..................................................................................... 7

*Plyler v. Evatt*,
    902 F.2d 273 (4th Cir. 1990).......................................................................................... 14

iv

*Robinson v. Equifax Info. Servs., LLC*,
   560 F.3d 235 (4th Cir. 2009) ............................................................. 14, 15

*Rohm & Haas Co. v. Crystal Chem. Co.*,
   736 F.2d 688 (Fed. Cir. 1984) ............................................................ 7, 13

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*,
   459 F.3d 1311 (Fed. Cir. 2006) ............................................................. 6

*Standard Oil Co. v. Am. Cyanamid Co.,*
   774 F.2d 448 (Fed. Cir. 1985) .............................................................. 6

*Stephens v. Tech Int'l, Inc.*,
   393 F.3d 1269 (Fed. Cir. 2004) ............................................................. 6

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*,
   881 F. Supp. 1021 (E.D. Va. 1994) ..................................................... 13

*Synergistic Int'l, LLC v. Korman*,
   No. 05-49, 2007 WL 517676 (E.D. Va. Feb. 8, 2007) ................................. 3, 4, 5

*Synthon IP, Inc. v. Pfizer Inc.*,
   484 F. Supp. 2d 437 (E.D. Va. 2007) ................................................... 21

*Tilton v. Capital Cities/ABC, Inc.*,
   115 F.3d 1471 (10th Cir. 1997) ............................................................ 4

*Transclean Corp. v. Bridgewood Servs., Inc.*,
   134 F. Supp. 2d 1049 (D. Minn. 2001) ................................................... 6

*Wheeler v. Durham City Bd. of Educ.*,
   585 F.2d 618 (4th Cir. 1978) ............................................................. 13

## Statutes

28 U.S.C. § 1920 ................................................................................... passim

28 U.S.C. § 1924 ......................................................................................... 3

35 U.S.C. § 285 ............................................................................... 2, 6, 13, 14

35 U.S.C. § 292 ................................................................................. 3, 16, 20

## Rules

Federal Rule of Civil Procedure 54(d) .............................................. 1, 2, 14

Local Rule 54(D) ......................................................................... 1, 14

Local Rule 56(B) ............................................................................. 12

Local Rule 7(F)(3) .......................................................................... 12

v

## I.    INTRODUCTION

Plaintiff Pequignot brought this false marking action claiming no injury to himself, but seeking to collect an unprecedented monetary windfall.  Pequinot never contacted Solo Cup Company ("Solo") prior to filing suit to inquire as to the reasons for Solo's patent markings. Instead, he rushed to file this action, demanding at least nine million dollars - then persisted in pursuing it even when it became clear there was no evidence of any intent to deceive the public. Although prior case law did not address whether the presence of expired patent numbers on a product the patent once protected could even constitute false marking, Pequignot made astronomical monetary demands to dismiss the case (even his final settlement demand, following completion of discovery that revealed no evidence of intent to deceive, was for millions of dollars).  As a result, Solo was forced to expend over a million dollars to defend itself.

Even after discovery made clear that there was no evidence of any intent to deceive - only evidence in support of Solo's consistent assertion that it acted in accordance with the advice of its outside counsel - Pequignot persisted in pursuing the case through costly summary judgment practice, including his legally unsupported argument on the definition of "offense."  In the face of nearly a century of case law defining an "offense" to mean the decision to falsely mark a product with the intent to deceive, Pequignot persisted in arguing that Solo was responsible for 21,757,893,672 separate offenses, each entitling him to an award of up to $500.  Pequignot's unreasonable litigation positions and dogged pursuit of his claims even in the face of overwhelming evidence and case law against him make this action appropriate for an award of attorneys' fees as well as costs.

It is clear that Solo is the prevailing party in this action.  Summary judgment was granted in favor of Solo and against Pequignot on all claims.  Solo is therefore entitled to certain taxable costs of defending this action pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d) and Local Rule 54(D).  In addition, the Patent Act provides for the award of attorneys' fees and all remaining costs to a prevailing party in a patent suit deemed "exceptional" under 35

1

U.S.C. § 285. Because Pequignot persisted in pursuing this litigation in the face of rulings and evidence that made clear his claims were frivolous, Solo also seeks an award of all its fees and costs pursuant to Section 285. In the alternative, if the Court determines that Pequignot's prosecution of this action was not unjustified initially, it certainly became clear that his continued pursuit of it was unwarranted after discovery revealed no evidence of intent to deceive, but rather showed that Solo acted pursuant to its attorneys' advice. Accordingly, attorneys' fees and all costs should therefore be awarded from at least the close of discovery forward.

## II.     SOLO IS ENTITLED TO AN AWARD OF COSTS AS THE PREVAILING PARTY.

The prevailing party is presumed to be entitled to its costs. Federal Rule of Civil Procedure 54(d)(1) directs the award of costs, other than attorneys' fees, to a prevailing party unless "a federal statute, these rules, or a court order provides otherwise." *Fells v. Va. Dep't of Transp.*, 605 F. Supp. 2d 740, 741 (E.D. Va. 2009). 28 U.S.C. § 1920 describes the costs recoverable by the prevailing party:

A judge or clerk of any court of the United States may tax as costs the following:

(1)    Fees of the clerk and marshal;

(2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title;

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The prevailing party must affirm that its request for costs is "correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and

necessarily performed." 28 U.S.C. § 1924; *Synergistic Int'l, LLC v. Korman*, No. 05-49, 2007 WL 517676, at *1 (E.D. Va. Feb. 8, 2007). Once the prevailing party makes a showing that the requested costs are allowed by Section 1920, the burden shifts to the losing party to demonstrate that taxation of these costs is improper. *Id.*

The prevailing party is presumed to be entitled to its costs "as of course." *Cherry v. Champion Int'l Corp.,* 186 F.3d 442, 446 (4th Cir. 1999). If the court departs from this rule, it must justify the decision by "articulating some good reason for doing so." *Fells*, 605 F. Supp. 2d at 742, citing *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990). "[O]nly misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay will suffice to justify denying costs." *Cherry*, 186 F.3d at 446, citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988).

