1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
MATTHEW A. PEQUIGNOT,         .    Civil Action No. 1:07cv897
                              .
          Plaintiff,          .
                              .
     vs.                      .    Alexandria, Virginia
                              .    September 29, 2009
SOLO CUP COMPANY,             .    10:30 a.m.
                              .
          Defendant.          .
                              .
. . . . . . . . . . . .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:           CARL S. KRAVITZ, ESQ.
                             ELLEN D. MARCUS, ESQ.
                             JANE M. RICCI, ESQ.
                             Zuckerman Spaeder LLP
                             1800 M Street, N.W., Suite 1000
                             Washington, D.C. 20036


FOR THE DEFENDANT:           MARY C. ZINSNER, ESQ.
                             Troutman Sanders LLP
                             1660 International Drive, Suite 600
                             McLean, VA 22102


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595


(Pages 1 - 13)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  Civil Action 07-897, Matthew Pequignot v.
 3   Solo Cup Company.  Would counsel please note their appearances for
 4   the record.
 5           MS. MARCUS:  Good morning, Your Honor.  Ellen Marcus for
 6   the plaintiff, Matthew Pequignot.  I'm accompanied by my
 7   colleagues, Carl Kravitz, Jane Ricci.  Mr. Kravitz will be
 8   answering any of your questions today about the request for fees
 9   under section 285, and Ms. Ricci is prepared to answer any
10   questions about their request for taxable costs.
11           THE COURT:  All right.
12           MS. ZINSNER:  Good morning, Your Honor.  Mary Zinsner
13   for Solo Cup Company.
14           THE COURT:  All right, this matter comes before the
15   Court on Solo Cup's motion to have this declared an exceptional
16   case and for attorneys' fees and costs.  I've carefully reviewed
17   the pleadings submitted by both sides, and I don't really think I
18   need to hear any argument because you've both briefed this quite
19   well and quite extensively.
20           Ms. Zinsner, this is truly an exceptional case but not
21   for the reasons you've argued, nor is it exceptional in the sense
22   that it wasn't -- that will support the award of attorneys' fees.
23   The Federal Circuit clearly has a very strict standard that the
24   Court must use in evaluating whether or not attorneys' fees are to
25   be imposed.  Patent cases are not like Title VII cases, where it
```

1   is simply the prevailing party who is able to obtain attorneys'
2   fees.
3           In this case, there is no question that Solo Cup
4   ultimately was the prevailing party, but as both of you -- as
5   you-all know, there were three rounds of litigation.  The first
6   two motions to dismiss filed by Solo Cup were not -- Solo Cup did
7   not prevail.  Now, the case is on appeal, and ultimately, the
8   Federal Circuit may reverse this Court's findings.
9           The -- there is no question that we were in areas of
10  untested territory.  The plaintiff's litigation I cannot say would
11  fit the standard for it being either frivolous or vexatious, which
12  are really the standards under *Standard Oil v. American Cyanamid*
13  that the Federal Circuit is looking at.  The case was original.
14  It was unique.  It was testing.  The scope and breadth of the
15  false marking statute, it was a case of first impression in many
16  respects, and this Court spent an awful lot of time publishing
17  three opinions in this case, and that kind of a background clearly
18  shows that the case could not be called either frivolous or
19  vexatious.
20          It was unique.  It was daring.  Ultimately, it was not
21  successful, but that doesn't make it qualified as an exceptional
22  case for purposes of awarding attorneys' fees.
23          Now, I agree with you that this Court sent strong
24  signals actually from the beginning of the case that the ultimate
25  issue, in our view, would be a fact-based issue as to whether

1   there was sufficient evidence of intent to deceive the public.
2           The *Clontech* case, which is a Federal Circuit case, is a
3   legitimate case which the plaintiff could look to for supporting
4   its view that there was sufficient evidence of intentionality to
5   let the case go forward, and so for those reasons, I am denying
6   the defendant's motion to have the case declared an exceptional
7   case, and therefore, that means I'm denying the request for
8   attorneys' fees, and that moves us on to the issue of costs under
9   section 1920.
