**CLERK'S OFFICE COPY**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### NOTICE OF ENTRY OF
### JUDGMENT ACCOMPANIED BY OPINION



### OPINION FILED AND JUDGMENT ENTERED: 06/10/10

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and petitions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the Appellant(s) under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.

JAN HORBALY
Clerk

cc:    Carl S. Kravitz
       Jason C. White

PEQUIGNOT V SOLO CUP, 2009-1547
DCT - ED/VA, 07-CV-0897

# United States Court of Appeals for the Federal Circuit

---

**MATTHEW A. PEQUIGNOT,**
*Plaintiff-Appellant,*

v.

**SOLO CUP COMPANY,**
*Defendant-Appellee.*

---

2009-1547

---

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 07-CV-0897, Judge Leonie M. Brinkema.

---

Decided: June 10, 2010

---

CARL S. KRAVITZ, Zuckerman Spaeder LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were ELLEN D. MARCUS and JANE M. RICCI.

WILLIAM K. WEST, JR., Howrey LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were PAMELA S. KANE; JASON C. WHITE, ROBERT UNIKEL and DEANNA L. KEYSOR, of Chicago, Illinois.

---

Before RADER, *Chief Judge*,* and LOURIE and GAJARSA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Matthew A. Pequignot appeals from the decision of the United States District Court for the Eastern District of Virginia granting summary judgment of no liability for false marking. *Pequignot v. Solo Cup Co.*, 646 F. Supp. 2d 790, 795–800 (E.D. Va. 2009) ("*SJ Op.*"). Pequignot also appeals from the court's determination of what constitutes an "offense" for the purpose of assessing the statutory fine. *Id.* at 801–804. Because Pequignot cannot show that Solo Cup Company ("Solo") had the requisite intent to falsely mark its products, we affirm the court's judgment of no liability. We therefore vacate the court's determination of the meaning of the word "offense" as moot.

## BACKGROUND

Solo manufactures disposable cups, bowls, plates, and utensils. Solo owned U.S. Patent Re. 28,797 (the "'797 patent"), which covered a plastic cold drink cup lid and issued on May 4, 1976. Solo also owned U.S. Patent 4,589,569 (the "'569 patent"), which covered a plastic hot drink cup lid and issued on May 20, 1986. Shortly after each of the '797 and '569 patents issued, Solo began marking the covered products with their respective patent numbers. Under 35 U.S.C. § 287, the "marking" statute,

> Patentees . . . may give notice to the public that [an article] is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be

---

\* Randall R. Rader assumed the position of Chief Judge on June 1, 2010.

done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.  In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement . . . .

35 U.S.C. § 287(a).

Solo produces the cup lids using thermoforming stamping machines that contain "mold cavities," and, after the patents issued, Solo added the patent numbers to its mold cavities.  Every time a machine cycles, generally every four to six seconds, each mold cavity produces a lid.  Thus, each lid has a patent number stamped on it.  The molds can last 15 to 20 years, and sometimes longer.  *See SJ Op.*, 646 F. Supp. 2d at 792, 794.

The "false marking" statute, 35 U.S.C. § 292, provides:

(a) . . .

Whoever marks upon . . . in connection with any *unpatented article*, the word "patent" or any word or number importing that the same is patented, *for the purpose of deceiving the public*;

. . .

Shall be fined not more than $ 500 for *every such offense*.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292 (emphases added).

The '797 patent expired on June 8, 1988.  In June 2000, Solo became aware that it was marking its products

with an expired patent number. Solo's director of product development, Steven Smith, asked Solo's outside intellectual property counsel about the '797 patent marking. After some discussion, counsel told Smith that "When a patent expires you don't have to take the old number off. However, I'm going to do a little research to see if the situation is different when adding an *already* expired number to a product. My gut feel [sic] is that as long as the patent claims would have covered the product, there isn't a problem." *SJ Op.*, 646 F. Supp. 2d at 793 (quotation marks omitted) (alterations in original). He later added, "The false marking of a product with a patent number does create liability for the offender. However, it appears liability hinges on 'intent to deceive the public.' Best case scenario is to remove the number, if possible. If not, it is important that Solo not further any unintentional falsity in product literature or the like. If you want to discuss, please give me a call." *Id.* (outside quotation marks omitted).