## A.     Solo is the Prevailing Party

There can be little dispute that Solo is the "prevailing party" in this litigation, as the Court granted Solo summary judgment on all of Pequignot's claims. Specifically, the Court granted Solo summary judgment that it acted without the legally-required intent to deceive the public when Solo (a) followed its attorneys' recommendations to replace mold cavities engraved with expired patent numbers as those cavities became worn or damaged (rather than to replace the cavities all at once); and (b) followed its attorneys' recommendation and placed language on all of its packaging—including packaging for patented products—indicating that the "products may be covered by one or more issued or pending U.S. or foreign patents." Further, consistent with 100 years of precedent, the Court granted Solo summary judgment that (a) an "offense" under 35 U.S.C. § 292 is the *decision* to engage in the course of conduct accused of false marking (rather than each "article" alleged to have been falsely marked, as Pequignot argued); and thus (b) Solo could have been liable, at maximum, for three possible Section 292 offenses, with a total potential liability of $1500.

3

The Court denied Pequignot's motion for summary judgment in its entirety.

**B.     Solo Incurred Necessary and Reasonable Costs in Defending this Action.**

The taxable costs Solo requests as a prevailing party were necessarily and reasonably incurred to defend itself in this action, and are costs that courts have routinely awarded under Section 1920.  Each category of costs is discussed below.

**1.     Hearing Transcript and Deposition Transcript and Videography Costs**

Pursuant to Section 1920, the prevailing party is entitled to recover its costs for "printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  This includes the costs of transcripts for both court hearings and depositions.  *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996); *Synergistic Int'l*, 2007 WL 517676, at *2-4.  Importantly, all but one of the depositions taken in this case—that of the plaintiff himself—were noticed and taken by Pequignot.   Accordingly, Pequignot cannot reasonably claim that such deposition transcripts were not "relevant and material" to Solo's trial preparation efforts and/or "reasonably necessary" for Solo's effective preparation and presentation of issues in the case.  *Cofield v. Crumpler*, 179 F.R.D. 510, 518 (E.D. Va. 1998).   In addition, each of the deposition transcripts was used as an exhibit in the summary judgment filings, so that the transcripts were clearly needed in this case.

The Fourth Circuit has joined the Tenth and Eleventh Circuits in holding that "taxation of the costs of video depositions" is a proper taxable cost for the prevailing party.  *Cherry*, 186 F.3d at 448, citing *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997) ("We see no reason to penalize a prevailing party because the party has chosen to preserve and present testimony through a videotape instead of a printed transcript."); *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996) ("When a party notices a deposition to be recorded by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation . . . it is appropriate under § 1920 to award the cost of

conducting the deposition in the manner noticed."). Section 1920 was also amended in October 2008 to expressly include "electronically recorded transcripts" as a taxable cost.[1]

Once again, it was Plaintiff who noticed and took all but one of the depositions in this case—and it was the Plaintiff who chose to videotape all of his noticed deposition testimony. Accordingly, Pequignot cannot reasonably claim that copies of the videotaped deposition records were not relevant and material to Solo's trial preparation efforts and/or reasonably necessary for Solo's effective preparation and presentation of issues in the case. *See BCD, LLC v. BMW Mfg. Co.*, No. 05-2152, 2008 WL 724061, at *1 (D.S.C. Mar. 17, 2008) (costs for videography at depositions was taxable cost for prevailing party where opposing party noticed the depositions for videographic recording or where opposing party did not object to such designation by prevailing party); *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699 (7th Cir. 2008) (prevailing party entitled to costs of both videotaping and stenographically transcribing the same deposition).

As detailed in attached Exhibit 1, the total cost to Solo for obtaining the hearing and deposition transcripts in this case was $ 15,986.19

### 2. *Pro Hac Vice* Fees

The prevailing party is also entitled to recover the costs of *pro hac vice* admission. *Craftsmen Limousine, Inc. v. Ford Motor Co.*, ___ F.3d ___, 2009 WL 2748365, at *3 (8th Cir. Sept. 1, 2009) (*pro hac vice* fees are recoverable as fees of the clerk under § 1920); *Synergistic Int'l*, 2007 WL 517676, at *2 (holding *pro hac vice* fees are taxable as costs under § 1920 to the prevailing party as "fees of the Clerk"). As detailed in Exhibit 1, Solo expended $250 in *pro hac vice* fees.

---

[1] Solo notes that the guidelines issued by the Eastern District of Virginia's Clerk's Office list costs for the videotaping of a deposition as generally non-taxable. In light of the clear Fourth Circuit holding that videotaping costs for depositions are taxable as costs to the same extent as stenographic transcripts, as well as the recent amendment of Section 1920 to expressly include "electronically recorded transcripts," however, Solo has also included these in its request for taxable costs. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999).

C.    **Summary of Taxable Costs**

In sum, Solo requests the following taxable costs as the prevailing party:  (1) hearing and deposition transcription costs: $15,986.19; *pro hac vice* admission fees: $250.  The total amount requested is therefore $16,236.19.

III.    **BECAUSE THIS CASE IS "EXCEPTIONAL" UNDER 35 U.S.C. § 285, SOLO SHOULD BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND REMAINING COSTS**

As discussed above, the prevailing party is ordinarily awarded certain costs.  In actions brought under the Patent Act, such as this one, the prevailing party may also be awarded its attorneys' fees and remaining costs: 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "The purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case." *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988); *see also Abraskin v. Entrecap Corp.*, 55 F. Supp. 2d 224, 229 (S.D.N.Y. 1999)  ("The only protection that parties in [defendant's] position have against abusive and frivolous litigation—and the only protection this Court has against such suits—is an award of counsel fees to the unjustly accused infringer.").