10          Now, with that request, as I understand it, the
11  defendant is seeking a total of $16,236.19.  Now, this issue
12  concerns me both -- because of the way in which both sides have
13  addressed that situation.
14          I'd like to know first of all, Ms. Zinsner, why in the
15  world your client felt it was necessary or even reasonable to take
16  Mr. Pequignot's deposition since the whole case -- the first two
17  elements of the case were purely legal, and he has -- because we
18  all know he has no specific axe to grind in this litigation.  It
19  was a qui tam, so what possible relevance could a deposition of a
20  qui tam relator type of plaintiff have to the case?
21          MS. ZINSNER:  Your Honor, he was on plaintiff's rule
22  26(a)(1) disclosures.  He was a witness we felt obligated to
23  depose in the case just to ascertain what he might potentially
24  testify to at trial.
25          THE COURT:  What could he possibly have testified to?

1           MS. ZINSNER:  Well, Your Honor, it also went to the
2   issue of -- some of the issues that are at the heart of today's
3   hearing, just the motivation for filing suit, the lack of any
4   injury, the lack of any compelling reason for filing this suit
5   other than to reap a huge profit at Solo Cup's expense.
6           THE COURT:  Well, the problem is, I mean, I can't even
7   find that a truly rational explanation for why -- and it was
8   multiple hours, unless I've misread invoice.  We're not talking
9   about a half-an-hour session -- What is your name?  You're the
10  plaintiff in this suit.  Have you ever purchased one of these
11  products? -- you know, a few simple questions, which I still don't
12  think could possibly be relevant to this type of a case.
13          I mean, he's not the inventor.  You know, in a patent
14  case, you usually do depose the plaintiffs or the inventors or the
15  people who represent the patent, but he's a relator.  I've never
16  heard of a relator having any kind of relevant information, and so
17  to the extent that -- even if the plaintiffs listed him on their
18  list of witnesses, which would also have been similarly
19  unreasonable, common sense, it seems to me, would have dictated
20  that that deposition was not necessary, so I don't find any proper
21  basis to award anything in connection with the Pequignot
22  deposition.  It was unnecessary, unreasonably long, and that's it.
23          Now, on the other depositions, I think the plaintiff's
24  argument that the hourly rate for the court reporter for
25  depositions should be what the court rate is is also totally

1  unreasonable.  The private sector dictates what the hourly rate,
2  the proper hourly rate is for court reporters, and as I understand
3  it from the defendant's papers, you-all chose the reporting
4  services; is that correct?
5              MS. RICCI:  It's correct, Your Honor, that we chose the
6  reporting services.  However, the bills that Solo Cup submitted
7  include both the expedited rates and the standard rates, and I
8  talked to Esquire, and their standard rate per page for deposition
9  is actually less than the court reporter rate here at least for
10 two of the depositions which I spoke to them about.  One of them
11 was 3.40 a page, and one of them was 3.55 a page, and the rest of
12 the costs were sort of ancillary costs:  word indexes, etc.  So I
13 think we're in roughly the same ballpark either way.
14             THE COURT:  All right.  Now, had you-all ordered video?
15             MS. RICCI:  We ordered video, yes.
16             THE COURT:  All right.  So there was one video of the
17 deponent, of each of these deponents?  I mean, you-all had one.
18             MS. RICCI:  Right.  We ordered a videographer and had
19 the videotape made of the depositions that we took.  However, as I
20 understand it from the bills that Solo submitted -- again, it's
21 difficult because they didn't provide the detailed invoices -- I
22 think that the costs there are really just the transcript costs.
23 I know in one case they have a $50 fee for the videotape, which, I
24 mean, we think is not necessary, but that's broken out for one of
25 them.