Shortly thereafter, based on outside counsel's advice, Solo developed a policy under which, when mold cavities needed to be replaced due to wear or damage, the new molds would not include the expired patent marking. According to deposition testimony, Solo indicated to its attorneys that a wholesale replacement of the mold cavities would be costly and burdensome, and Solo's attorneys concluded that Solo's policy was permissible under § 292. Because the molds can last many years, Solo continued to use molds that imprinted the expired patent numbers, at least until the date of the district court's decision. *Id.*

The '569 patent expired on October 24, 2003. Solo then adopted the same policy for the markings of the expired '569 patent number as it had for the markings of the expired '797 patent number. *Id.* at 794.

In 2004, Solo's outside counsel advised Solo to include on its packaging the following language: "This product may be covered by one or more U.S. or foreign pending or issued patents. For details, contact www.solocup.com." The outside attorneys gave that advice because they were concerned that Solo was not giving adequate notice to potential infringers pursuant to the marking statute. *SJ Op.*, 646 F. Supp. 2d at 792, 794–95.

Based on its attorneys' advice, Solo placed the "may be covered" language on certain packaging, used both for contents that were patented and not patented. *SJ Op.*, 646 F. Supp. 2d at 795 & n.8. Solo's attorney testified that she believed the language was not a false marking, even if placed on packaging for unpatented products. *Id.* During the pendency of this case, Solo removed the language because Solo was reaping no benefits from it and did not want to subject itself to further lawsuits. *Id.*

In September 2007, Pequignot, a licensed patent attorney, brought a *qui tam* action under 35 U.S.C. § 292 alleging that Solo had falsely marked its products with the '797 and '569 patent numbers for the purpose of deceiving the public, despite knowing that those patents had expired. Pequignot also alleged that Solo had marked its packages with the "may be covered" language despite knowing that the products were not covered by any pending or issued patents. *SJ Op.*, 646 F. Supp. 2d at 792. Thus, Pequignot accused Solo of falsely marking at least 21,757,893,672 articles, Pequignot Br. 3, and sought an award of $500 per article, one half of which would be shared with the United States, *Pequignot v. Solo Cup Co.*, 540 F. Supp. 2d 649, 650 (E.D. Va. 2008) ("*Mot. to Dismiss Denial*").[1]

---

[1]      Incidentally, such an award to the United States, of approximately $5.4 trillion, would be sufficient to pay

Solo moved to dismiss the case and, in March 2008, the district court denied Solo's motion, holding that both marking with an expired patent number and marking with the "may be covered" language could legally constitute false marking. *Mot. to Dismiss Denial*, 540 F. Supp. 2d 649. The court reasoned that the subject matter of an expired patent was "unpatented" within the meaning of the statute, as it was in the public domain. *Id.* at 651–53. The court also relied on the potential harms such markings pose to the patent system, such as deterring potential competition. *Id.* at 653–54. The court then concluded that Pequignot had stated a claim regarding the "may be covered" language because the language clearly suggested that the article was protected by the patent laws. *Id.* at 654–56.

In August 2009, the district court granted summary judgment to Solo, finding no intent to deceive and hence no violation of law. *SJ Op.*, 646 F. Supp. 2d 790. The court first interpreted *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005), as holding that false marking, combined with knowledge of the falsity, merely creates a rebuttable presumption of intent to deceive. The court reasoned that, if the presumption were irrebuttable, it would be too easy to prove deceptive intent when it might not have existed. *SJ Op.*, 646 F. Supp. 2d at 796–97.