A prevailing party may demonstrate that a case is "exceptional" and an award of fees appropriate, by showing "misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit."  *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 455 (Fed. Cir. 1985); *see also Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1350 (Fed. Cir. 2004); *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006).   A suit is frivolous when "the [plaintiff] knew or, on reasonable investigation, should have known [it] was baseless."  *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004); *see also Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1242 (Fed. Cir. 1984); *Transclean Corp. v. Bridgewood Servs., Inc.*, 134 F. Supp. 2d 1049, 1054 (D. Minn. 2001).  A court may infer bad faith where the plaintiff is manifestly unreasonable in asserting its claims, regardless of whether the unreasonableness is "grounded in or denominated wrongful intent,

recklessness, or gross negligence." *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003); *see also Nordek Corp. v. Garbe Iron Works, Inc.*, No. 81-7188, 1983 U.S. District LEXIS 17451, at *14 (N.D. Ill. Apr. 25, 1983) ("Case law establishes the principle that reckless prosecution, in the face of an insurmountable defense, can render a case exceptional for purposes of section 285.").

Once a court finds that a case is exceptional, it may consider a number of factors to determine whether an award of fees is warranted, including the "closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987). The Federal Circuit has held that the "attorneys fees" that may be awarded under Section 285 "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit," and properly includes both attorney time and other expenses. *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).

The circumstances of this case, combined with fundamental principles of fairness, compel the conclusion that a fee award to Solo is warranted under Section 285. Indeed, a review of the record reveals that it it would be grossly unjust for Solo to be left to bear the burden of its own attorneys' fees and costs in this exceptional case. *See Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed. Cir. 1984).

A.    **Pequignot's False Marking Claims and Legal Positions Were Frivolous At Best, Vexatious At Worst, Thereby Justifying an Award of Fees and Costs Under § 285**

By his own admission, Pequignot was not injured, or even directly affected, by Solo's asserted false marking in any way. Pequignot filed this action purely in the hope of (a) obtaining a potential litigation windfall from Solo, and (b) jump-starting a new cottage industry of lucrative false marking suits. In order to pursue these self-serving goals, Pequignot advocated

legal positions that he knew to be unsupported by Section 292 and the governing case law. Specifically:

(1)     Pequignot ignored more than a century of case law consistently and clearly establishing that an "offense" under Section 292 is a *decision* to pursue an intentionally deceptive course of conduct involving false marking (not each article marked with an allegedly false mark)—and Pequignot disregarded the fact that, under the governing authority, the maximum possible liability for Solo's alleged false marking was $1500 ($500 for each of Solo's two decisions to follow attorney-recommended phase-out plans as to manufacturing molds engraved with patent numbers that became expired, and $500 for Solo's decision to follow an attorney-recommended plan to include the "may be covered by" language on all Solo product packaging).  In the face of the statutory language of Section 292 and the settled case law, Pequignot had no reasonable legal basis to believe that this action possibly could result in a finding of "billions" of separate offenses, as he urged the Court to find, or could result in an award anywhere near the millions of dollars he demanded from Solo to settle the case prior to summary judgment.  Pequignot simply decided to take a shot at overturning the law and/or extorting a settlement from Solo by pursuing this suit and imposing upon Solo attorneys' fees and costs (not too mention significant business disruption) grossly disproportionate to the maximum possible $1500 recovery.  Not surprisingly, the Court ultimately found on summary judgment that, indeed, the maximum possible Solo liability was for $1500—of course, it cost Solo over $1.2 million in fees and costs to get to the summary judgment ruling.

(2)     Despite the express language of Section 292 and the myriad case law making clear that actionable false marking could only be found if Solo acted with an actual intent to deceive the public, Pequignot brought and pursued this action based on the unsupportable assertions (a) that Solo's actual intent was irrelevant, and (b) that an intent to deceive could/would be established if Solo knew that products were manufactured from patent-engraved molds after the patent expiration date, regardless of Solo's actual reasons for that manufacture (here, a decision to follow an attorney-recommended phase out of the engraved molds).  To

make these assertions, Pequignot ignored the clear directives of the very case he relied upon (*Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005)) establishing that Section 292 is *not* a strict liability statute and that the ultimate "standard is whether [plaintiff] proved by a preponderance of the evidence that [defendant] did not have an honest good faith belief in marking its products." *Id.* at 1355; *see also id.* at 1352 ("We see no reason to interpret the statute differently to render it a statute of strict liability for mismarking.").  Even after the Court made clear in its ruling on Solo's first motion to dismiss that, ultimately, Solo's subjective intent was controlling, Pequignot continued to advocate a strict liability standard and continued to press his case despite uncontroverted evidence uniformly proving that Solo did not act with an intent to deceive. Ultimately, on summary judgment, the Court not only found that Pequignot's asserted standard for proving intent to deceive was wrong (as the Court already had stated in its motion to dismiss ruling), but the Court found that there was not even a scintilla of evidence to establish that Solo had acted with a subjective intent to deceive anyone.  (Ex. 2, Dkt. 207.)

(3)    At the February 22, 2008 oral argument on Solo's first motion to dismiss Pequignot's claims, the Court made very clear that if Solo was acting to phase out its patent-engraved molds in order to spread out costs, there would be no actionable false marking:

> Again, the plaintiff has to be able to prove "for the purpose of deceiving the public."
> You [Solo] did have a legitimate patent and you were using it and you were putting it on the item.  It costs money to put that imprint on your molds.  If in fact there's clear evidence in the record that as the new molds are coming on line you are taking care of this problem then, in fact, I would think that there is just no evidence whatsoever to sustain this.  But we're not at the evidentiary stage yet so I can't dismiss the complaint on that basis.