1            THE COURT: Ms. Zinsner, I certainly feel that it's
2   appropriate for your client to recoup the costs of the deposition
3   transcripts, but I do not award in fee -- in cost petitions
4   extraordinary costs associated with depositions unless there was a
5   truly emergency situation, and that means in other words expedited
6   transcripts, I normally do not award those costs, indexing, ASCII
7   format, all of those sort of extra add-ons are not something that
8   I normally award. I don't think in this case there was any need
9   for any of that.
10           Again, if one looks at the complexity of this case, it
11  was legally complex. Factually, it simply wasn't that complex as
12  federal litigation goes, and I don't see anything in this record
13  that would support those extraordinary costs.
14           Do you want to respond to that?
15           MS. ZINSNER: Well, I just wanted to remind the Court we
16  were under some intense time pressures. Again, there had been
17  this lengthy stay of the case, and then discovery recommenced, and
18  what really happened in reality, Your Honor, is there was a period
19  of about two weeks when all of these depositions were being taken,
20  and thereafter the next week was the close of discovery and then
21  summary judgment briefs due almost immediately thereafter, so we
22  did need the expedited transcripts, because we knew we had to move
23  for summary judgment. They were intending to file summary
24  judgment. We had to put, you know, compile all of that
25  evidentiary record from the depositions for use in our summary

1  judgment.
2         I understand the Court's position.  I'm not here to
3  quibble with Your Honor, but I just wanted to offer the rationale
4  for why, why we felt it necessary to order those expedited.
5         THE COURT:  I understand that, I mean, obviously,
6  diligent counsel want to do the best for their client, and
7  sometimes, you know, you encounter those concerns, but in terms of
8  a proper approach to how costs should be awarded, I'm going to
9  follow my normal practice in this respect.
10        Now, therefore, what I'm going to ask you to do,
11 Ms. Zinsner, is to prepare a new request for costs.  You're going
12 to need to break down the deposition costs so that they adequately
13 reflect what we've ruled on here in court today and resubmit that.
14 If the defendant -- plaintiff still has an objection, then let us
15 know, but I think once the new number is submitted, there
16 shouldn't be a problem.
17        The last category that the plaintiff disputes are the
18 pro hac fees.  I think it's only $150.  I think it was three we're
19 talking about, but it's an interesting issue.  I'm going to have
20 it coming up in another case down the road.
21        I'm not so sure that the losing side should have to pay
22 the costs for pro hac fees if the attorneys never appear in court.
23 I'm not even sure why one files a pro hac request if the attorney
24 isn't going to be appearing in court, because they can certainly
25 sit in the courtroom and hear everything that's going on, and they

1  can consult with you in your offices, but why, why so many pro
2  hacs?
3           MS. ZINSNER:  Your Honor, I think it's typical in most
4  litigation, there are pro hacs that are filed early in the case.
5  I don't recall us filing many pro hac vice applications later in
6  the case.  We knew who our trial team was going to be, but in the
7  initiation of the case, you don't have that foresight, and out of
8  an abundance of caution, there's just a propensity to file the pro
9  hacs for those attorneys who might be making an appearance in the
10 case.
11          Doug Eveleigh, for example, was very, very active in
12 this litigation, and it's not unforeseeable to me that he would
13 have come and argued a motion.
14          THE COURT:  All right.  Well, it's only $150, I think,
15 and so I'm going to go ahead and give you the benefit of doubt on
16 that and let you claim those.
17          So I'm granting in part and denying in part your request
18 for costs, all right?  So I'd like you to resubmit a clean version
19 taking into consideration what I've indicated today.
20          And I believe that takes care of everything, does it
21 not?
22          MS. MARCUS:  Yes, Your Honor.
23          THE COURT:  Yes?  All right.
24          Ms. Zinsner, while you're here at the courthouse, you
25 might want to stop upstairs.  Didn't you clerk for Judge Hilton?

1          MS. ZINSNER:  I did.

2          THE COURT:  Yeah.  I think Jennifer would love to chat
3    with you, all right?