The district court then concluded that Solo's evidence had successfully rebutted the presumption of intent to deceive. The court determined that when the false markings at issue are the numbers of expired patents that

---

back 42% of the country's total national debt. *See* TreasuryDirect, "The Debt to the Penny and Who Holds It," http://www.treasurydirect.gov/NP/BPDLogin?application= np (last visited June 8, 2010).

previously covered the marked products, the *Clontech* presumption of intent to deceive is weaker because the possibility of actual deceit and the benefit to the false marker are diminished. *SJ Op.*, 646 F. Supp. 2d at 797–98. The court found that Solo had rebutted the presumption with unrebutted evidence that it had relied in good faith on the advice of counsel and acted out of a desire to reduce costs and business disruption. The court found Pequignot's evidence of intent to deceive not relevant. *Id.* at 798–800.

The district court found that Solo had similarly rebutted the presumption with respect to the "may be covered" language. Although Solo had knowingly placed the language on products that were never covered, making the question of intent a closer call, the court reasoned that the language was added at the suggestion of Solo's outside counsel to provide notice of actual, valid patents, and that it was done for logistical and financial reasons. The court further reasoned that, because this was an issue of first impression, the counsel's advice was reasonable. *Id.* at 800. The court thus granted summary judgment that Solo was not liable for false marking.

Finally, the district court granted summary judgment for Solo on the meaning of "offense," despite having already granted summary judgment of no liability. The court determined that Solo had committed at most three "offenses," two, when it decided not to immediately stop marking each of the lids when their patents expired, and one, when it decided to add the "may be covered" language to its packaging. The court followed the reasoning of *London v. Everett H. Dunbar Corp.*, 179 F. 506 (1st Cir. 1910), which stated that "the marking of . . . different articles . . . in the course of a single and continuous act" did not constitute multiple "distinct offenses." *Id.* at 508. The court added that the weight of the cases since *London*

had followed that holding, even after the statute changed in 1952. The court also relied on statutory construction and public policy concerns that an uninjured plaintiff should be prevented from pursuing such a lucrative recovery. *SJ Op.*, 646 F. Supp. 2d at 801–04.

Pequignot timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review *de novo* the court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This case presents a question of statutory interpretation of 35 U.S.C. § 292. Statutory interpretation is a question of law that we review *de novo*. *Fina Tech., Inc. v. Ewen*, 265 F.3d 1325, 1327 (Fed. Cir. 2001).

### A. "Unpatented Article"

In order to be liable for false marking, *inter alia*, a party must mark an "unpatented article." 35 U.S.C. § 292(a). The parties agree that the contents of some of the packaging containing the "may be covered" language were unpatented, as those products had never been protected by any patent or pending patent application. However, as one basis for affirming the district court's determination of no liability, Solo argues that products that were previously protected by patents, which have since expired, are not "unpatented articles." According to Solo, Congress rejected a proposed amendment to change the word "unpatented" to "not at the time secured by a patent," so §

292 should not be expanded to include articles that are "not at the time" patented, or expired. Further, Solo asserts, all of the courts that have expressly considered expired markings have found neither harm nor falsity.

Pequignot responds that false marking with expired patent numbers is just as violative of the statute as other types of false marking. Pequignot argues that such marking also improperly externalizes the cost of determining whether the intellectual property claim is true and is equally deceptive. According to Pequignot, it is not always easy to determine a patent's expiration date, just as it is not always easy to determine whether a product is actually covered by a valid patent.

We agree with Pequignot that an article covered by a now-expired patent is "unpatented." As the district court pointed out, "[a]n article that was once protected by a now-expired patent is no different [from] an article that has never received protection from a patent. Both are in the public domain." *Mot. to Dismiss Denial*, 540 F. Supp. 2d at 652 (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964)). Furthermore, as the court held, an article that is no longer protected by a patent is not "patented," and is more aptly described as "unpatented." *Id.* at 652–53; *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159 (1989) (An article that "has been freely exposed to the public . . . stands in the same stead as an item for which a patent has expired or been denied: it is unpatented and unpatentable."). As it is no longer patented, the public need not fear an infringement suit any more than if it were never patented.