(Ex. 3, Transcript of Feb. 22, 2008 Hearing at 24-25.)  Despite this clear statement from the Court, Pequignot continued to press his false marking claims—at great expense to Solo—even after Solo produced documents uniformly showing that its engraved molds were being phased out, and even after Solo's engineers, in-house counsel, and outside lawyers uniformly confirmed that Solo was following an attorney-recommended mold phase-out plan.  In fact, Solo was forced

9

to incur $225,861.59 in fees and costs following the close of fact discovery—fees and costs to prepare Solo's successful summary judgment motion, to respond to Pequignot's baseless summary judgment motion, and to prepare for the trial (originally scheduled for July 27, 2009)— even though Pequignot was fully aware of the Court's view that, in light of the evidence of Solo's consistently-followed mold phase-out plan, "there [was] just no evidence whatsoever to sustain" Pequignot's false marking claim.

(4)    Following fact discovery, Solo's counsel sent Pequignot a letter (a) detailing the host of legal and factual realities making Pequignot's false marking claims baseless and inappropriate, and (b) requesting that Pequignot appropriately dismiss his claims. Pequignot refused to dismiss the case and, instead, continued to press his untenable (and factually unsupportable) false marking claims. (Exs. 4-5.)[2]

(5)    After Pequignot learned (very early in the case) that Solo's actions were taken in specific reliance on advice of counsel, Pequignot disingenuously asserted that reliance on attorney advice was not relevant to showing, and could not evidence, Solo's absence of intent to deceive. Pequignot made this assertion with full awareness of myriad cases establishing that advice of counsel was relevant to determining whether Solo acted with deceptive intent.[3] Moreover, and more perniciously, Pequignot made this assertion despite the fact that one of Pequignot's own clients had successfully relied on Pequignot's own mistaken legal advice to disprove allegations of bad faith. *See Boler Co. v. Tuthill Corp.*, No. 2:04-cv-286, 2007 WL 3046450, at *1 (S.D. Ohio Oct. 17, 2007).[4]

---

[2] Pequignot's demands for attorneys' fees and costs under § 285 shows that his attorneys believed that such fees and costs should be awarded to the prevailing party, which in this instance, is Solo.

[3] *See, e.g., Forest Group v. Bon Tool Co.*, No. 05-4127, 2008 WL 2962206 (S.D. Tex. July 29, 2008); *Arcadia Mach. & Tool, Inc. v. Sturm, Ruger & Co.*, 227 U.S.P.Q. 665, 656 (C.D. Cal. 1985).

[4] In *Boler*, Pequignot's client Boler was accused of bringing a patent infringement action in bad faith. The client relied on Pequignot's opinion that the infringement claim was sound—an opinion that proved wrong in litigation— to show good faith. The Court declined to find bad faith, stating, "[A]n opinion of infringement that Tuthill mocks arguably evinces not bad faith but prudent conduct on Boler's behalf. . . . Boler's reliance on the opinion of multiple counsel that infringement existed, although certainly not dispositive of the issue, helps the company avoid a finding of bad faith." 2007 WL 3046450, at *3.

**B.      Pequignot's Litigation Tactics Further Justify An Award of Attorneys Fees and Costs Under § 285**

In addition to Pequignot's unjustified legal positions, his litigation tactics provide additional justification for finding this case "exceptional."   Over the course of this action, Pequignot's litigation tactics showed at best an utter indifference to the high costs his unreasonable actions imposed upon Solo.   When Pequignot's conduct over the course of this litigation is considered, it becomes apparent that Solo was subjected to a great deal of additional costs and fees by these harassing tactics.

(1)      Pequignot, an attorney, brought this suit *pro se*, despite a clear prohibition of *pro se* plaintiffs in *qui tam* litigation that even the smallest amount of pre-suit research would have revealed.  Solo was required to brief this issue in its motion to dismiss before Pequignot obtained counsel.  (Dkt. 34.)

(2)      Pequignot sought to file a Second Amended Complaint adding a state law claim of fraudulent concealment and new allegations of false marking without identifying the accused products.  (Dkt. 29.)  The Court denied Pequignot's request, and found that the state law claim would be frivolous, and that his new vague allegations of false marking were inappropriate.  (Dkt. 40.)

(3)      Pequignot served 652 requests to admit on Solo, and refused to reduce them to a reasonable number, requiring Solo to move the Court to limit Pequignot to fifty requests to admit, which request was granted.  (Dkt. 44.)

(4)      Rather than proceeding through discovery to obtain information regarding Solo's response to inquiries regarding its patents, Pequignot, an attorney, decided to directly contact non-lawyer Solo representatives via telephone during the pendency of this action in an effort to obtain discovery from Solo.  (Ex. 6 at 287:9-289:11.)  Perhaps realizing the potential impropriety of such a direct call, he hung up while waiting for his call to be transferred to the correct department.  (*Id.*)[5]

---

[5] Solo has not fully investigated whether such contact could constitute an ethical violation and will leave it to Mr. Pequignot to make such a determination and self-report, if necessary.

(5)    The parties jointly moved the Court for additional pages in their summary judgment briefs, and the Court denied this motion, limiting the parties' summary judgment briefs to the thirty pages normally permitted by Local Rule 7(F)(3).  (Dkt. 155.)  Pequignot then filed his summary judgment brief and a separate statement of material facts in violation of Local Rule 56(B), and with the effect of using forty-six pages for his summary judgment brief, despite Pequignot's counsel's extensive experience in the Eastern District of Virginia.   Solo was required to engage in motion practice, resulting in the Court striking Pequignot's summary judgment papers and ordering their re-submission in proper form.  (Dkt. 175.)