4          MS. ZINSNER:  All right.

5          THE COURT:  All right, anything further?  Yes.

6          MS. MARCUS:  Your Honor, we do have one issue.

7          THE COURT:  Yes, ma'am.

8          MS. RICCI:  I think the only remaining issue was the
9    court transcripts, not the deposition transcripts.  Solo had
10   ordered court transcripts for each of the hearings in the case.
11   Those were also done on an expedited basis, though I think that's
12   covered by what Your Honor has already said, but they also
13   requested the transcripts of the motion to compel hearings, and I
14   don't --

15         THE COURT:  The motion?

16         MS. RICCI:  The motion -- there were several motions to
17   compel heard in this case before Judge Buchanan, and Solo
18   requested the hearing transcripts for those hearings, and I don't
19   think that those were particularly relevant or necessary for the
20   litigation of this case.

21         THE COURT:  Ms. Zinsner?

22         MS. ZINSNER:  Your Honor, they were utilized in the
23   litigation.  We relied on them in briefing.  For example, there
24   were several times when Judge Buchanan herself characterized this
25   litigation as novel and creative, and I believe we cited those in

1  our briefing.
2          Again, Your Honor, it's not untypical to order
3  transcripts of a motion to compel hearing.  There were multiple
4  issues that required follow-up by Solo Cup's activities with
5  respect to the litigation tasks that Judge Buchanan ordered us to
6  complete, and it was not unreasonable to order those transcripts
7  so that we could fully comply with our discovery obligations.
8          THE COURT:  I don't think that's unreasonable, but if
9  you got them expedited, then the extra fee for that would not --
10         MS. ZINSNER:  I don't believe we did for any of them,
11 Your Honor.
12         THE COURT:  All right.  So the ruling of the Court is
13 that you can get your fees for the -- other than the deposition of
14 Mr. Pequignot, you can get your fees for the transcripts you've
15 listed but not for any of the add-ons, including expediting.
16         MS. ZINSNER:  Your Honor, one caveat.
17         THE COURT:  Yes.
18         MS. ZINSNER:  On the date Your Honor granted us summary
19 judgment, we requested the ruling portion, and I believe we
20 received it that day from your court reporter, but again, it was
21 important for us and our shareholders to be able to go out and
22 tell the world that there had been a ruling in the case, and we
23 needed that transcript just as verification for --
24         THE COURT:  Well, that may be the case, but, you see, I
25 don't believe you get costs for public relations purposes.  It has

1  to be related to the litigation.  The litigation is over at that
2  point once I've ruled, and, of course, there was actually a much
3  more in depth opinion that --
4           MS. ZINSNER:  But I think it was only like $59, Your
5  Honor.  It's not a huge, excessive expense, particularly in light
6  of the $1.2 million of fees we've incurred as well as the
7  excessive costs.
8           So I think we're really quibbling over trivial matters,
9  and given that Solo Cup is the prevailing party and we're entitled
10 to costs, you know, this debate doesn't seem very fruitful, and
11 I'd encourage the Court to give us the full costs in line with the
12 parameters the Court has set today.
13          THE COURT:  You know, I don't want to do that because it
14 could be considered, although I wouldn't find it to be
15 precedental, but, I mean, we might then have other parties coming
16 in and wanting similar types of transcripts which are just not
17 related to litigation.  That's what you get the costs for.  So I'm
18 going to deny that, all right?
19          MS. ZINSNER:  Thank you.
20          THE COURT:  Anything further?
21                  (No response.)
22          THE COURT:  If not, we'll recess court until 11:00.
23 Thank you.
24                          (Which were all the proceedings
25                            had at this time.)

```
                                                                    13

 1                     CERTIFICATE OF THE REPORTER
 2       I certify that the foregoing is a correct transcript of the
 3  record of proceedings in the above-entitled matter.
 4
 5
 6                                         /s/
                                     Anneliese J. Thomson
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```