Solo argues that, in 1860, Congress refused an amendment to § 292 that arguably would have made the statute apply to expired patents by changing the word "unpatented" to "not at the time secured by a patent." *See*

A Bill to Promote the Progress of the Useful Arts, S.424, 35th Cong., 1st Session p. 17 (Apr. 26, 1860); J.A. 119. Solo's argument is unavailing, however, as we need not resort to legislative history when a statute is unambiguous. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (rejecting consideration of legislative history because statutory language was unambiguous). Furthermore, as Pequignot demonstrates, the 1860 bill would have made many changes to the Patent Act as a whole, and it is impossible to know whether Congress disliked the language "not at the time secured by a patent" or another provision. *See* A Bill to Promote the Progress of the Useful Arts, S.424, 35th Cong., 1st Session.

We further agree with Pequignot that many of the same public policies apply to falsely marked products with inapplicable patent numbers and expired patent numbers. Although holding that marking products with expired patent numbers could potentially be false marking, the district court stated that expired patents have less potential for harm than unexpired patents because "any person with basic knowledge of the patent system can look up the patent and determine its expiration date, reducing the potential for being deceived." *SJ Op.*, 646 F. Supp. 2d at 798. The court distinguished patents that do not cover the marked products "because it is far more difficult for competitors and the public to determine whether the marking is false, particularly if the patent is complex." *Id.* However, the distinction is not nearly as clear-cut as the court portrays it, as determining the expiration date of a patent can, at times, be difficult. The date of the patent grant is shown on the first page of a patent, but its term currently also depends on the date it was filed; in 1994, the effective term of a patent changed from seventeen years commencing at issuance to twenty years from

filing. *See* 35 U.S.C. § 154(a)(2); *Wyeth v. Kappos*, 591 F.3d 1364, 1366 (Fed. Cir. 2010). Furthermore, the term depends on whether there are patent term adjustments and whether the patent owner has paid maintenance fees. *See* 35 U.S.C. § 154(a)(2), (b). Thus, as with a never-patented article, an article marked with an expired patent number imposes on the public "the cost of determining whether the involved patents are valid and enforceable." *Clontech*, 406 F.3d at 1357 n.6. Solo's products that were once covered by now-expired patents are therefore "un-patented" within the meaning of the statute.

In sum, we agree with Pequignot and the district court that articles marked with expired patent numbers are falsely marked. That conclusion alone does not, however, decide the question of liability under the statute.

B. "For the Purpose of Deceiving the Public"

The false marking statute also requires that the marker act "for the purpose of deceiving the public." 35 U.S.C. § 292(a). Pequignot argues that, under *Clontech*, such intent has been proven if he proves that Solo's statements were false and that Solo knew they were false. According to Pequignot, the district court found falsity of both the patent numbers and the "may be covered" language, and Solo admitted knowing that the patents were expired and that the products in some of the "may be covered" packaging were unpatented. Solo responds that the "inference" in *Clontech* from a knowingly false statement is rebuttable with evidence of good faith such as reliance on advice of counsel.

We agree with Solo that, under *Clontech* and under Supreme Court precedent, the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent. *Cf.*

*Sandstrom v. Montana*, 442 U.S. 510, 513–14 (1979) (holding conclusive presumption regarding intent in the criminal context unconstitutional). As we stated in *Clontech*, "'the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the *inference* that there was a fraudulent intent.'" 406 F.3d at 1352 (emphasis added) (quoting *Norton v. Curtiss*, 433 F.2d 779, 795–96 (CCPA 1970)). Although the presumption cannot be rebutted by "the mere assertion by a party that it did not intend to deceive," *id.*, *Clontech* does not stand for the proposition that the presumption is irrebuttable. Indeed, as the district court stated, "to hold, as Pequignot suggests, that a party that knowingly made false patent markings is precluded from even offering evidence that it did not intend to deceive would be inconsistent with the high bar that is set for proving deceptive intent." *SJ Op.*, 646 F. Supp. 2d at 796–97.