In sum, Pequignot brought a false marking action against Solo that, under governing law, Pequignot knew (or should have known) could result in a maximum award of $1500.   Yet, although he must have known that the costs to Solo to defend against the false marking claims would be extremely high, Pequignot aggressively pursued this litigation, demanding millions of dollars to drop the case.  Pequignot pressed his $1500 claim even after the Court made clear at the motion to dismiss stage that Pequignot's claims would fail if Solo had, in fact, been following a reasonable manufacturing mold phase-out plan (as Solo verified to Pequignot and the Court from the outset of this case).   Pequignot pressed his $1500 claim even after all the documents and deposition testimony confirmed that Solo unwaveringly followed its reasonable mold phase-out plan—a plan recommended and approved by Solo's outside and in-house lawyers—in a good faith effort to remove expired patent numbers from its products.  Pequignot pressed his $1500 claim even after the documents and deposition testimony showed that Solo placed the accurate "may be covered" language—language drafted by Solo's outside counsel—on all Solo packaging at the express direction of its lawyers and in a good faith effort to comply with its legal marking obligations.   Pequignot pressed his claim that Solo had committed "billions" of offenses even after decisions issued from courts around the country confirming the more-than-100-year-old legal principle that an "offense" under Section 292 is the *decision* to engage in the course of conduct accused of false marking, rather than each article alleged to have been falsely marked, as Pequignot stubbornly suggested.  *See, e.g., Forest Group*, 2008 WL

2962206. Employing tactics designed purely to increase the litigation costs to Solo, Pequignot pressed his claim all the way through his failed summary judgment motion, costing Solo over $1.2 million in the process. "It would be grossly unjust [for Solo to]...be left to bear the burden of [its] own counsel" in this exceptional case. *J.P. Stevens*, 822 F.2d at 1052, citing *Rohm & Haas*, 736 F.2d at 691. Fundamental fairness demands that Pequignot now pay for the costs that Solo was forced to bear to defend against Pequignot's unreasonable claims.

### C.    Solo Is Entitled to All Additional Costs Under § 285

As noted above, Solo is entitled to its costs as the prevailing party in this action for transcripts of court hearings, transcripts and videography of depositions, and *pro hac vice* fees. If the Court finds that this is an exceptional case, Solo is entitled to its additional costs as well as attorney fees. *Cent. Soya*, 723 F.2d at 1578 ("The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit."); *Maxwell v. Angel-Etts of Cal., Inc.*, Nos. 01-1601, 01-1647, 02-1198 & 02-1219, 53 Fed. Appx. 561, 2002 WL 31809442, at *1 (Fed. Cir. Dec. 13, 2002) ("We reverse and remand on the issue of non-taxable costs because our decision in *Central Soya* . . . makes clear that such costs are recoverable."). For example, costs incurred for electronic legal research, attorney travel, photocopying and courier service are all costs that may be awarded to the prevailing party in an exceptional case. *See, e.g., Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1029 (E.D. Va. 1994), citing *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978) ("In determining an award of attorney's fees, '[l]itigation expenses, such as supplemental secretarial costs, copying, telephone costs, and necessary travel, are integrally related to the work of an attorney . . .' and, thus, are compensable."); *Auto. Prods. PLC v. Tilton Eng'g, Inc.*, 855 F. Supp. 1101, 1106-07 (C.D. Cal. 1994) (awarding facsimile expenses, computer legal research charges, telephone charges, Federal Express charges, secretarial overtime charges, trial supply expenses, postage, messenger fees,

hotel and travel expenses, parking expenses, teleconference expenses and mock trial expenses); *Codex Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1201 (D. Mass. 1982).

Here, Solo incurred $74,872.34 in costs[6] that it is entitled to recover from Plaintiff. These costs are delineated by category and amount in the Declaration of Jason White, filed herewith.

### D. Solo is Entitled to All of its Attorneys' Fees Under § 285

If the Court finds this case exceptional, Solo is entitled to recover its reasonable attorneys' fees. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004); *Cent. Soya*, 723 F.2d at 1578. Solo submits that it should be awarded all of the monies spent on attorneys' fees in this case and addresses the "reasonableness" of its fees in Section E, below. In sum, Solo seeks $1,197,173.43 that it has spent on attorneys' fees in this case. These fees are further delineated by attorney and billing rate in the Declaration of Jason White and its attachments.

### E. Solo's Attorneys' Fees are Reasonable

Solo is seeking its attorney fees of $1,197,173.43 which were reasonably incurred during litigation of this matter.[7] In calculating attorneys' fees, a court must first determine the number of reasonable hours expended on the litigation and multiply this number by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). The result of this calculation is referred to as the lodestar amount. *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). The party seeking attorneys' fees carries the burden of "establish[ing] the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).

---

[6] These costs are in addition to those that have been requested by Solo as the prevailing party in Section II of this brief. To the extent that the Court declines to award any of Solo's costs requested in Section II pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d) and Local Rule 54(D), Solo requests that those costs be awarded under 35 U.S.C. § 285 in light of this action's status as an exceptional case. *See Cent. Soya*, 723 F.2d at 1578 (the prevailing party in an exceptional case under Section 285 is entitled to recoup all costs of litigating the suit).

[7] As discussed in Section III.F., Solo alternatively seeks its fees incurred after June 9, 2009, the date that Solo's counsel sent a letter to Pequignot's counsel, pointing out that discovery, then closed, had revealed no evidence of any intent to deceive. (Ex. 4.)

In deciding the reasonableness of hours and rates, courts may be guided by twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in the *Johnson* case).  These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in presenting the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (citing *Barber*, 577 F.2d at 226 n.28).  If the lodestar amount (hours multiplied by hourly rate) is deemed unreasonable, then the court may modify the fee upward or downward, using the *Johnson* factors as a guideline.  *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Where a prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see also Brasseler, USA I, LLP v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001) (disagreeing with the line of reasoning that fees are awarded only for presentation of specific prevailing defense because a defendant "would not have incurred any of the fees generated in defense of this suit had [plaintiff] not committed inequitable conduct in pursuit of its patent and had it not filed a claim of infringement of that patent, known by [plaintiff] to have been improperly obtained.").

*Johnson* factors 1-3, 5, 8-9, and 12 are applicable to the current matter. These factors support Solo's request for reasonable attorneys' fees.