The bar for proving deceptive intent here is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine. *See* S. Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952) ("This is a criminal provision."); *see also Clontech*, 406 F.3d at 1352 ("The statute supplies a civil fine."). Because the statute requires that the false marker act "for the purpose of deceiving the public," a purpose of deceit, rather than simply knowledge that a statement is false, is required. 35 U.S.C. § 292(a). As the Supreme Court has explained in distinguishing the mental states of "purpose" and "knowledge" in criminal statutes, "a person who causes a particular result is said to act purposefully if he consciously desires that result, whatever the likelihood of that result happening from his conduct, while he is said to act knowingly if he is aware that that result is practically certain to follow from his

conduct, whatever his desire may be as to that result."
*United States v. Bailey*, 444 U.S. 394, 404 (1980) (quota-
tion marks omitted). Thus, mere knowledge that a mark-
ing is false is insufficient to prove intent if Solo can prove
that it did not consciously desire the result that the public
be deceived.

Furthermore, we agree with Solo that it successfully
rebutted the presumption. It provided credible evidence
that its purpose was not to deceive the public with either
the expired patent markings or the "may be covered"
language, and Pequignot raised no genuine issue of mate-
rial fact showing otherwise.

A *qui tam* action is civil in form, even though it arises
under a criminal statute. *See* 16 James Wm. Moore et al.,
Moore's Federal Practice—Civil § 107(B)(2) (stating that a
*qui tam* action is civil in form even when it is criminal in
nature). Although, in civil cases, intent to deceive often
requires clear and convincing evidence, *see Scanner Techs.
Corp. v. Icos Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1374
(Fed. Cir. 2008) (using clear and convincing burden for
intent to deceive in inequitable conduct case), we have
stated that the burden of proof of intent for false marking
is a preponderance of the evidence, *see Forest Group, Inc.
v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)
(citing *Clontech*, 406 F.3d at 1352–53) (using preponder-
ance of the evidence burden in false marking case); *Haw-
loetz v. Kass*, 25 F. 765, 768 (C.C.S.D.N.Y. 1885) (holding
that, in false marking case, which is a civil action, be-
cause "an act of grave misconduct is imputed to a party, it
should be deemed enough that the jury are reasonably
satisfied upon the evidence as to all material facts");
*Hotchkiss v. Samuel Cupples Wooden-Ware Co.*, 53 F.
1018, 1021 (E.D.Mo. 1891) (requiring elements of false
marking to be proven "by a clear preponderance of the
evidence"). Rebutting the presumption of intent should

have no higher a burden of proof than was needed to create the presumption. Thus, Solo's burden of proof is to show by a preponderance of the evidence that it did not have the requisite purpose to deceive.

Regarding the expired patent markings, we agree with the district court's statement that, without more, when "the false markings at issue are expired patents that had previously covered the marked products, the *Clontech* presumption of intent to deceive is weaker." *SJ Op.*, 646 F. Supp. 2d at 797. After all, the products were once patented. In addition, we agree with the court's conclusion that there was no genuine issue of material fact that "Solo acted not for the purpose of deceiving the public, but in good faith reliance on the advice of counsel and out of a desire to reduce costs and business disruption." *Id.* at 798. As the court stated, "[a] party's good faith belief is relevant to determining whether it acted with intent to deceive." *Id.*

Pequignot argues that good faith reliance on the advice of counsel cannot excuse liability, citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 08-1200, 2010 U.S. Lexis 3480 (S.Ct. Apr. 21, 2010). In *Jerman*, the Supreme Court interpreted a statute that provided an excuse for false representations if "the violation was not intentional." *Id.* at *7. The Court held that ignorance of the law would not negate the intent to perform the prohibited act, *i.e.*, the intent to make a false representation. *Id.* at *15–17. Here, the required intent is not intent to perform an act, *viz.*, falsely mark a product, but instead intent to deceive the public. Thus, a good faith belief that an action is appropriate, especially when it is taken for a purpose other than deceiving the public, can negate the inference of a purpose of deceiving the public.