### 1.    Time and Labor Required (*Johnson* Factor #1)

Solo's counsel spent a reasonable amount of time in defending this litigation.  Extensive discovery was conducted in this case:  Plaintiff propounded sixty-eight document requests, thirty interrogatories, and fifty requests to admit to Solo.  (Plaintiff initially served 652 requests to admit on Solo, but when Solo was unable to convince the Plaintiff to reduce this number the Court granted Solo's motion to limit Plaintiff to fifty requests to admit.)  In total, over 18,500 pages of documents were produced in this case.  The parties took nine depositions (one of which, that of Steve Smith, lasted two days in light of his dual role as a fact and Rule 30(b)(6) witness).

Although the case was complicated and hard-fought, Solo did not duplicate efforts among its attorneys.  For example, only one Solo attorney attended each deposition (in contrast to plaintiff, where two attorneys—and in one case three attorneys—attended all but one of the depositions).  Likewise, only one Solo attorney was used to conduct meet-and-confer conferences with Plaintiff.  Similarly, Solo utilized a paralegal to perform tasks that did not require an attorney, such as compiling and formatting exhibits.

In total, Solo's attorneys billed approximately 3494.15 hours from the filing of this action through August 25, 2009, the date the Court entered a written judgment on the parties' motions for summary judgment.

### 2.    The Novelty and Difficulty of the Questions (*Johnson* Factor #2)

Patent litigation usually involves multifaceted cases that consist of highly technical and complex issues.  The case at hand conformed to this norm as it involved rare false marking claims under 35 U.S.C. § 292.  False marking claims typically involve allegations that a party applied patent marking with the knowledge that the marked product was not covered by the product.  In this case, Plaintiff alleged that Solo failed to remove—with sufficient speed—its patent markings from a product manufacturing line after the patents expired.  This Court noted in its Memorandum Opinion granting summary judgment to Solo that prior to that decision, "[n]o court has addressed how the <u>Clontech</u> standard applies to allegations involving only expired

patents.  As such, the question of what suffices to prove intent to deceive under such circumstances is one of first impression."  (Ex. 2, Mem. Op. of Aug. 25, 2009 at 14-15.)  The *Johnson* court noted that "[c]ases of first impression generally require more time and effort on the attorney's part.  Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may 'make new law.'  Instead, he should be appropriately compensated for accepting the challenge."  488 F.2d at 718.

Additionally, Plaintiff created his own novel interpretation of the statutory term "offense" that ignored established case law on this issue.  Plaintiff alleged that each use of an individual Solo lid was a separate offense that in and of itself gave rise to a fine of up to $500.  Based on this premise, Plaintiff alleged the occurrence of "tens of billions" of offenses, and therefore sought billions of dollars in damages.  As noted by the Court, however, "[n]early all the courts that have addressed this issue have followed *London [v. Everett H. Dunbar Corp*., 179 F. 506, 508 (1st Cir. 1910),]* either explicitly or implicitly.  Conversely, Pequignot has cited only one case after 1885 in which a court—without citing any authority or engaging in any legal analysis—imposed a fine for each falsely marked item."  (Ex. 2, Mem. Op. of Aug. 25, 2009 at 24-25.)  Despite this precedent, however, Pequignot created a novel legal argument for the definition of "offense," supported by arguments on public policy and analogies to other areas of the law, which Solo had to refute and distinguish.

### 3.    Skill Requisite to Properly Perform the Legal Service (*Johnson* Factor #3)

As previously stated, patent cases often involve technical issues intertwined with complex litigation.  This case required both a knowledge of civil litigation and patent litigation, and the attorneys at both Howrey LLP ("Howrey") and Troutman Sanders LLP ("Troutman"), which acted as local counsel, were professionals possessing the high qualifications and extensive experience to provide counsel and strategy to Solo throughout this matter.  The attorneys' qualifications and experience are discussed in the declaration of Jason White, filed herewith.

#### 4.    Customary Fees (*Johnson* Factor #5)

The fees charged to defend this litigation were standard in comparison to the costs of similar patent suits.  The hourly billing rates of Brinks, Howrey and Troutman were reasonable for a patent litigation case and lower than rates charged by comparable area firms, as shown in the following charts:

#### Howrey LLP- Chicago v. Chicago Law Firms*

*\*PricewaterhouseCoopers Legal Industry Survey, Chicago Practice Report: Mega Firms, Principal and Non-Principal Office, 2009 Billing Rates and Salary Survey.*

**Standard Partner Rates**

|                 | 1st Quartile | Median | 3rd Quartile |
|-----------------|--------------|--------|--------------|
| Equity Partners | $695         | $604   | $554         |
| Non Equity      | $557         | $513   | $430         |
| All Partners    | $657         | $579   | $529         |

**Standard Associate Rates**

| Graduation/Start Date | 1st Quartile | Median | 3rd Quartile |
|-----------------------|--------------|--------|--------------|
| 2008                  | $314         | $285   | $272         |
| 2007                  | $338         | $306   | $282         |
| 2006                  | $385         | $328   | $296         |
| 2005                  | $395         | $352   | $310         |
| 2004                  | $445         | $383   | $337         |
| 2003                  | $460         | $392   | $351         |
| 2002                  | $493         | $434   | $378         |
| 2001                  | $525         | $463   | $428         |
| Prior                 | $551         | $478   | $427         |

The Brinks equity partners working on this matter included Jason White and James Sobieraj.  Jason White had billing rates of $469/$470 for this matter while at Brinks, while James Sobieraj's billing rate was $560/$565.  Both partners' rates are below the standard hourly billing rate of equity partners in other Chicago firms.  Associate Trevor Copeland's billing rate was $335, well below the $395 standard billing rate of other associates in his class.  Associates Karl Horlander ($185), Laura Lydigsen ($280), and Abhishek Rastogi ($280) also have standard rates below that charged by Chicago's 1st Quartile.  In addition to the previously named attorneys, the

following attorneys provided occasional assistance to the principals during Brinks' involvement in this litigation matter: Joseph Hetz (Partner, billing rate $470), Tom Williams (Partner, billing rate $470, currently practicing at Howrey), and Hermine Valizadeh (Associate, billing rate $260). Both Mr. Hetz and Mr. Williams were consulted on discrete issues of this case where they have individual expertise, such as false marking activity.