Here, we agree with the district court that Solo has provided sufficient evidence that its purpose was not to deceive the public, and that Pequignot has provided no credible contrary evidence. In *Clontech*, we stated that "the inference of intent to deceive cannot be defeated with blind assertions of good faith where the patentee has knowledge of mismarking." 406 F.3d at 1353 n.2. Here, however, Solo has raised more than blind assertions of good faith. Instead, Solo has cited the specific advice of its counsel, along with evidence as to its true intent, to reduce costs and business disruption. Moreover, the policy Solo adopted conforms with its stated purpose. Rather than continuing to manufacture mold cavities with the expired patent markings, Solo took the good faith step of replacing worn out molds with unmarked molds. Solo also provided unrebutted evidence that it implemented and followed the policy.

Furthermore, we agree with Solo that Pequignot did not raise a genuine issue of material fact as to a deceptive purpose. As Pequignot argues, Solo was advised that the best case scenario was to remove the expired patent numbers. However, such a statement within the context of Solo's counsel's overall advice in favor of Solo's replacement policy does not amount to a showing that, by choosing a different course of action, also supported by counsel, Solo intended to deceive the public. Thus, Pequignot has provided "not a scintilla of evidence that Solo ever ignored its counsel's advice or, more importantly, manifested any actual deceptive intent." *SJ Op.*, 646 F. Supp. 2d at 799. Solo's leaving the expired patent numbers on its products after the patents had expired, even knowingly, does not show a "purpose of deceiving the public."

We also agree with Solo that it rebutted the presumption of intent to deceive with the "may be covered" lan-

PEQUIGNOT v. SOLO CUP                                    16

guage.  As Solo points out, the "may be covered" language
stated exactly the true situation; the contents of some of
the packaging were covered by patents, and the contents
of some of the packaging were not covered.  Thus, it is
highly questionable whether such a statement could be
made "for the purpose of deceiving the public," when the
public would not reasonably be deceived into believing the
products were definitely covered by a patent.  Regardless,
the district court correctly held that Pequignot raised no
genuine issue of material fact regarding Solo's intent and
that Solo therefore successfully rebutted the presumption.
As the district court found, the language was added at the
suggestion of Solo's outside counsel for marking purposes,
to provide notice to potential infringers of Solo's actual,
valid patents (even though, without a patent number,
such language cannot satisfy the marking statute).  The
court also properly relied on undisputed testimony that
the language was added to all packaging because the
alternative was inconvenient from a logistical and finan-
cial perspective.  Such evidence rebuts the presumption of
deceptive purpose, as Solo's actions indicate its good faith.
Solo did not state on its packaging that any product was
definitely covered by a patent, and it provided the con-
sumer with an easy way to verify whether a specific
product was covered; the consumer could "contact
www.solocup.com" for details.

Pequignot raised no genuine issue of material fact re-
garding the "may be covered" language that would have
precluded summary judgment.  We therefore agree with
the district court's conclusion that summary judgment in
favor of Solo was appropriate.

### C.  "For Every Such Offense"

Finally, Pequignot argues that the district court erred
in granting summary judgment to Solo on the meaning of

the word "offense," holding that Solo could have committed at most three offenses. After the district court granted summary judgment, our court held in *Forest Group*, 590 F.3d 1295, that every falsely marked product constitutes an "offense" under § 292. However, because we have affirmed the court's finding that Solo had no intent to deceive the public, that question here is moot. We therefore vacate the court's determination on the meaning of the word "offense."

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

**AFFIRMED IN PART and VACATED IN PART**

## COSTS

Costs to Solo.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## *Questions and Answers*

### Petitions for Panel Rehearing (Fed. Cir. R. 40)
### and
### Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.