The Howrey equity partners working on this matter included Jason White and Robert Unikel. Jason White had billing rates of $445 pre-August 1, 2008 and $500 after August 1, 2008, while Robert Unikel's billing rate was $560. Both partners' rates are below the standard hourly billing rate of equity partners in other Chicago firms. Senior Associate Deanna Keysor's billing rate was $490, which is well below the $ 551 standard associate rate charged by Chicago-based law firms for Chicago associates in starting classes prior to 2001. Associates Scott Sherwin ($290-320) and Michelle Marek ($290) have standard rates below that charged by Chicago's 1st Quartile.

The rates charged by Howrey and Troutman Sanders attorneys are also comparable to those rates charged by Washington D.C. based law firms.

**Howrey LLP and Troutman Sanders LLP v. Washington D.C. firms***
*Pricewaterhouse Coopers 2009 Billing Rate & Associate Salary Survey Initial Release (June 2009)*

**Standard Partner Rates**

|  | 1st Quartile | Median | 3rd Quartile |
|---|---|---|---|
| Equity Partners | $701 | $656 | $564 |
| Non Equity Partners | $592 | $552 | $502 |

**Standard Associate Rates**

|  | 1st Quartile | Median | 3rd Quartile |
|---|---|---|---|
| 2008 | $310 | $290 | $278 |
| 2007 | $355 | $315 | $290 |
| 2006 | $391 | $342 | $309 |
| 2005 | $431 | $378 | $328 |
| 2004 | $463 | $405 | $356 |
| 2003 | $495 | $436 | $385 |

| 2002  | $520 | $455 | $ 390 |
| 2001  | $523 | $480 | $400  |
| Prior | $541 | $496 | $454  |

The main Troutman partner working on the Solo case was Mary Zinsner, who had a billing rate of $400 for 2008 and $430 for 2009. These billing rates are significantly lower than the effective partner rate of $582 for the Washington D.C. area for law firms within the 1st Quartile. In addition, partners in Howrey's Washington, D.C. office working on the Solo case[8] were billed at the following rates: James Hibey: $700; Evan Werbel: $590; Alan Grimaldi: $775; Jerrold Ganzfried: $700; Marc Schildkraut: $750.

In addition, the attorneys' fees charged to Solo for the attorneys at both Brinks and Howrey were discounted 10%.

The attorneys' rates and time spent on various tasks involved in the litigation of this matter are detailed in the Declaration of Jason White, filed herewith, and its attachments. Solo understands that the invoices describing its attorneys' work in this matter are required to be submitted in order to permit the Court and opposing counsel to assess the reasonableness of the rates and fees that Solo has requested. These documents should be treated as "Confidential" under the protective order issued in this case, and Solo does not waive its privilege in these documents by their submission herein.

### 5.    Amount Involved and the Results Obtained (*Johnson Factor #8*)

The Plaintiff sought billions of dollars in damages from Solo. The threat of such an enormous award of damages justified the amount of effort expended in defending this action.

Solo prevailed on both central issues of this action on summary judgment: (1) the standard of proof required to show an intent to deceive the public, and (2) the definition of an "offense" under 35 U.S.C. § 292. All of Plaintiff's claims were therefore decided in Solo's favor

---

[8] Each of these partners from Howrey's Washington, D.C. office billed a very small amount to this case, as they were consulted on discrete issues of this case where they have expertise, *i.e.*, constitutional law, FTC authority over false marking-type activity, *qui tam* issues.

on summary judgment. More particularly, the Court granted Solo summary judgment that it was not liable for false marking because there was no evidence that Solo acted with an intent to deceive the public, rather than in good faith reliance on its attorneys' advice. (Ex. 2, Mem. Op. Aug. 25, 2009 at 16-22.) The Court also granted Solo summary judgment that an "offense" is a "distinct decision by a defendant to falsely mark," so that "even if Solo were found to have acted with an intent to deceive, it would be liable for at most three offenses of false marking." (*Id.* at 29.)

The *Johnson* court noted that in evaluating the results obtained by the prevailing party's attorneys, the decision's effect on the law should be considered as well as its effect on the individual prevailing litigant. 488 F.2d at 718. Here, as described above, Solo prevailed on all claims brought against it by Plaintiff. In addition, this Court's summary judgment decision will have an extensive affect on other false marking litigants in other cases. This Court's decision was the first to address the issue of the standard of proof required to show an intent to deceive the public where the alleged false markings are of expired patent numbers that once covered the product. (Ex. 2, Mem. Op. Aug. 25, 2009 at 14-15.) This action has therefore set the groundwork for future false marking cases concerning expired patents. In addition, the Court noted in its Memorandum Opinion that its ruling on the definition of "offense" "could significantly effect the incentives for qui tam actions such as this one." (*Id.* at 22.) This action has therefore not only resulted in a vindication of Solo's position in this suit, but has also affected similarly-situated litigants in other false marking cases.

### 6.    Experience, Reputation and Ability of Attorneys (*Johnson* Factor #9)

The attorneys and paralegals who represented Solo have numerous years of civil and patent litigation experience and a great understanding of the complexity of litigation. This experience is discussed in the Declaration of Jason White, filed with this motion.

7.    **Awards in Similar Cases (*Johnson* Factor #12)**

Various district courts have awarded attorneys' fees and costs in recent patent litigation cases. *Leviton Mfg. Co. v. Shanghai Meihao Elec., Inc.*, 613 F. Supp. 2d 670 (D. Md. 2009) (awarding costs of $84,080.02 and reasonable attorneys' fees in the amount of $726,579.15); *Microstrategy Inc. v. Crystal Decisions, Inc.*, 586 F. Supp. 2d 256 (D. Del. 2008) (awarding attorneys' fees and costs in the amount of $2,245,263.87); *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437 (E.D. Va. 2007) (awarding $2,733,253.20 in attorneys' fees and $474,172.07 in non-taxable costs).

In sum, an examination of the applicable *Johnson* factors supports an award of Solo's requested fees and costs. Pequignot's aggressive legal positions and tactics, the novelty of the issues and arguments made in this case, and the immense sum demanded by Pequignot in fines justifies the fees and costs spent by Solo to defend itself.

F.    **At a Minimum, Pequignot's Pursuit of the Case After Discovery Made Clear There Was No Evidence of an Intent to Deceive Was Unjustified and Frivolous, Thereby Warranting an Award of Fees and Costs From That Date Forward.**

As discussed above, Solo believes that Pequignot acted unreasonably throughout this litigation, and that Solo should therefore recover all its fees and costs incurred in defending this action. If the Court determines that Solo is not entitled to all its fees and costs, however, then Solo requests, in the alternative, that it be awarded its fees and costs incurred from June 10, 2009 through the judgment in this action. Once discovery had been taken, it was clear that there was absolutely no evidence that Solo acted with an intent to deceive the public; in fact, the evidence uniformly demonstrated that Solo acted solely with the intent to follow its outside counsels' advice on the proper way to replace molds with the expired patent numbers engraved into them.

During the February 22, 2008 hearing on Solo's first motion to dismiss, this Court made clear that simply having an expired patent number marked on a product was not itself sufficient to prevail in a false marking case, and that if the evidence showed that Solo was replacing old

molds with new ones without the patent number engraving as new molds came online, there

would be no false marking:

> THE COURT:  Again, the plaintiff has to be able to prove "for the
> purpose of deceiving the public."  You did have a legitimate patent and
> you were using it and you were putting it on the item.  It costs money to
> put that imprint on your molds.  If in fact there's clear evidence in the
> record that as the new molds are coming online you are taking care of this
> problem, then, in fact, I would think there would be just no evidence
> whatsoever to sustain this.  But we're not at the evidentiary stage yet so I
> can't dismiss the complaint on that basis.  . . .
>
> At the same time what I'm saying to the plaintiff is I think you have a
> very, very weak case and I think you ought to think very carefully.  It's a
> very creative lawsuit and I know you have one against Gillette for razor
> blades.  But it's not a slam-dunk.  It's not simply a matter of, "Oh, there's
> an expired patent on this item and therefore there's a violation of the
> statute."  It's not there.  The finding would have to be far more nuanced
> that that.  There would have to be evidence of intent to deceive and that's
> a hard burden on a plaintiff because there is a penal nature to this statute.

(Ex. 3, Transcript of Feb. 22, 2009 at 24-26.)

Sure enough, discovery showed that Solo had followed its attorneys' advice and replaced

molds as they became worn or damaged with new molds without the patent number engravings.

From at least the close of discovery, therefore, Pequignot had to have known that this action was

frivolous, but rather than dismissing it, he forced Solo to incur the substantial costs of moving for

summary judgment and defending against Pequignot's own motion for summary judgment.  In a

letter to Pequignot's counsel on June 9, Solo specifically drew Pequignot's attention to the lack

of any evidence of intent and its inability to prove false marking without such evidence.  (Ex. 4.)

Pequignot, however, persisted in his hopeless claims despite this Court's explicit statement that

there could be no false marking liability without evidence that Solo acted with an intent to

deceive the public.

Pequignot's insistence on pursing his additional argument that an "offense" under Section 292 is committed for each article (i.e., each plastic lid with the expired patent number is a separate offense for which up to $500 in fines could be imposed), even in the face of a century of precedent showing that each marked article is *not* an offense was also rendered even more frivolous following discovery, which showed that Solo made at most three decisions to mark its products with the accused markings.

At a minimum, therefore, Solo believes that it should be entitled to the attorneys' fees and additional costs (those costs in addition to those Solo is entitled to as the prevailing party) it was forced to incur after June 9, 2009, when discovery had made the lack of merit in Pequignot's claims unavoidably clear. These amounts are $205,555 in attorneys' fees after June 9, 2009, and $20,306.59 in costs for the same period.

## IV.    CONCLUSION

As the prevailing party, Solo should be awarded its taxable costs of $16,236.19. In addition, Pequignot's litigation positions and tactics make this an exceptional case for which Solo should be awarded all its attorneys' fees and remaining costs, in total $1,272,045.77. At a minimum, Pequignot's pursuit of this case even after it became evident that he could not prevail renders this case exceptional from the time discovery closed, so that if the Court decided not to award Solo all of its fees and costs, Solo should receive its attorneys' fees and additional costs incurred from that point forward, totaling $225,861.59.

Dated: September 8, 2009                    Respectfully submitted,

                    _____/s/ Mohsin Reza_____
                    Mary C. Zinsner (VSB No. 31397)
                    S. Mohsin Reza (VSB No. 75347)
                    Attorneys for Defendant Solo Cup Company
                    TROUTMAN SANDERS LLP
                    1660 International Drive, Suite 600

McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com

Jason C. White (admitted *pro hac vice*)
Robert Unikel (admitted *pro hac vice*)
HOWREY LLP
321 North Clark Street, Suite 3400
Chicago, IL  60654
whitej@howrey.com
unikelr@howrey.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2009, I will electronically file the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ellen D. Marcus, Esquire
Zuckerman Spaeder LLP
1800 M Street, N.W.
Washington, D.C.  20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
Email: emarcus@zuckerman.com

Mia K. Poston, Esquire
Pequignot + Myers, LLC
1636 R Street, NW
Third Floor
Washington, D.C.  20009
Telephone: (202) 328-1200
Facsimile: (202) 328-2219
Email: mposton@pmiplaw.com

*Counsel for Plaintiff*

Steven E. Gordon
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, VA  22314
Telephone: (703) 299-3700
Email: steve.gordon@usdoj.gov

*Counsel for United States of America*

          /s/ Mohsin Reza
Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
Attorneys for Defendant Solo Cup Company
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, VA 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com